# EXHIBIT B

**Fact Witness Declaration of Donald L. Schilling, Ph.D.**

I, Donald L. Schilling, Ph.D., declare under penalty of perjury as follows:

1. I submit this Declaration as a fact witness in the matter of Stormborn Technologies, LLC's ("Stormborn") vs. Topcon Positioning Systems, Inc. ("Topcon") pertaining to U.S. Patent No. RE44,199 ("the '199 Patent"), 3:19-cv-07804-WHO.

2. The following is a brief summary of my background and qualifications. My background and qualifications are more fully set out in my curriculum vitae (CV), attached as Exhibit 1.

3. I obtained a Bachelors of Electrical Engineering from City College of New York in 1956. I obtained a Masters of Electrical Engineering from Columbia University in 1958. I obtained a Ph.D. in Electrical Engineering from PIB in 1962.

4. I have co-authored twelve textbooks, more than 200 papers, and have more than 125 patents in telecommunications and electronics. In 1998, I was awarded IEEE COMSOC's prestigious ARMSTRONG Award for technical contributions to CDMA and to the Wireless World it is creating. In 2000, I received MILCOM's Technical Achievement Award for my technical contributions to Military Communications, and in 2006, received Comsoc's Outstanding Service Award, for contributions to Telecommunications. I am often asked to present keynote talks on Wireless Communications at various Conferences. For example, in 2006, I was the keynote speaker at WTS 2006, on the "Wireless Revolution", and in 2013 I was the keynote speaker at the Consumer Electronic Show's Conference: CCNC-2013, on my "Vision of Consumer Communications".

5. I was President of the IEEE Communications Society from 1980-1981 and a Member of the Board of Directors of the IEEE from 1982-1983. I was Editor of the Transactions on Communications and Director of Publications, from 1968-1978, and initiated the Comsoc Magazine, and JSAC. During my term as IEEE President, I also initiated the MILCOM and INFOCOM conferences. I am a Fellow of the IEEE and a member of Sigma Xi. I was also a member of the US Army's Scientific Advisory Board.

6. I have at least 50 years' experience with wireless communications systems. I am currently the CEO of Linex Technologies, Inc. ("Linex"), where my responsibilities include pioneering 3G/4G/5G systems architectures needed to provide solutions to longstanding wireless communications needs. I have held this position since 1998.

7. From 1973 to 1992, I was the CEO and directed the technical activities of SCS TELECOM and SCS MOBILECOM. At SCS TELECOM, I invented Broadband-CDMA. SCS TELECOM was a consultant in Military Communications and Electronic Warfare to the US Army, Department of Defense Agencies, and the Communications Industry. In 1990, SCS Mobilecom, in a joint venture with Millicom, Inc., began the field of PCS in the USA. SCS received one of the first PCS experimental licenses from the FCC to

demonstrate this technology. In 1992, SCS merged with IMM to form InterDigital Communications Corporation (IDCC). I served as Vice-Chairman of the Board, Executive VP, and then Chief Executive Officer of InterDigital Communications Corporation, (NASDAQ: IDCC) where I led the development of Broadband-CDMA (BCDMA) for 3G technology. (HSPA is very similar to BCDMA). After retiring from IDCC, I led the development of the WIMS (Wideband Information Management Standardization) program with ATT. This program became the basis for the current 3GPP WiFi, HSPA Standard.

8. Starting in 1994, I was the Chairman Emeritus of Golden Bridge Technology (GBT). GBT was New Jersey based R&D company that produced numerous patents used in 3G systems. I worked with GBT and Seiko Epson of Japan to form a partnership to design Spread Spectrum aspects of the 3G system. Subsequent to my time with GBT, I formed Linex.

9. During my time at Linex, we developed and I oversaw the technology which is the subject of the '199 Patent. Linex originally owned the '199 Patent that was then assigned to Stormborn. Stormborn is still obligated to pay Linex as a result of the assignment.

10. At this time, I am not being compensated for time spent in preparing this declaration of facts for this matter at my usual rate of $650 per hour, and I am not being compensated for the fact of declaring.

11. In preparing this declaration, I considered the information contained in the '199 Patent (Ex. A to the Original Complaint) and its File Wrapper, which is attached hereto as Exhibit 2.

12. For the purposes of this case it is useful to have an understanding of spread-spectrum communication systems. In telecommunication and radio communication, spread-spectrum techniques are methods by which a signal (e.g., an electrical, electromagnetic, or acoustic signal) generated with a particular bandwidth is deliberately spread in the frequency domain, resulting in a signal with a wider bandwidth. These techniques are used for a variety of reasons, including the establishment of secure communications, increasing resistance to natural interference, noise, and jamming, to prevent detection, to limit power flux density (e.g., in satellite down links), and to enable multiple-access communications.

13. The '199 Patent generally concerns a communications system and method having a transmitted data rate determined by an error rate syndrome at a receiver. Data are demultiplexed into a plurality of data channels, and processed as a plurality of channels. A combiner combines the plurality of channels as a multiplexed signal. At a receiver, the multiplexed signal is despread into a plurality of despread channels. A syndrome signal is generated from an error rate of the channels. From the syndrome signal, a desired-data rate is determined for the transmitter. See the '199 Patent at Abstract.

14. The '199 Patent addresses the problems of interference in signals transmitted between a transmitter and a receiver in a spread-spectrum communications system.

15. Before the '199 Patent, high speed data was implemented using a method including parallel channels and parallel chip-sequence signals. The multiple-orthogonal chip-sequence signals are transmitted simultaneously, thereby increasing data rate while still having a processing gain. Thus, the multiple chip-sequence signals behaved as multiple users transmitted from a single location. See the '199 Patent at Col. 1:38-49. The channel, through which the signal is transmitted is beyond line of sight of an intended Receiver. Every reflection of the transmitted signal gives rise to another waveform, attenuated and/or delayed from the original waveform. Some of these reflected waveforms are received at the intended receiver and represent multipath signals. Multipath signals could be ameliorated by a RAKE receiver.

16. There were some prior methodologies that were used to overcome this problem. One system employed an increased processing gain in order to increase the immunity from interference. However, to do this in a fixed bandwidth system, the data rate must be reduced and the processing time of the correlator or the length of the matched filter is increased accordingly. This method of increasing processing gain changed the length of the correlator sequence, or changed the size of the matched filter, both of which impact the architecture of the receiver. This also required an increased integration time, which ultimately would require the chip-tracking loop and the phase-tracking loop to function flawlessly, which is not always the case. Further, the allowable frequency offset would have to be reduced and that would require at least one frequency locked loop. See the '199 Patent at Col. 1:50-67 and 2:1-7.

17. Maintaining a high data rate has always been beneficial for the transfer of signals. Dr. Joseph Garodnick recognized that spread spectrum multi-cell systems had network-centric problems with the way that data signals were transmitted and received. These network-centric problems developed when a remote station is within a cell or a cell sector near the edge of the cell. This resulted in additional interference from transmissions generated by users in the two adjacent cells, and interference disrupts signal transfer. With consideration to multipath, as the signal reaches the edge of the cell, the signal decreases in size. There are therefore two effects: the signal is distorted and attenuated from the transmitter, and from the adjacent cells, and distorted and attenuated signals from other transmitters in other cells are distorted and attenuated and also interfere from the signal from the first transmitter.

18. The '199 Patent resulted from Application No. 13/287,620 filed on November 2, 2011. On February 22, 2012, the Patent Examiner rejected pending claim[s] 1,3-5,7,8, and 10-60 in the application under 35 U.S.C. §103 in light of Raleigh et al (US 2011/0310996) in view of Padovani et al (US 2007/0066320). Ex.2 at 64-70. In response to the February 22, 2012 Office Action, Linex indicated that the manner in which the data rate is controlled or changed could be accomplished in various well-known manners (such as through the use of a multiplexer or demultiplexer). Ex.2 at 89. However, the prior art did not teach how, and what, the device utilizes to control the data rate. Namely, the prior art did not teach controlling a transmitter data rate responsive to a received error rate. Ex.2 at 89-90. In a final Office Action on September 9, 2012, the Patent Examiner rejected Claims 1, 3-

5, 7, 8, 10-12, 15, 16, 19, 22, 25, 26, 28, 29, and 32-60. Ex.2 at 106. Responsive to the final Office Action, Linex identified that Claim 11 is directed to a receiver "a receiver including command processor circuitry response to the error rate of decoded channels for generating a 'data-rate control signal to produce a desired data rate to be sent by the transmitter of the signals' such that the data rate control signal controls operation of the circuitry at the transmitter to produce a desired data rate. That is, independent Claim 11 recites the control signal being of a nature to control operation of circuitry at the transmitter to produce the desired data rate." Ex.2 at 118. On February 20, 2013, the Patent Examiner issued a Notice of Allowance of Application No. 13/287,620, that matured into the '199 Patent. Ex.2 at 157.

19. The '199 Patent issued on May 7, 2013 and is titled "VARIABLE THROUGHPUT REDUCTION COMMUNICATIONS SYSTEMS AND METHOD." The '199 Patent identifies Joseph Garodnick as the sole inventor. I know Dr. Garodnick and am one of his supervisors at Linex. The '199 Patent is a Reissue Patent from U.S. Patent No. 7,613,247 filed on April 25, 2005 and claims priority to U.S. Patent Application Serial No 09/594,440 filed on June 14, 2000, now U.S. Patent No. 6,289,039. I understand that these other patents are currently not asserted in the lawsuit between Stormborn and Topcon.

20. I understand that Stormborn is asserting infringement of at least independent claims 11 and 13 of the '199 Patent against Topcon.

21. Claim 11 of the '199 Patent recites:

11. A receiver for recovering wireless data conveyed in data symbols by a plurality of different subchannel signals transmitted over a wireless channel, comprising:

demodulator circuitry for detecting the transmitted signals in a plurality of demodulated channels;

decoder circuitry for FEC decoding and de-interleaving the plurality of demodulated channels, providing a multiplicity of decoded channels, each having an error rate;

command processor circuitry responsive to the error rate of the decoded channels for generating a data-rate control signal to produce a desired data rate to be sent by the data symbol transmitter of the signals, the data rate control signal controlling operation of circuitry at the transmitter to produce the desired data rate to be sent by the data symbol transmitter of the signals;

transmitting circuitry for conveying the error rate dependent rate control signal back to the data symbol transmitter; and

multiplexer circuitry for combining the multiplicity of decoded channels into a signal stream of received data.

22. Claim 13 of the '199 Patent recites:

13. A method for recovering wireless data conveyed in data symbols by a plurality of different subchannel signals transmitted over a wireless channel, comprising the steps of:

detecting the transmitted signals in a plurality of demodulated channels;

FEC decoding and de-interleaving the plurality of demodulated channels, providing a multiplicity of decoded channels, each having an error rate;

using command processor circuitry responsive to the error rate of the decoded channels to generate a data-rate control signal to produce a desired data rate to be sent by the data symbol transmitter of the signals;

transmitting the error rate dependent data-rate control signal back to the data symbol transmitter; and

multiplexing the multiplicity of decoded channels into a single stream of received data."

23. Claim 11 and 13 are largely similar inasmuch as Claim 11 pertains to an improved receiver and Claim 13 pertains to the method of operation of this improved receiver. Based on this similarly, my statement of facts is largely directed to Claim 11 but it equally applies to the method of Claim 13 as the recited method steps include similar limitations of "using command processor circuitry responsive to the error rate of the decoded channels to generate a data-rate control signal to produce a desired data rate to be sent by the data symbol transmitter of the signals." (See Claim 13 of the '199 Patent).

24. To address the interference issues, prior art systems and methodologies significantly altered receiver architecture, thereby increasing size, weight, power and cost in production of those receivers. Thus, the '199 Patent, and specifically Claim 11, provides a receiver that is able to maintain a high data rate that has always been beneficial for the transfer of signals while reducing interference or increasing immunity from interference without significantly altering the receiver to maintain or reduce size, weight, power and cost in production of that receiver.

25. In the receiver of Claim 11 (and its method of Claim 13) in the '199 Patent, the command processor circuitry is responsive to the error rate of the decoded channels. The circuitry generates a data rate control signal to produce a desired data rate to be sent by the data symbol transmitter of the signals. The data rate control signal controls the operation of the transmitter to produce the desired data rate to be sent by the data symbol transmitter of the signals.

26. The receiver of Claim 11 (and its method of Claim 13) in the '199 Patent is distinguishable from the prior solutions because the command processor circuitry is responsive to the error rate of the decoded channels to generate a data rate control signal to produce a desired data rate to be sent by the data symbol transmitter of the signals. The data rate control signal controls the operation of the transmitter to produce the desired data rate to be sent by the data symbol transmitter of the signals. Additionally, looking towards the remarks that Linex made during prosecution of the '199 Patent, Linex highlighted this unique and discrete idea during prosecution. Namely, Claim 11 is directed to a receiver "a receiver including command processor circuitry response to the error rate of decoded channels for generating a 'data-rate control signal to produce a desired data rate to be sent by the transmitter of the signals' such that the data rate control signal controls operation of the circuitry at the transmitter to produce a desired data rate. That is, independent Claim

11 recites the control signal being of a nature to control operation of circuitry at the transmitter to produce the desired data rate." Ex.2 at 118.

27. The receiver of Claim 11 (and its method of Claim 13) deals with the vulnerability of interference in an intended receiver between signals transmitted in adjacent cells and to multipath and other interfering received signals. The receiver of Claim 11 (and its method of Claim 13) in the '199 patent require command processor circuitry responsive to the error rate of the decoded channels for generating a data-rate control signal to produce a desired data rate to be sent by the data symbol transmitter of the signals, wherein the data rate control signal controls the operation of circuitry at the transmitter to produce the desired data rate to be sent by the data symbol transmitter of the signals; and transmitting circuitry for conveying the error rate dependent rate control signal back to the data symbol transmitter; and multiplexer circuitry for combining the multiplicity of decoded channels into a signal stream of received data. These specific elements, as combined, provide increased immunity at the intended receiver, from interference generated by nearby transmitters and from multipath interference (See the '199 Patent at Col 1:39) produced by the same transmitter, transmitting signals that are reflected from multiple objects between receivers in adjacent cells. Further, these specific elements also accomplish the desired result increasing immunity from interference that was a then existing problem in the relevant field of spread-spectrum communication systems. In addition, the receiver of Claim 11 (and its method of Claim 13) in the '199 Patent, the claimed invention provides other benefits over conventional receivers, including increased flexibility, faster transmission times and data transfer, as well as reduced manufacturing requirements.

28. The receiver of Claim 11 (and its method of Claim 13) in the '199 Patent deals with the vulnerability of interference of the intended receiver to changes in the amount of interference. The receiver of Claim 11 (and its method of Claim 13) in the '199 patent requires command processor circuitry responsive to the error rate of the decoded channels for generating a data-rate control signal to produce a desired data rate to be sent by the data symbol transmitter of the signals. This feature, as combined with the other elements of Claim 11 (and its method of Claim 13), provides the satisfactory error rate (Quality of Service) at the intended receiver. These specific elements were distinguishable because the prior art methodologies would simply increase processing gain to try to overcome interference, however this required more processing power and changing the architecture of the receiver. By adding the command processor circuitry, the '199 Patent was able to generate a data-rate control signal based on an error-rate of the decoded channels.

29. The receiver of Claim 11 (and its method of Claim 13) in the '199 Patent provides a receiver that would work with many types of spread-spectrum communications systems, and is adjustable, either continually or periodically, depending on the needs of the system designer; is simpler to manufacture than the preexisting receivers that required architectural changes to overcome interference; and reduces transmission errors.

30. The receiver of Claim 11 (and its method of Claim 13) in the '199 Patent provides a receiver that controls the information rate between a transmitter and a receiver based on the data-rate control signal is based on the error-rate of the decoded channels. Thus, there

may be other ways to throttle or limit information between a transmitter and a receiver that does not have a data-rate control signal based on the syndrome (error-rate) of the decoded channels. Specifically, other receivers could throttle or limit information between a transmitter and a receiver. For example, the data-rate control signal could be based on the transmission of a known pilot signal. In this instance, an additional receiver, measures the distortion/attenuation of the pilot and that receiver sends back to the Transmitter information to control the data rate. The pilot signal is indirectly related to the actual received data.

DECLARANT FURTHER SAYETH NAUGHT:

Dated: 20 January 2020

**Donald L. Schilling, Ph.D (EE)**

# EXHIBIT 1

# Donald L. Schilling; Ph.D. (EE)



**Dr. Schilling has been Chairman of the Board and CEO of LINEX Technologies, Inc., from its inception in 1998 to the present, where he has developed many of the pioneering, essential, and visionary 3G/4G/5G systems architectures needed to provide solutions to longstanding wireless communications needs. This technology has resulted in a significant capacity increase, and attendant cost savings, compared to the earlier 3G and Wireless Mesh Network systems.**

**His abbreviated biographical sketch below explains why Dr. Schilling is one of the world leaders in Spread Spectrum wireless communication systems, such as the systems described in Patents '377 and '503.**

**Dr. Schilling began his professional career in 1956, after receiving his BEE from CCNY. His first job was developing a "high speed" direct sequence spread spectrum system using vacuum tubes. He also helped develop a "chirp" radar system; chirp being a form of frequency hopping spread spectrum.**

**During his career, he was a Professor of Electrical engineering at the Polytechnic Institute of Brooklyn and then Professor of Electrical Engineering at the City College of New York. During this time he co-authored 12 textbooks in Electrical Engineering, including his text: Principles of Communication Systems. These texts are still popular among students and practicing engineers. His text on Communications was among the first to introduce Spread Spectrum to undergraduate students in 1986.**

**From 1973 to 1992, Dr. Schilling was the CEO and directed the technical activities of SCS TELECOM and SCS MOBILECOM. At SCS TELECOM, he invented Broadband-CDMA. SCS TELECOM was a consultant in Military Communications and Electronic Warfare to the US Army, Department of Defense Agencies, and the Communications Industry.**

**In 1990, SCS Mobilecom, in a joint venture with Millicom, Inc., began the field of PCS in the USA. SCS received one of the first PCS experimental licenses from the FCC to demonstrate this technology.**

**In 1992, SCS merged with IMM to form InterDigital Communications Corporation (IDCC). Dr. Schilling served as Vice-Chairman of the Board, Executive VP, and then Chief Executive Officer of InterDigital Communications Corporation, (NASDAQ: IDCC) where**

**he led the development of Broadband-CDMA (BCDMA) for 3G technology. (HSPA is very similar to BCDMA).**

**After retiring from IDCC, Dr. Schilling led the development of the WIMS (Wideband Information Management Standardization) program with ATT. This program became the basis for the current 3GPP WiFi, HSPA Standard.**

**In 1994, he joined Golden Bridge Technology (GBT) as Chairman Emeritus. This New Jersey based R&D company produced numerous patents used in 3G systems. He also worked with GBT and Seiko Epson of Japan to form a partnership to design Spread Spectrum aspects of the 3G system.**

**And, in 1998, he formed Linex Technologies.**

**Dr. Schilling is an internationally known expert in the field of communications systems. He has made many notable contributions in WCDMA, spread spectrum communications systems, FM and phase-locked systems, meteor burst communications systems and HF systems. His design of an adaptive delta modulator was used on the Space Shuttle.**

**Dr. Schilling was President of the IEEE Communications Society from 1980-1981 and a Member of the Board of Directors of the IEEE from 1982-1983. He was Editor of the Transactions on Communications and Director of Publications, from 1968-1978, and initiated the Comsoc Magazine, and JSAC. During his term as President, he also initiated the MILCOM and INFOCOM conferences. He is a Fellow of the IEEE and a member of Sigma Xi. Dr. Schilling was also a member of the US Army's Scientific Advisory Board.**

**He has co-authored twelve textbooks, more than 200 papers, and has more than 125 patents in telecommunications and electronics. In 1998, Dr. Schilling was awarded IEEE COMSOC's prestigious ARMSTRONG Award for his technical contributions to CDMA and to the Wireless World it is creating. In 2000, he received MILCOM's Technical Achievement Award for his technical contributions to Military Communications, and in 2006, received Comsoc's Outstanding Service Award, for his contributions to Telecommunications. Dr. Schilling is often asked to present keynote talks on Wireless Communications at various Conferences. For example, in 2006 he was the keynote speaker at WTS 2006, on the "Wireless Revolution", and in 2013 he was the keynote speaker at the Consumer Electronic Show's Conference: CCNC-2013, on his "Vision of Consumer Communications".**

## Summary of Experience:

| | |
|---|---|
| 1998-Present | Chairman and CEO, Linex Technologies, Inc. |
| 1996-1998 | Chairman, GBT, Inc. |
| 1995 | Consultant |
| 1992 - 1994 | CEO and Vice-Chairman, InterDigital Communications (IDCC – NASDAQ), |
| 1990 -1992 | CEO, PCS America (a JV between Millicom and SCS Mobilecom) |
| 1989-1992 | CEO and Chairman, SCS MOBILECOM, Inc. |
| 1973-1992 | CEO and Chairman, SCS TELECOM, Inc. |
| 1969-1992 | Professor of Electrical Engineering, CCNY |
| 1962-1969 | Assistant and then Associate Professor of E.E., PIB |

## Education:

| | | |
|---|---|---|
| City College of New York | BEE | 1956 |
| Columbia University | MSEE | 1958 |
| PIB | PhD EE | 1962 |

# EXHIBIT 2

AMENDMENTS TO THE CLAIMS

The following is a complete listing of all claims in the subject application with status. Claims 1-10 from U.S. Patent No. 7,613,247 are retained in unamended form. New claims 11-60 have been added for the same invention as disclosed in the '247 patent.

11. (New) A receiver for recovering wireless data conveyed in data symbols by a plurality of different subchannel signals transmitted over a wireless channel, comprising:

demodulator circuitry for detecting the transmitted signals in a plurality of demodulated channels;

decoder circuitry for FEC decoding and de-interleaving the plurality of demodulated channels, providing a multiplicity of decoded channels, each having an error rate;

command processor circuitry responsive to the error rate of the decoded channels for generating a signal indicating a desired data rate to be sent to the data symbol transmitter of the signals,

transmitting circuitry for conveying the error rate dependent rate control signal back to the data symbol transmitter; and

multiplexer circuitry for combining the multiplicity of decoded channels into a single stream of received data.

12. (New) The receiver of claim 11 wherein the decoder circuitry includes circuitry to decode FEC codes of different rates.

13. (New) The receiver of claim 11 wherein the demodulator circuitry includes circuitry to demodulate signals with common symbol rates but different QAM levels.

14. (New) The receiver of claim 11 wherein the demodulator circuitry includes circuitry to demodulate signals where the different subchannels are from a different number of spatial streams.

15. (New) A method for recovering wireless data conveyed in data symbols by a plurality of different subchannel signals transmitted over a wireless channel, comprising the steps of:

detecting the transmitted signals in a plurality of demodulated channels;

FEC decoding and de-interleaving the plurality of demodulated channels, providing a multiplicity of decoded channels, each having an error rate;

using command processor circuitry responsive to the error rate of the decoded channels to generate a signal indicating a desired data rate to be sent to the transmitter of the signals,

transmitting the error rate dependent rate control signal back to the data symbol transmitter; and

multiplexing the multiplicity of decoded channels into a single stream of received data.

16. (New) The method of claim 15 wherein the decoding step includes decoding FEC codes of different rates.

17. (New) The method of claim 15 wherein the detecting step includes demodulating signals with common symbol rates but different QAM levels.

18. (New) The method of claim 15 wherein the detecting step includes demodulating signals where the different subchannels are from a different number of spatial streams.

19. (New) A transmitter for generating a wireless signal including

a demultiplexer for demultiplexing input data into a plurality of independent data channels;

encoder circuitry for FEC encoding and interleaving the plurality of data channels as a plurality of FEC encoded and interleaved channels, respectively;

processor circuitry for processing the plurality of FEC encoded and interleaved channels as a plurality of modulated channels;

a receiver, located at the transmitter, for receiving an error rate signal generated from a remote terminal; and

a processor responsive to the error rate signal for adjusting the data rate of the transmitted signals.

20. (New) The transmitter of claim 19 wherein the plurality of independent data

channels are separate spatial streams simultaneously transmitted on separate antennas.

21. (New) The transmitter of claim 19 wherein the modulated channels are set to common symbol rates but different modulated depths.

22. (New) The transmitter of claim 19 wherein the FEC encoder circuitry is set to different code rates.

23. (New) The transmitter of claim 20 wherein the data rate processor changes the transmitted data rate by changing the number of spatial streams.

24. (New) The transmitter of claim 21 wherein the data rate processor changes the transmitted data rate by changing the depth of the modulation while maintaining the same symbol rate.

25. (New) The transmitter of claim 22 wherein the data rate processor changes the transmitted data rate by changing the FEC encoding rate.

26. (New) A method for transmitting a wireless signal, including the steps of

demultiplexing input data into a plurality of independent data channels;

FEC encoding and interleaving the plurality of data channels as a plurality of FEC encoded and interleaved channels, respectively;

processing the plurality of FEC encoded and interleaved channels as a plurality

of modulated channels;

receiving an error rate signal generated from a remote terminal; and

adjusting the data rate of the transmitted signal in accordance with the error rate signal

27. (New) The method of claim 26 wherein the plurality of independent data channels are separate spatial streams simultaneously transmitted on separate antennas.

28. (New) The method of claim 26 wherein the modulated channels are set to common symbol rates but different modulated depths.

29 (New). The method of claim 26 wherein the FEC encoding is set to varying code rates.

30. (New) The method of claim 27 wherein the data rate processor changes the transmitted data rate by changing the number of spatial streams.

31. (New) The method of claim 27 wherein the data rate processor changes the transmitted data rate by changing the depth of the modulation while maintaining the same symbol rate.

32. (New) The method of claim 27 wherein the data rate processor changes the

transmitted data rate by changing the FEC encoding rate.

33. (New) A wireless transmitter comprising:

a demultiplexer having at least one input and a plurality of outputs, said input receiving an input data stream and said outputs providing a first plurality of parallel output data streams, with each output data stream including a group of different data symbols from said input data stream, said output data streams collectively providing a first data rate;

a spread spectrum processor for generating a separate spread spectrum signal for each of said first plurality of output data streams;

transmission circuitry for simultaneously transmitting said separate spread spectrum signals in a common channel; and

a controller for said demultiplexer, said controller receiving a feedback signal from a receiver, said feedback signal being an indication of the signal quality in the channel between the transmitter and the receiver, whereby in response to said feedback signal indicating a reduction in signal quality, said controller controls said demultiplexer to change said outputs from output data streams having different data symbols to output data streams having the same data symbols, thereby providing a second data rate lower than said first data rate.

34. (New) The wireless transmitter of claim 33 further including FEC encoder circuitry for FEC-encoding said first plurality of parallel output data streams.

35. (New) The wireless transmitter of claim 34 further including bit-interleaving circuitry for bit-interleaving said first plurality of FEC-encoded parallel output data streams.

36. (New) The wireless transmitter of claim 33 wherein said demultiplexer has additional outputs which provide a second plurality of parallel output data streams accompanying said first plurality of parallel output data streams, each respective one of said second plurality of output data streams including the same data symbols as a respective one of said first plurality of parallel output data streams.

37. (New) The transmitter of claim 33 wherein said feedback signal is a data rate command signal.

38. (New) A wireless transmitter comprising:

a demultiplexer having at least one input and a plurality of outputs, said input receiving an input data stream and said outputs providing a first plurality of parallel output data streams with each output data stream including a group of different data symbols from said input data stream, said output data streams collectively providing a first data rate;

a spread spectrum processor for generating a separate spread spectrum signal for each of said first plurality of output data streams;

transmission circuitry for simultaneously transmitting said separate spread

spectrum signals in a common channel; and

a controller for said demultiplexer, said controller receiving a feedback signal from a receiver, said feedback signal being an indication of the signal quality in the channel between the transmitter and the receiver, whereby in response to said feedback signal indicating a reduction in signal quality, said controller controls said demultiplexer to change said outputs from said first plurality of output data streams having different data symbols to a second plurality of output data streams having different data symbols, said second plurality being less than said first plurality, whereby said second plurality of output data streams collectively provides a second data rate lower than said first data rate.

39. (New) The wireless transmitter of claim 38 further including FEC encoder circuitry for FEC-encoding said first and second plurality of parallel output data streams.

40. (New) The wireless transmitter of claim 39 further including bit-interleaving circuitry for bit-interleaving said first and second plurality of FEC-encoded parallel output data streams.

41. (New) The wireless transmitter of claim 38 wherein said demultiplexer additionally produces a third plurality of parallel output data streams, each respective one of said third plurality of output data streams including the same data symbols as a respective one of said first plurality of parallel output data streams.

42. (New) The wireless transmitter of claim 38 wherein said demultiplexer additionally produces a fourth plurality of parallel output data streams, each respective one of said fourth plurality of output data streams including the same data symbols as a respective one of said second plurality of parallel output data streams.

43. (New) The transmitter of claim 38 wherein said feedback signal is a data rate command signal.

44. (New) A wireless transmitter that transmits an input bit stream by demultiplexing the input bit stream to form plural, parallel, lower-rate output bit streams which, after processing, are simultaneously transmitted in separately detectible signals within a common frequency channel, comprising:

a demultiplexer for demultiplexing said input bit stream and producing parallel, lower-rate output bit streams, each lower-rate output bit stream having a group of different symbols from said input bit stream; and

control circuitry for said demultiplexer responsive to a feedback signal from a receiver, said feedback signal being an indication of the signal quality in the channel between the transmitter and the receiver, said control circuitry causing the number of said parallel, lower-rate output bit streams produced by said demultiplexer to increase when said feedback signal indicates an increase in signal quality and to decrease when said feedback signal indicates a decrease in signal quality.

45. (New) The wireless transmitter of claim 44 wherein said parallel, lower-rate output bit streams are transmitted as signals having constant symbol durations.

46. (New) The wireless transmitter of claim 45 wherein said parallel, lower-rate output bit streams are error-encoded and bit-interleaved before transmission.

47. (New) The wireless transmitter of claim 44 wherein said parallel, lower-rate output bit streams collectively have a data rate that increases when the number of said lower-rate output bit streams increases and have a data rate that decreases when the number of said lower-rate output bit streams decreases.

48. (New) The transmitter of claim 44 wherein said feedback signal is a data rate command signal.

49. (New) A wireless receiver for simultaneously receiving a plurality of spread spectrum signals transmitted in a common frequency channel, comprising:

rf circuitry for converting said received spread spectrum signals to baseband;

a demodulator for separating said baseband spread spectrum signals and for recovering a stream of data symbols from each of said spread spectrum signals;

a multiplexer for multiplexing bit-streams of data derived from said recovered

streams of data symbols to form a single stream of output data; and

a controller for controlling the number of bit-streams that are applied to said multiplexer, whereby the rate of said single stream of output data is determined by the number of bit-streams applied to said multiplexer.

50. (New) The receiver of claim 49 further including a bit-deinterleaver and FEC decoder for deinterleaving and decoding said bit-streams before they are applied to the multiplexer.

51. (New) The receiver of claim 49 wherein said controller combines bit-streams having the same bit sequences to produce said bit-streams applied to said multiplexer.

52. (New) The receiver of claim 49 wherein said controller generates a feedback signal which is sent to the transmitter that transmits said plurality of spread spectrum signals, said feedback signal indicating the signal quality in the channel between the transmitter and said receiver, said feedback signal changing the number of transmitted spread spectrum signals that have different bit sequences, whereupon said controller changes the number of bit-streams that are applied to said multiplexer to change the rate of said single stream of output data.

53. (New) The receiver of claim 52 wherein said controller increases the number of inputs applied to said multiplexer when said feedback signal indicates an increase in signal quality.

54. (New) The receiver of claim 52 wherein said controller decreases the number of inputs applied to said multiplexer when said feedback signal indicates a decrease in signal quality.

55. (New) A receiver for simultaneously receiving a plurality of separately-detectible signals simultaneously transmitted in a common frequency channel, comprising:

rf circuitry for converting said received plurality of signals to baseband;

a demodulator for separating said plurality of baseband signals and for recovering a stream of data symbols from each of said signals;

a multiplexer for multiplexing bit-streams of data derived from said recovered streams of data symbols to form a single stream of output data; and

a controller for controlling the number of bit-streams that are applied to said multiplexer, whereby the rate of said single stream of output data is determined by the number of bit-streams applied to said multiplexer.

56. (New) The receiver of claim 55 further including a bit-deinterleaver and an

FEC decoder for deinterleaving and decoding said bit-streams before they are applied to said multiplexer.

57. (New) The receiver of claim 55 wherein said controller combines bit-streams having the same bit sequences to produce said bit-streams applied to said multiplexer.

58. (New) The receiver of claim 55 wherein said controller generates a feedback signal which is sent to the transmitter that transmits said plurality of signals, said feedback signal indicating the signal quality in the channel between the transmitter and said receiver, said feedback signal changing the number of transmitted separately-detectible signals that have different bit sequences, whereupon said controller changes the number of bit-streams that are applied to said multiplexer to change the rate of said single stream of output data.

59. (New) The receiver of claim 58 wherein said controller increases the number of inputs applied to said multiplexer when said feedback signal indicates an increase in signal quality.

60. (New) The receiver of claim 58 wherein said controller decreases the number of inputs applied to said multiplexer when said feedback signal indicates a decrease in signal quality.

I claim:

1. A communications system comprising

a transmitter, including,

a demultiplexer for demultiplexing input data into a plurality of data channels;

a plurality of forward-error-correction encoders and interleavers, coupled to said demultiplexer, for FEC encoding and interleaving the plurality of data channels as a plurality of FEC encoded and interleaved channels, respectively;

a plurality of processors coupled to said plurality of FEC encoders and interleavers, for processing the plurality of FEC encoded and interleaved channels as a plurality of modulated channels;

a combiner coupled to said plurality of processors, for combining the plurality of modulated channels as a multiplexed signal;

a receiver, including,

a plurality of demodulators for demodulating the multiplexed signal into a plurality of demodulated channels, respectively;

a multiplicity of FEC decoder and de-interleavers, coupled to said plurality of demodulators for FEC decoding and de-interleaving the multiplicity of demodulated channels, as a multiplicity of decoded demodulated channels having an error rate;

a command processor responsive to the error rate for determining a desired data rate and generating a control signal to be transmitted to the transmitter; and

a multiplexer, coupled to said plurality of FEC decoders and de-interleavers, for multiplexing the multiplicity of decoded channels.

2. The communications system as set forth in claim 1, wherein

said multiplicity of FEC decoders generates a plurality of syndrome signals; and

said command processor is responsive to the plurality of syndrome signals, for determining which channels in the plurality of modulated channels to delete from transmission over the communications channel.

3. The communications system as set forth in claim 1, wherein

said multiplicity of FEC decoders generates a plurality of syndrome signals; and

a said command processor is responsive to the plurality of syndrome signals, for employing erasure decoding for correcting errors.

4. The communications system as set forth in claims 1 wherein said command processor is responsive to the a plurality of syndrome signals for sending a data-rate command signal to the transmitter.

5. A communications system comprising:

a transmitter, including,

demultiplexer means for demultiplexing input data into a plurality of data channels;

encoder means far FEC encoding and interleaving the plurality of data channels as a plurality of FEC encoded and interleaved channels, respectively;

processor means for processing the plurality of FEC encoded and interleaved channels as a plurality of modulated channels;

combiner means for combining the plurality of modulated channels as a multiplexed signal;

a receiver, including,

demodulator means for demodulating the multiplexed signal into a plurality of demodulated channels, respectively;

decoder means for FEC decoding and de-interleaving the multiplicity of demodulated channels, as a multiplicity of decoded channels having an error rate;

command processor means responsive to the error rate for generating a signal indicating a desired data rate to be sent to said transmitter; and

multiplexer means for multiplexing the multiplicity of decoded channels.

6. The communications system as set forth in claim 5, wherein

said decoder means generates a plurality of syndrome signals; and

said command processor is responsive to the plurality of syndrome signals for determining which channels in the plurality of modulated channels to delete from transmission over the communications channel.

7. The communications system as set forth in claim 5, wherein

said decoder means generates a plurality of syndrome signals; and

said command processor means is responsive to the plurality of syndrome signals, for employing erasure decoding for correcting errors.

8. A communications method comprising the steps of:

demultiplexing input data into a plurality of data channels;

FEC encoding and interleaving the plurality of data channels as a plurality of FEC encoded and interleaved channels, respectively;

processing the plurality of FEC encoded and interleaved channels as a plurality of modulated channels;

combining the plurality of channels as a multiplexed signal;

transmitting the multiplexed signal having the plurality of modulated channels, over a communications channel;

demodulating the multiplexed signal into a plurality of demodulated channels, respectively;

FEC decoding and de-interleaving the plurality of demodulated channels, as a multiplicity of decoded channels;

generating a syndrome signal from an error rate of the multiplicity of decoded channels;

generating, in response to the syndrome signal, a channel quality indication signal indicating a desired data rate;

transmitting the quality indication signal to the transmitter; and

multiplexing the multiplicity of decoded channels.

9. The communications method as set forth in claim 8, further including the steps of:



generating a plurality of syndrome signals; and

determining, responsive to the plurality of syndrome signals, which channels in the plurality of modulated channels to delete from transmission over the communications channel.

10. The communications method as set forth in claim 8, further including the steps of:

generating a plurality of syndrome signals; and

employing, responsive to the plurality of syndrome signals, erasure decoding for correcting errors.

* * * * *

US007613247B2

(12) United States Patent
Garodnick

(10) Patent No.: US 7,613,247 B2
(45) Date of Patent: *Nov. 3, 2009

# (54) VARIABLE THROUGHPUT REDUCTION COMMUNICATIONS SYSTEM AND METHOD

(75) Inventor: Joseph Garodnick, Centerville, MA (US)

(73) Assignee: Linex Technologies, Inc., West Long Branch, NJ (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 703 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: 11/113,956

(22) Filed: Apr. 25, 2005

(65) Prior Publication Data

US 2005/0278607 A1 Dec. 15, 2005

Related U.S. Application Data

(63) Continuation of application No. 09/946,841, filed on Sep. 6, 2001, now Pat. No. 6,895,037, which is a continuation of application No. 09/594,440, filed on Jun. 14, 2000, now Pat. No. 6,289,039.

(51) Int. Cl.
*H04B 7/02* (2006.01)

(52) U.S. Cl. ........................................ 375/267

(58) Field of Classification Search ................ 375/140, 375/141-144, 148, 150-153, 267; 370/320, 370/335, 342, 441; 714/785, 793
See application file for complete search history.

(56) References Cited

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 5,579,304 A | | 11/1996 | Sugimoto et al. | |
| 5,673,286 A | | 9/1997 | Lomp | |
| 5,742,640 A | * | 4/1998 | Haoui et al. | 375/220 |
| 5,926,500 A | | 7/1999 | Odenwalder | |
| 6,075,809 A | | 6/2000 | Naruse | |
| 6,192,066 B1 | | 2/2001 | Asanuma | |
| 6,289,039 B1 | | 9/2001 | Garodnick | |
| 6,738,942 B1 | * | 5/2004 | Sridharan et al. | 714/755 |
| 6,747,948 B1 | * | 6/2004 | Sarraf et al. | 370/210 |
| 6,895,037 B2 | * | 5/2005 | Garodnick | 375/143 |

* cited by examiner

*Primary Examiner*—Don N Vo

(57) ABSTRACT

A communications system and method having a transmitted data rate determined by an error rate syndrome at a receiver. Data are demultiplexed into a plurality of data channels, and processed as a plurality of channels. A combiner combines the plurality of channels as a multiplexed signal. At a receiver, the multiplexed signal is despread into a plurality of despread channels. A syndrome signal is generated from an error rate of the channels. From the syndrome signal, a desired-data rate is determined for the transmitter.

10 Claims, 7 Drawing Sheets



**Attorney Docket No.: 1210.104.RE**

REISSUE APPLICATION OF U.S. PATENT NO. 7,613.247

Inventor: Joseph Garodnick

SPECIFICATION, CLAIMS, ABSTRACT AND DRAWINGS

# VARIABLE THROUGHPUT REDUCTION COMMUNICATIONS SYSTEM AND METHOD

## RELATED PATENTS

This patent stems from a continuation application of U.S. patent application Ser. No. 09/946,841, and filing date of Sep. 6, 2001, entitled VARIABLE THROUGHPUT REDUCTION SPREAD-SPECTRUM COMMUNICATIONS by inventor, JOSEPH GARODNICK, which issued on May 17, 2005 as U.S. Pat. No. 6,895,037 and which stems from a continuation application of U.S. patent application Ser. No. 09/594,440, and filing date of Jun. 14, 2000, entitled SPREAD-SPECTRUM COMMUNICATIONS UTILIZING VARIABLE THROUGHPUT REDUCTION by inventor, JOSEPH GARODNICK, which issued on Sep. 11, 2001, as U.S. Pat. No. 6,289,039. The benefit of the earlier filing date of the parent patent application is claimed for common subject matter pursuant to 35 U.S.C. § 120.

## BACKGROUND OF THE INVENTION

This invention relates to spread-spectrum communications, and more particularly to spread-spectrum communications using parallel channels, preferably employing orthogonal chip-sequence signals, with error rate and data rate feedback.

## DESCRIPTION OF THE RELEVANT ART

In a packet-communications spread-spectrum multi-cell system, high-speed data can be implemented with the prior art method of parallel channels, using parallel chip-sequence signals. By using multiple correlators or matched filters, multiple-orthogonal chip-sequence signals can be sent simultaneously thereby increasing the data rate while still enjoying the advantage of a high processing gain. The multiple chip-sequence signals behave as multiple users in a single location. Multipath is ameliorated by a RAKE receiver, and the interference to be overcome by the processing gain is that generated by other users, in the same or adjacent cells. When such interference occurs, it is called a collision.

Normally, when a remote station is within a cell or cell sector, as illustrated in FIG. 1, the path differences from base stations located in the adjacent cells ensure that the interference is small enough so as not to cause the error rate of the wanted signal to deteriorate below a usable level. When the remote station is near the edge of the cell, however, the interference can be substantial as the interference can result from two adjacent cells.

One method that has been used to overcome this problem in a conventional spread-spectrum system is to increase the processing gain in order to increase the immunity from interference. To do this, in a fixed bandwidth system, the data rate is reduced, and the integration time of the correlator or the length of the matched filter is increased accordingly. This method, however, changes the length of the correlator sequence, or changes the size of the matched filter; both of which impact the architecture of the receiver. In addition, with increased integration times, the chip-tracking loop and phase-tracking loop have to function flawlessly and the allowable frequency offset must be reduced, requiring at least a frequency locked loop.

Another method in the prior art is to repeat the symbols sequentially and add the result of the individually received symbols. This method changes the timing of the receiver and the framing of the data at the transmitter.



## SUMMARY OF THE INVENTION

A general object of the invention is to vary the throughput of a transmitted spread-spectrum signal.

Another object of the invention is to set the throughput of a transmitted spread-spectrum signal based on a required error rate at a spread-spectrum receiver.

An additional object of the invention is to control a data rate of a spread-spectrum transmitter from a spread-spectrum receiver, using a closed loop method.

According to the present invention, as embodied and broadly described herein, a spread-spectrum system is provided comprising, at a spread-spectrum transmitter, a demultiplexer, a plurality of forward-error-correction (FEC) encoders and interleavers, a plurality of spread-spectrum processors, a combiner, and a modulator. At a spread-spectrum receiver, the system comprises a demodulator, a plurality of spread-spectrum despreaders, a multiplicity of adders, a multiplicity of FEC decoders and de-interleavers, a command processor, and a multiplexer.

The demultiplexer demultiplexes input data into a plurality of data channels. The plurality of forward-error-correction encoders and interleavers FEC encodes and interleaves the plurality of data channels, as a plurality of FEC encoded and interleaved channels, respectively.

The plurality of spread-spectrum processors spread-spectrum processes the plurality of FEC encoded and interleaved channels as a plurality of spread-spectrum channels. The plurality of spread-spectrum channels uses a plurality of chip-sequence signals to define a particular spread-spectrum channel. Preferably, the plurality of chip-sequence signals is a plurality of orthogonal chip-sequence signals, however, a plurality of quasi-orthogonal chip-sequence signals may be used.

The combiner combines the plurality of spread-spectrum channels as a code-division-multiplexed signal. The modulator transmits the code-division-multiplexed signal with the plurality of spread-spectrum channels, over a communications channel.

At the receiver, the demodulator translates the code-division-multiplexed signal to a processing frequency, and the plurality of spread-spectrum despreaders despreads the code-division-multiplexed signal into a plurality of despread channels, respectively.

The multiplicity of adders is electronically controlled by an adder-control signal. The multiplicity of adders adds at least two despread channels to generate a multiplicity of added channels.

The multiplicity of FEC decoder and de-interleavers generates a syndrome signal from an error rate of the multiplicity of added channels. The multiplicity of FEC decoders and de-interleavers, FEC decodes and de-interleaves the multiplicity of added channels, as a multiplicity of decoded channels.

In response to the syndrome signal, the command processor determines a desired-data rate, and generates a data-rate command signal having the desired data rate for the spread-spectrum transmitter. The command processor also generates the adder-control signal for adding together a number of despread channels of the plurality of despread channels, and generates a multiplexer signal having a number of decoded channels to multiplex together. The multiplexer multiplexes the multiplicity of decoded channels to generate an estimate of the input data.

The data-rate command signal is sent to the spread-spectrum transmitter. The data-rate command signal controls into how many data channels the demultiplexer demultiplexes the

input data. Assume the demultiplexer, by way of example, demultiplexes input data into 16 parallel channels. If the processor in the receiver determines, as a response to the syndrome, that the input data are to be sent at twice the power of a single data channel of the plurality of data channels, then pairs of data channels in the plurality of data channels have identical data, with a resulting eight sets of data having different data per set. Each set of data comprises two data channels with identical data.

Additional objects and advantages of the invention are set forth in part in the description which follows, and in part are obvious from the description, or may be learned by practice of the invention. The objects and advantages of the invention also may be realized and attained by means of the instrumentalities and combinations particularly pointed out in the appended claims.

## BRIEF DESCRIPTION OF THE DRAWINGS

The accompanying drawings, which are incorporated in and constitute a part of the specification, illustrate preferred embodiments of the invention, and together with the description serve to explain the principles of the invention.

FIG. 1 illustrates a cellular architecture depicting a problem area from a remote station near a boundary;

FIG. 2 is a block diagram of a spread-spectrum transmitter using parallel channels;

FIG. 3 is a block diagram of a spread-spectrum receiver for receiving parallel channels;

FIG. 4 is a block diagram of a spread-spectrum transmitter having a data buffer, and a demultiplexer controlled by a data-rate command signal, and using parallel channels;

FIG. 5 is a block diagram of a spread-spectrum receiver for receiving parallel channels, with an error rate and a data rate command processor;

FIG. 6 is a block diagram of a spread-spectrum receiver for receiving parallel channels, using matched filter or SAW technology, with an error rate and a data rate command processor; and

FIG. 7 is a flow chart of controlling data rate of a spread-spectrum transmitter, based on error rate at a spread-spectrum receiver.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

Reference now is made in detail to the present preferred embodiments of the invention, examples of which are illustrated in the accompanying drawings, wherein like reference numerals indicate like elements throughout the several views.

The present invention employs a command processor with a parallel spread-spectrum system, for determining from an error rate, a desired-data rate. In a preferred embodiment, the desired-data rate meets an error rate criterion, such as fewer errors than a desired error rate. The error rate is from a syndrome, generated in a forward-error-correction decoder.

A spread-spectrum signal, as used herein, typically includes a data signal, multiplied by a chip-sequence signal, and multiplied by a carrier signal. The data signal represents a sequence of data bits. The chip-sequence signal represents a sequence of chips, as normally used in a direct sequence, spread-spectrum signal. The carrier signal is at a carrier frequency, and raises the product of the data signal and the chip-sequence signal, to the carrier frequency.

For synchronization, the data signal typically is a constant value, for example, a series of one bits, or some sequence known a priori, or has very slowly time-varying data. The spread-spectrum signal may be a packet, with a header followed by data, or a plurality of spread-spectrum channels, with one of the spread-spectrum channels used for synchronization. A particular spread-spectrum channel is defined by a particular chip-sequence signal, as is well known in the art. For the case of the packet, synchronization is performed on the header, as is well-known in the art. For a dedicated spread-spectrum channel, synchronization is performed from the dedicated channel.

At a spread-spectrum transmitter, the spread-spectrum system includes demultiplexer means, encoder means, spreader means, combiner means, and modulator means. The encoder means in coupled between the demultiplexer means and the spreader means, and the combiner means is coupled between the spreader means and the modulator means. The input data enters the demultiplexer means.

The demultiplexer means demultiplexes input data into a plurality of data channels. The encoder means FEC encodes and interleaves the plurality of data channels as a plurality of FEC encoded and interleaved channels, respectively. The spreader means spread-spectrum processes the plurality of FEC encoded and interleaved channels as a plurality of spread-spectrum channels. The plurality of spread-spectrum channels has a plurality of chip-sequence signals, respectively. A particular chip-sequence signal defines a particular spread-spectrum channel, as is well-known in the art.

The combiner means combines the plurality of spread-spectrum channels as a spread-spectrum signal. The modulator means transmits the spread-spectrum signal having the plurality of spread-spectrum channels, over a communications channel. A spread-spectrum signal is transmitted over a communications channel by the modulator means.

At a spread-spectrum receiver, the system includes demodulator means, despreader means, adder means, decoder means, command means, and multiplexer means. The despreader means is coupled between the demodulator means and the adder means. The decoder means is coupled between the adder means and the multiplexer means. The command means is coupled to the adder means, decoder means and demultiplexer means. The command means further provides data to a communications link to the spread-spectrum transmitter, and to the demultiplexer means.

The demodulator means translates the code-division-multiplexed signal to a processing frequency. The despreader means despreads the code-division-multiplexed signal into a plurality of despread channels, respectively.

The adder means electronically is controlled by an adder-control signal. The adder means adds none or at least two despread channels to generate a multiplicity of added channels. The decoder means generates a syndrome signal from an error rate of the multiplicity of added channels. The decoder means also FEC decodes and de-interleaves the multiplicity of added channels, and a multiplicity of decoded channels.

In response to the syndrome signal, the command means determines a desired-data rate, and generates a data-rate command signal having the desired data rate. The command means also generates the adder-control signal for controlling the adder means, for adding together a number of despread channels of the plurality of despread channels. The command means generates a multiplexer signal for controlling the multiplexer means. The multiplexer means has a number of decoded channels to multiplex together.

The data-rate command signal is sent to the spread-spectrum transmitter. The data-rate command signal controls the demultiplexer means. The data-rate command signal determines the number of data channels into which input data are demultiplexed. Assume the demultiplexer means can demul-

tiplex input data into a maximum of M data channels, where M is the number of data channels. If the processor means determined from the syndrome, that twice the power were required from the transmitter to maintain or reduce an error rate, then the data-rate command signal controls the multiplexer means to send the input data as two identical sets of M/2 data channels. In general, if the processor means determines from the syndrome, that N times the power is required, then the data-rate command signal controls the multiplexer means to send the input data as N identical sets of M/2 data channels.

The multiplexer means multiplexes the multiplicity of decoded channels and generates an estimate of the input data.

As illustratively shown in FIG. 2, the demultiplexer means is embodied as a demultiplexer 31, the encoder means in embodied as a plurality of FEC encoders and interleavers 32, and the spreader means is embodied as a plurality of spreaders 33. The combiner means is embodied as a combiner 36, and the modulator means is embodied as a modulator 37. A transmitter antenna is coupled to the modulator 37.

The demultiplexer receives input data. The plurality of FEC encoders and interleavers 32 is coupled between the plurality of outputs from the demultiplexer 31, and the plurality of spreaders 33. The combiner 36 is coupled between the plurality of spreaders 33 and the modulator 37. The plurality of spreaders 33 may include a chip-sequence generator 39 for generating the plurality of orthogonal chip-sequence signals or a plurality of quasi-orthogonal chip-sequence signals, and a plurality of product devices 40, coupled to the chip-sequence generator 39. The plurality of product devices 40 spread-spectrum processes the plurality of encoded channels as the plurality of spread-spectrum channels. The plurality of spreaders, as is well-known in the art, alternatively may be embodied as a plurality of matched filters having a plurality of impulse responses matched to the plurality of chip-sequence signals, or a memory device for storing the plurality of chip-sequence signals.

The demultiplexer 31 demultiplexes input data into a plurality of data channels. The plurality of forward-error-correction encoders and interleavers 32, FEC encode and interleave the plurality of data channels as a plurality of FEC encoded and interleaved channels, respectively. The plurality of spreaders 33 spread-spectrum processes the plurality of FEC encoded and interleaved channels with as a plurality of spread-spectrum channels. The plurality of spread-spectrum channels is defined by a plurality of chip-sequence signals, as is well-known in the art.

The combiner 36 combines the plurality of spread-spectrum channels as a code-division-multiplexed signal, and the modulator 37 transmits, through the transmitter antenna 38, the code-division-multiplexed signal with the plurality of spread-spectrum channels, over a communications channel.

In the exemplary arrangement shown in FIG. 3, the demodulator means is embodied as a demodulator 51, and the despreader means is embodied as a plurality of despreaders 52. The adder means is embodied as a multiplicity of adders 53. The decoder means is embodied as a plurality of FEC decoders and de-interleavers 56, and the demultiplexer means is embodied as a demultiplexer 31.

The demodulator 51 is coupled to the communications channel through antenna 48. The plurality of despreaders 52 is coupled between the demodulator 51 and the plurality of FEC decoders and de-interleavers 56. The plurality of FEC decoders and de-interleavers 56 is coupled between the multiplicity of adders 53 and the multiplexer 57.

The demodulator 51 translates the code-division-multiplexed signal to a processing frequency. The plurality of despreaders 52 despreads the code-division-multiplexed signal into a plurality of despread channels, respectively. The plurality of despreaders 52 may be embodied, as is well-known in the art, as a plurality of matched filters or a plurality of correlators.

The multiplicity of FEC decoder and de-interleavers 56 generates a syndrome signal from an error rate of the multiplicity of added channels, and FEC decodes and de-interleaves the multiplicity of added channels, as a multiplicity of decoded channels. The multiplexer 57 multiplexes the multiplicity of decoded channels and generates an estimate of the input data.

The prior art spread-spectrum transmitter and receiver, as shown in FIGS. 2 and 3, use parallel chip-sequence signals. The data to be transmitted are first de-multiplexed by a demultiplexer 31 to produce a plurality of uncorrelated data channels. Each uncorrelated data channel has at a lower data rate than the original data rate of data entering the demultiplexer 31. For example, if the incoming data rate were 16 megabits per second (Mbps), and the incoming data were de-multiplexed to 16 data channels, with each data channel at one Mbps.

The plurality of data channels is forward error correction (FEC) encoded and interleaved by a plurality of FEC encoders and interleavers 32, respectively, to generate a plurality of FEC encoded and interleaved data channels. FEC encoders and interleavers are well-known to the ordinary skilled artisan, and found in many technical journal articles and textbooks.

A plurality of spreaders 33 spread-spectrum processes the plurality of FEC encoded and interleaved data channels, as a plurality of spread-spectrum channels. A spreader typically is a product device for multiplying a data-sequence signal by a chip-sequence signal. A de-spreader equivalently may be realized from a matched filer or SAW device, as is well-known in that art.

In FIG. 2, the plurality of spreaders 33 includes a chip-sequence generator 34 for generating a plurality of chip-sequence signals and a plurality of product devices 35. In a preferred embodiment, the plurality of chip-sequence signals is a plurality of orthogonal chip-sequence signals, although a plurality of quasi-orthogonal chip-signal sequence signals also could be used. By quasi-orthogonal chip-sequence signals is meant chip-sequence signals which are nearly orthogonal or which are not orthogonal but have orthogonal type qualities.

The plurality of product devices 35 is coupled to the chip-sequence generator 34, and to the plurality of encoders and interleavers 32, respectively. The plurality of product devices 35 spread-spectrum processes the plurality of FEC encoded and interleaved data channels, as a plurality of spread-spectrum channels. A product device my be embodied as an AND gate, or equivalently from one or more combinations of AND gates, NAND gates, NOR gates, gates or EXCLUSIVE-OR (XOR) gates. An alternative for the plurality of spreaders 33 is a plurality of matched filters or a plurality of surface acoustic wave devices, each having an impulse response matched to one of the chip-sequence signals in the plurality of chip-sequence signals.

The outputs of the plurality of spreaders 33 are combined by a combiner 36 and sent to the modulator 37 and transmitted over a communications channel. The combiner 36 preferably linearly combines the plurality of spread-spectrum channels, as a code-division-multiplexed signal having a multiplicity of channels. The combiner 36 alternatively may non-linearly combine the plurality of spread-spectrum channels, in some applications. The multiplicity of channels is defined by a

respective chip-sequence signal, used for a spread-spectrum channel in the plurality of spread-spectrum channels, as is well-known in the art. The spreaders can operate at a chip rate depending on the desired processing gain.

In the spread-spectrum receiver, the process is reversed. Initially, a received code-division-multiplexed signal is amplified, filtered and shifted to baseband frequence by a demodulator 51. The received code-division-multiplexed signal is then despread by a plurality of de-spreaders 52. The plurality of despreaders 52 may be embodied as a plurality of correlators or a plurality of matched filters. A plurality of surface acoustic wave (SAW) devices alternatively may be used. The outputs of the plurality of de-spreaders are decoded and de-interleaved by a plurality of FEC decoders and de-interleavers 56, to produce a plurality of sub-channels of data. The plurality of sub-channels of data is multiplexed by a multiplexer 57 to generate a replica of the input data.

The modification to FIG. 2, shown in FIG. 4, includes having a data-rate command signal control the demultiplexer 31. Input data to the demultiplexer 31, initially may pass through a buffer 29. The data-rate command signal controls the data rate of data from the demultiplexer 31. More particularly, the data-rate command signal determines the number of data channels having identical data and different data, in the plurality of data channels from demultiplexer 31.

In the exemplary arrangement shown in FIG. 5, the command means, embodied as a command processor 59, and adder means embodied as a multiplicity of adders 53, is added to the embodiment shown in FIG. 3. The multiplicity of adders 53 is coupled between the plurality of despreaders 52 and the plurality of FEC decoders and de-interleavers 56, respectively. The command processor 59 is coupled to the plurality of FEC decoders and de-interleavers 56, the multiplexer 57, and the multiplicity of adders 53. The command processor 59 has a communications link to the spread-spectrum traqnsmitter, for sending the data-rate command signal to the spread-spectrum transmitter.

The multiplicity of FEC decoders generates a syndrome signal from an error rate of the multiplicity of added channels. In response to the syndrome signal, the command processor 59 determines a desired-data rate, and generates a data-rate command signal having the desired data rate. The command processor 59 also generates the adder-control signal, used by the multiplicity of adders 53, for adding together a number of despread channels of the plurality of despread channels. The command processor 59 generates a multiplexer signal having a number of decoded channels to multiplex together. The multiplexer 57, in response to the multiplexer signal, sets the number of the multiplicity of decoded channels to be multiplexed. The multiplexer 57 multiplexes the multiplicity of decoded channels and generates an estimate of the input data.

As illustratively shown in FIG. 4, the input data rate to the transmitter is reduced by a data-rate command signal, which is transmitted from the spread-spectrum receiver. The data rate can be reduced by any factor of the width of the demultiplexer 31. For example, if 16 parallel chip-sequence signals were used, then the input data rate can be reduced by a factor between 2 and 16. In a system, a buffer 29 and flow control may be required. The demultiplexer 31 then outputs identical bits to multiple lines that are fed to the encoders and interleavers 32. For example, the data rate command may be to reduce the data rate by a factor of 2. If 16 parallel chip-sequence signals were used, two spreaders would be devoted to each bit; that is, the transmitted power for each bit would be twice the power than in the maximum data rate situation.

In the exemplary arrangement shown in FIG. 5, the remote receiver further includes command processor 59. The error-rate and data rate command processor 59 reads or is fed the syndrome from the plurality of FEC decoders and de-interleavers 56. In response to the syndrome, the command processor 59 determines a data rate. Thus, the data rate is dependent on the error rate of data being received and decoded by the plurality of FEC decoders. The command processor 59, based on the data rate determined by the command processor 59, generates the data-rate command signal, the adder-control signal, and the multiplexer-control signal. The command processor 59 generates the data-rate command signal shown in FIG. 4.

The receiver shown in FIG. 5 is configured, by way of example, for a data rate reduction by a factor of two. The outputs of every two matched filters are added together before the data sub-streams are decoded and de-interleaved. The add-control signal is generated by the command processor 59. The multiplexer 57 then selects only half the decoder outputs, i.e., half of the plurality of decoded channels, to combine to form the output data. By way example, the syndrome of the FEC decoder is used to measure the error rate. The error rate information is used to generate the data rate command, which is transmitted to the base station transmitter. The error rate processor also controls the multiplexer 57 and the adders 53 as it determines how many of the outputs from the plurality of despreaders 52 should be combined for the reduced error rate.

FIG. 6 shows the despreaders 52 alternatively embodied as a plurality of matched filters 67. Equivalently, the plurality of despreaders may be embodied as a plurality of SAW devices, which mathematically are equivalent to a plurality of matched filters 67.

As illustratively shown in FIG. 7, the present invention also includes a spread-spectrum method for controlling the data rate at a spread-spectrum transmitter. The method includes the steps of demultiplexing 81, in response to a data-rate command signal, input data into a plurality of data channels. The number of data channels in the plurality of data channels is determined from the data rate command signal.

The method includes FEC encoding and interleaving 82 the plurality of data channels as a plurality of FEC encoded and interleaved channels, respectively; and spread-spectrum processing 83 the plurality of FEC encoded and interleaved channels as a plurality of spread-spectrum channels. The plurality of spread-spectrum channels preferably are embodied with a plurality of orthogonal or quasi-orthogonal chip-sequence signals.

The method further includes the steps of combining 84 the plurality of spread-spectrum channels as a code-division-multiplexed signal; and modulating 85 and transmitting the code-division-multiplexed signal, which has the plurality of spread-spectrum channels, over a communications channel.

At a spread-spectrum receiver, the method includes the steps of demodulating 85 or translating the code-division-multiplexed signal to a processing frequency; despreading 92 the code-division-multiplexed signal into a plurality of despread channels, respectively; and adding 93, based on an adder-control signal, at least two despread channels to generate a multiplicity of added channels. The method includes generating 95 a syndrome signal from an error rate of the multiplicity of added channels; FEC decoding and de-inter-

leaving 94 the multiplicity of added channels, and a multiplicity of decoded channels; and, determining 90, in response to the syndrome signal, a desired-data rate. The method further includes generating 90 a data-rate command signal having the desired data rate; generating, in response to the syndrome signal, the adder-control signal for adding together a number of despread channels of the plurality of despread channels; generating 90, in response to the syndrome signal, a multiplexer signal having a number of decoded channels to multiplex together; and multiplexing 96 the multiplicity of decoded channels and an estimate of the input data. The data-rate command signal is sent over a communications channel to the spread-spectrum transmitter.

It will be apparent to those skilled in the art that various modifications can be made to the spread-spectrum communications, variable throughput reduction system and method of the instant invention without departing from the scope or spirit of the invention, and it is intended that the present invention cover modifications and variations of the spread-spectrum communications, variable throughput reduction system and method provided they come within the scope of the appended claims and their equivalents.

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 11321999 |
| **Application Number:** | 13287620 |
| **International Application Number:** | |
| **Confirmation Number:** | 8011 |
| **Title of Invention:** | Variable Throughput Reduction Communications System and Method |
| **First Named Inventor/Applicant Name:** | Joseph Garodnick |
| **Customer Number:** | 36139 |
| **Filer:** | Robert Howard Epstein/Ann Shebovsky |
| **Filer Authorized By:** | Robert Howard Epstein |
| **Attorney Docket Number:** | 1210.104.RE |
| **Receipt Date:** | 02-NOV-2011 |
| **Filing Date:** | |
| **Time Stamp:** | 16:29:43 |
| **Application Type:** | Reissue (Utility) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $6400 |
| RAM confirmation Number | 3006 |
| Deposit Account | 502449 |
| Authorized User | EPSTEIN,ROBERT H |

The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows:

Charge any Additional Fees required under 37 C.F.R. Section 1.16 (National application filing, search, and examination fees)

**File Listing:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Transmittal Reissue Application | Application-Transmittal.pdf | 50757<br>ed803a898455906ce5d6b4a8aa8079e297ef4a19 | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 2 | Miscellaneous Incoming Letter | Reissue-Fee-XML.pdf | 41593<br>cbcc41ce8c78412743027b993185cfbc3cf0d76d | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 3 | Miscellaneous Incoming Letter | Application-Cvr.pdf | 50700<br>4acf2eea4b797fdb3f87b3b656d07873b690489e | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 4 | | PN-7613247.pdf | 2863604<br>bef31b27421498957f5c83fe2f57d25cc08bc725 | yes | 15 |

**Multipart Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Specification | 1 | 5 |
| Claims | 6 | 7 |
| Abstract | 8 | 8 |
| Drawings-only black and white line drawings | 9 | 15 |

| | | | | | |
|---|---|---|---|---|---|
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 5 | Reissue dec filed in accordance with MPEP 1414 | Executed-Declaration.pdf | 450368<br>fb1c9012b6c845cf66c40f71969afa4ce8dd5f0f | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 6 | Power of Attorney | Executed-POA.pdf | 247098<br>c6fc11593e67426da72a0c5d5a91673b0723166f | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 7 | Consent of Assignee accompanying the declaration | sb0053-Consent-of-Assignee.pdf | 213443<br>36dfa295d41cf024ee8bda9234da4790331<br>3fe0e | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 8 | Assignee showing of ownership per 37 CFR 3.73(b). | sb0096-Statement.pdf | 233225<br>6891feafab2dede50c84d407b68bd8c5951<br>80f8f | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 9 | Preliminary Amendment | Prelim-Amend.pdf | 2130340<br>551d6473fd09ecf8cfba7de474fe3dd6bc2f9<br>3aa | no | 16 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 10 | Transmittal Letter | IDS-CVR.pdf | 149695<br>e4ca960c45ab7322a6e7b3d5efc916e751d<br>9e7af | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 11 | Information Disclosure Statement (IDS) Form (SB08) | PTO-SB-08a.pdf | 258410<br>7839d446ab4172e9e879ad211302424845<br>499870 | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| This is not an USPTO supplied IDS fillable form | | | | | |
| 12 | Information Disclosure Statement (IDS) Form (SB08) | PTO-SB-08b.pdf | 217211<br>8e4cf8775dba428ce01d89cc70c37707f0b1<br>5dc9 | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| This is not an USPTO supplied IDS fillable form | | | | | |
| 13 | Non Patent Literature | NPL-1.pdf | 1646140<br>baddfff406612d6828fb0f7fdf0282b451b5f<br>2ac | no | 5 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 14 | Non Patent Literature | NPL-2.pdf | 1733884<br>9a455124174e51dec21ae65ed6e937f2cf02<br>e316 | no | 5 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 15 | Fee Worksheet (SB06) | fee-info.pdf | 38122<br>2d52d680c2cad0e3eff0a7e55196ac971e44 8dda | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| | | **Total Files Size (in bytes):** | 10324590 | | |

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**

**National Stage of an International Application under 35 U.S.C. 371**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**

**New International Application Filed with the USPTO as a Receiving Office**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | |
| **Filing Date:** | |
| **Title of Invention:** | Variable Throughput Reduction Communications System and Method |
| **First Named Inventor/Applicant Name:** | Joseph Garodnick |
| **Filer:** | Robert Howard Epstein/Ann Shebovsky |
| **Attorney Docket Number:** | 1210.104.RE |

Filed as Large Entity

## Reissue (Utility) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| Utility Reissue Basic | 1014 | 1 | 380 | 380 |
| Design and utility Reissue Basic | 1114 | 1 | 620 | 620 |
| Design and utility Reissue Basic | 1314 | 1 | 750 | 750 |
| **Pages:** | | | | |
| **Claims:** | | | | |
| Reissue claims in excess of 20 for large | 1205 | 40 | 60 | 2400 |
| Independent claims reissue large | 1204 | 9 | 250 | 2250 |
| **Miscellaneous-Filing:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | **Total in USD ($)** | | **6400** |

PTO/SB/08b (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

Substitute for form 1449/PTO

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT

*(Use as many sheets as necessary)*

| Complete if Known | |
|---|---|
| Application Number | |
| Filing Date | |
| First Named Inventor | Joseph Garodnick |
| Art Unit | |
| Examiner Name | |
| Attorney Docket Number | 1210.104.RE |

Sheet 1 of 1

## NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[2] |
|---|---|---|---|
| | | ZHONG YE, GARY J. SAULNIER, DENNIS LEE & MICHAEL J. MEDLEY, A Rate-Adaptive Coded OFDM (RA-OFDM) Spread Spectrum System for Tactical Radio Networks", 1999 IEEE, pgs. 67-71. | |
| | | ZHONG YE, GARY J. SAULNIER & MICHAEL J. MEDLEY, "Rate Adaptive OFDM (RA-OFDM) Spread Spectrum System for LEO Satellite Communications", 1999 IEEE, pgs. 621-625. | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] Applicant's unique citation designation number (optional). [2] Applicant is to place a check mark here if English language Translation is attached.

This collection of information is required by 37 CFR 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: **Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

PTO/SB/08a (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

Substitute for form 1449/PTO

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT

*(Use as many sheets as necessary)*

| Sheet | 1 | of | 1 |
|---|---|---|---|

| Complete if Known | |
|---|---|
| Application Number | |
| Filing Date | |
| First Named Inventor | Joseph Garodnick |
| Art Unit | |
| Examiner Name | |
| Attorney Docket Number | 1210.104 RE |

## U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number<br>Number-Kind Code[2 (if known)] | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | US- 5,579,304 | 11/1996 | Sugimoto et al | |
| | | US- 5,673,286 | 09/1997 | Lomp | |
| | | US- 5,742,640 | 04/1998 | Haoui et al | |
| | | US- 5,926,500 | 07/1999 | Odenwalder | |
| | | US- 6,075,809 | 06/2000 | Naruse | |
| | | US- 6,192,066 | 02/2001 | Asanuma | |
| | | US- 6,289,039 | 09/2001 | Garodnick | |
| | | US- 6,738,942 | 05/2004 | Sridharan et al | |
| | | US- 6,747,948 | 06/2005 | Saraf et al | |
| | | US- 6,895,037 | 05/2005 | Garodnick | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document<br>Country Code[3] "Number [4] "Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Atty Docket No.: 1210.104.RE

In re the Patent application of

Joseph Garodnick

Serial No.: Not Yet Assigned (Reissue Application of Patent No. 7,613,247)

Filed: Herewith

For: Variable Throughput Reduction Communications System and Method

## INFORMATION DISCLOSURE STATEMENT

**MAIL STOP: PATENT APPLICATION**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

Pursuant to the duty imposed by 37 CFR 1.56 to disclose information which may be material to the above-identified patent application, the Examiner's attention is directed to the documents listed on the enclosed Information Disclosure Statement.

All patents listed on the enclosed Information Disclosure Statement were cited by or submitted to the Patent Office in Application Serial No. 11/113,956, filed April 25, 2005, issued as U.S. Patent No. 7,613,247. Copies of the two (2) listed non-patent literature documents are attached.

Since this Information Disclosure Statement is being filed in compliance with 37 C.F.R. §1.97(b), within three (3) months of the filing date of the above-identified application and/or prior to the mailing date of the first Official Action on the merits, no fee is required in connection with its filing.

Respectfully submitted,

Robert H. Epstein
Registration No. 24,353

Epstein & Gerken
1901 Research Blvd., Suite 340
Rockville, Maryland 20850

Filed Electronically via EFS: 11-02-2011

## REMARKS

By way of this Preliminary Amendment, claims 1-10 in U.S. Patent No. 7,613,247 (the '247 patent) are retained in unamended form. New claims 11-60 are added for the same invention as disclosed in the '247 patent. Accordingly, claims 1-60 are presently pending in the present reissue application.

Support for new claims 11-18 and 49-60, which relate to receivers and methods for recovering or receiving signals, can be found, for example, in Figs. 5, 6 and 7 and the description at column 2, line 1 – column 3, line 9, column 3, line 47 – column 5, line 13, and column 7, line 5 – column 9, line 14.

Support for new claims 19-48, which relate to transmitters and methods of transmitting signals, can be found, for example, in Figs. 4 and 7 and the description at column 2, line 1 – column 3, line 9, column 3, line 47 – column 5, line 13, and column 5, line 14 –column 9, line 14.

The '247 patent was not and is not involved in any prior or concurrent proceedings as described in 37 C.F.R. 1.178.

In view of the above, the present application should be in condition for early action on the merits.

Respectfully submitted,

Robert H. Epstein
Registration No. 24,353

EPSTEIN & GERKEN
1901 Research Boulevard, Suite 340
Rockville, Maryland 20850-3164
(301) 610-7634

Filed Electronically via EFS: 11-02-2011

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Atty Docket No.: 1210.104.RE

In re the PATENT application of

Joseph Garodnick

Application for Reissue of Patent No. 7,613,247

Filed: Herewith

For: Variable Throughput Reduction Communications System and Method

## PRELIMINARY AMENDMENT FOR REISSUE APPLICATION

**MAIL STOP: PATENT APPLICATION**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

Prior to examination on the merits, please amend the above-identified reissue application as follows:

## IN THE CLAIMS:

Please add new claims 11-60 as provided below.

PTO/SB/53 (09-07)
Approved for use through 08/31/2013. OMB 0651-0033
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| REISSUE APPLICATION: CONSENT OF ASSIGNEE; STATEMENT OF NON-ASSIGNMENT | Docket Number (Optional) 1210.104.RE |
|---|---|
| This is part of the application for a reissue patent based on the original patent identified below. | |
| Name of Patentee(s) Joseph Garodnick | |
| Patent Number 7,613,247 | Date Patent Issued 11/03/2009 |
| Title of Invention Variable throughput Reduction Communications System and Method | |

1. ☑ Filed herein is a statement under 37 CFR 3.73(b). (Form PTO/SB/96)

2. ☐ Ownership of the patent is in the inventor(s), and no assignment of the patent is in effect.

One of boxes 1 or 2 above must be checked. If multiple assignees, complete this form for each assignee. If box 2 is checked, skip the next entry and go directly to "Name of Assignee".

The written consent of all assignees and inventors owning an undivided interest in the original patent is included in this application for reissue.

The assignee(s) owning an undivided interest in said original patent is/are Linex Technologies, Inc., and the assignee(s) consents to the accompanying application for reissue.

Name of assignee/inventor (if not assigned)

| Signature | Date |
|---|---|
| [signature] | Nov 1, 2011 |

Typed or printed name and title of person signing for assignee (if assigned)

Donald L. Schilling, CEO Linex Technologies, Inc.

This collection of information is required by 37 CFR 1.172. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 6 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

PTO/SB/81 (01-09)
Approved for use through 11/30/2011. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# POWER OF ATTORNEY OR REVOCATION OF POWER OF ATTORNEY WITH A NEW POWER OF ATTORNEY AND CHANGE OF CORRESPONDENCE ADDRESS

| | |
|---|---|
| **Application Number** | |
| **Filing Date** | |
| **First Named Inventor** | Joseph Garodnick |
| **Title** | Variable Throughput Reduction |
| **Art Unit** | |
| **Examiner Name** | |
| **Attorney Docket Number** | 1210.104.RE |

I hereby revoke all previous powers of attorney given in the above-identified application.

☐ A Power of Attorney is submitted herewith.

*OR*

☐ I hereby appoint Practitioner(s) associated with the following Customer Number as my/our attorney(s) or agent(s) to prosecute the application identified above, and to transact all business in the United States Patent and Trademark Office connected therewith: 36139

*OR*

☒ I hereby appoint Practitioner(s) named below as my/our attorney(s) or agent(s) to prosecute the application identified above, and to transact all business in the United States Patent and Trademark Office connected therewith:

| Practitioner(s) Name | Registration Number |
|---|---|
| Robert H. Epstein | 24,353 |
| Karen M. Gerken | 31,161 |
| | |
| | |

Please recognize or change the correspondence address for the above-identified application to:

☐ The address associated with the above-mentioned Customer Number.

*OR*

☐ The address associated with Customer Number:

*OR*

| | | | | | |
|---|---|---|---|---|---|
| ☒ Firm or Individual Name | Epstein & Gerken | | | | |
| Address | 1901 Research Boulevard, Suite 340 | | | | |
| City | Rockville | State | MD | Zip | 20850 |
| Country | US | | | | |
| Telephone | 301-610-7634 | Email | rhe@epsteingerken.com | | |

I am the:

☒ Applicant/Inventor.

*OR*

☐ Assignee of record of the entire interest. See 37 CFR 3.71.
*Statement under 37 CFR 3.73(b) (Form PTO/SB/96) submitted herewith or filed on* ____________

**SIGNATURE of Applicant or Assignee of Record**

| | | | |
|---|---|---|---|
| Signature | [signature] | Date | 11/2/2011 |
| Name | Joseph Garodnick | Telephone | 508 428 6739 |
| Title and Company | | | |

**NOTE:** Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more than one signature is required, see below*.

☐ *Total of ____________ forms are submitted.

This collection of information is required by 37 CFR 1.31, 1.32 and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

PTO/SB/51 (06-08)
Approved for use through 08/31/2010. OMB 0651-0033
U.S. Patent and Trademark Office. U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| REISSUE APPLICATION DECLARATION BY THE INVENTOR | Docket Number (Optional) 1210.104.RE |
|---|---|

I hereby declare that:
Each inventor's residence, mailing address and citizenship are stated below next to their name.
I believe the inventors named below to be the original and first inventor(s) of the subject matter which is described and claimed in patent number 7,613,247, granted 11/03/2009 and for which a reissue patent is sought on the invention entitled Variable Throughput Reduction Communications System and Method, the specification of which

☑ is attached hereto.

☐ was filed on ______ as reissue application number ______

and was amended on ______.
(If applicable)

I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment referred to above.
I acknowledge the duty to disclose information which is material to patentability as defined in 37 CFR 1.56.

☐ I hereby claim foreign priority benefits under 35 U.S.C. 119(a)-(d) or (f), or 365(b). Attached is form PTO/SB/02B (or equivalent) listing the foreign applications.

I verily believe the original patent to be wholly or partly inoperative or invalid, for the reasons described below. (Check all boxes that apply.)

☐ by reason of a defective specification or drawing.

☑ by reason of the patentee claiming more or less than he had the right to claim in the patent.

☐ by reason of other errors.

At least one error upon which reissue is based is described below. If the reissue is a broadening reissue, such must be stated with an explanation as to the nature of the broadening:

This reissue application is broadening to correct errors of claiming less than the patentee had a right to claim. Broadening results from adding new claims directed to a transmitter, to a transmitter method, to a receiver and to a receiver method.



This collection of information is required by 37 CFR 1.175. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

PTO/SB/51 (06-08)
Approved for use through 08/31/2010. OMB 0651-0033
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| (REISSUE APPLICATION DECLARATION BY THE INVENTOR, page 2) | Docket Number (Optional) 1210.104.RE |
|---|---|

All errors corrected in this reissue application arose without any deceptive intention on the part of the applicant.

Note: To appoint a power of attorney, use form PTO/SB/81.

Correspondence Address: Direct all communications about the application to:

☐ The address associated with Customer Number: 

*OR*

| | | | | | |
|---|---|---|---|---|---|
| ☑ Firm or Individual Name | Epstein & Gerken | | | | |
| Address | 1901 Research Boulevard, Suite 340 | | | | |
| City | Rockville | State | MD | Zip | 20850 |
| Country | US | | | | |
| Telephone | 301-610-7634 | Email | rhe@epsteingerken.com | | |

## WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine and imprisonment, or both, under 18 U.S.C. 1001, and that such willful false statements may jeopardize the validity of the application, any patent issuing thereon, or any patent to which this declaration is directed.

| | |
|---|---|
| Full name of sole or first inventor (given name, family name) Joseph Garodnick | |
| Inventor's signature [signature] | Date Nov 2, 2011 |
| Residence Centerville, Massachusetts | Citizenship US |
| Mailing Address 56 Wild Goose Way, Centerville, Massachusetts 02632 | |

| | |
|---|---|
| Full name of second joint inventor (given name, family name) | |
| Inventor's signature | Date |
| Residence | Citizenship |
| Mailing Address | |

☐ Additional joint inventors or legal representative(s) are named on separately numbered sheets forms PTO/SB/02A or 02LR attached hereto.




FIG. 1
PRIOR ART




FIG. 2 PRIOR ART




FIG. 3
PRIOR ART


57
37
MODULATOR
36
33
39
SPREADERS
ORTHOGONAL CHIP SEQUENCE GENERATOR
32
40
FEC ENCODER AND INTERLEAVER
FLOW CONTROL
DATA IN
DEMUX
31
DATA-RATE COMMAND SIGNAL
BUFFER
29

FIG. 4


DATA OUT
57
MULTIPLEXER
56
FEC DECODER AND DEINTERLEAVER
SYNDROME
ERROR RATE AND DATA RATE COMMAND PROCESSOR
59
53
ADDER CONTROL
ORTHOGONAL CHIP SEQUENCE GENERATOR
67
66
51
DEMODULATOR
48
DATA-RATE COMMAND

FIG. 5


48
51
DEMODULATOR
68
MF1
MF2
MF3
MF4
MF5
MF6
53
ADDER-CONTROL SIGNAL
FEC DECODER AND DEINTERLEAVER
SYNDROME SIGNAL
57
MULTIPLEXER
DATA OUT
59
ERROR RATE AND DATA RATE COMMAND PROCESSOR
DATA RATE COMMAND SIGNAL

FIG.6


DEMULTIPLEXING INPUT DATA
81
FEC ENCODING AND BIT INTERLEAVING DATA CHANNELS
82
SPREAD-SPECTRUM PROCESSING ENCODED CHANNELS
83
COMBINING SPREAD-SPECTRUM CHANNELS
84
MODULATING SPREAD-SPECTRUM SIGNAL
85
DEMODULATING SPREAD-SPECTRUM SIGNAL
91
DESPREADING SPREAD-SPECTRUM CHANNELS
92
90
PROCESSING SYNDROME SIGNAL TO GENERATE DATA-RATE COMMAND SIGNAL, ADDER-CONTROL SIGNAL AND MULTIPLEXER SIGNAL
ADDING TWO OR MORE DESPREAD CHANNELS
93
FEC DECODING AND DE-INTERLEAVING DESPREAD CHANNELS
94
GENERATING SYNDROME SIGNAL
95
MULTIPLEXING DECODED CHANNELS
96

FIG.7

PTO/SB/56 (09-11)
Approved for use through 08/31/2013. OMB 0651-0033
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# REISSUE APPLICATION FEE TRANSMITTAL FORM

Docket Number (Optional)
1210.104.RE

## Application as Filed – Part 1

| | (1) Claims in Patent | (2) Claims Filed in Reissue Application | (3) Number Extra | Small Entity Rate ($) | Small Entity Fee ($) | | Other than a Small Entity Rate ($) | Other than a Small Entity Fee ($) |
|---|---|---|---|---|---|---|---|---|
| Total Claims (37 CFR 1.16(i)) | (A) 10 | (B) 60 | **** 40 = | x = | | | x 60 = | 2400.00 |
| Independent Claims (37 CFR 1.16(h)) | (C) 3 | (D) 12 | * 9 = | x = | | | x 250 = | 2250.00 |
| Application Size Fee (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | or | | |
| | | | Filing Fee (37 CFR 1.16(e)) | | | | | 380.00 |
| | | | Search Fee (37 CFR 1.16(n)) | | | | | 620.00 |
| | | | Examination Fee (37 CFR 1.16(r)) | | | | | 750.00 |
| | | | Total Filing Fee | | | | | 6400.00 |

## Application as Amended – Part 2

| | (1) Claims Remaining After Amendment | | (2) Highest Number Previously Paid For | (3) Extra Claims Present | Small Entity Rate ($) | Small Entity Fee ($) | | Other than a Small Entity Rate ($) | Other than a Small Entity Fee ($) |
|---|---|---|---|---|---|---|---|---|---|
| Total Claims (37 CFR 1.16(i)) | *** | MINUS | ** | = | X = | | | x = | |
| Independent Claims (37 CFR 1.16(h)) | *** | MINUS | ***** | = | x = | | or | x = | |
| Application Size Fee (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | | | | |
| | | | | Total Additional Fee | | | | | |

* Enter (D) minus 3, or enter "0" if (D) is less than 3.
** If the "Highest Number of Total Claims Previously Paid For" is less than 20, enter "20" in this space.
*** After any cancellation of claims.
**** Enter (B) – 20, or enter "0" if (B) is less than 20.
***** If the "Highest Number of Independent Claims Previously Paid For" is less than 3, enter "3" in this space.

☐ Applicant claims small entity status. See 37 CFR 1.27.

☐ Please charge Deposit Account No. ______________ in the amount of ______________.

☒ The Director is hereby authorized to charge any additional fees under 37 CFR 1.16 or 1.17 which may be required, or credit any overpayment to Deposit Account No. 502449.

☐ A check in the amount of $ ______________ to cover the filing/additional fee is enclosed.

☒ Payment by credit card. Form PTO-2038 is attached. WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.

/robert h epstein/
Signature

11-02-2011
Date

Robert H. Epstein
Typed or printed name

24,353
Registration Number, if applicable

301-610-7634
Telephone Number

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

# Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

PTO/SB/50 (09-07)
Approved for use through 08/31/2010. OMB 0651-0033
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# REISSUE PATENT APPLICATION TRANSMITTAL

| | | |
|---|---|---|
| *Address to:* **Mail Stop Reissue Commissioner for Patents P.O. Box 1450 Alexandria, VA 22313-1450** | Attorney Docket No. | 1210.104.RE |
| | First Named Inventor | Joseph Garodnick |
| | Original Patent Number | 7,613,247 |
| | Original Patent Issue Date (Month/Day/Year) | 11/03/2009 |
| | Express Mail Label No. | |

**APPLICATION FOR REISSUE OF:** (*Check applicable box*) ☑ Utility Patent ☐ Design Patent ☐ Plant Patent

## APPLICATION ELEMENTS (37 CFR 1.173)

1. ☑ Fee Transmittal Form (PTO/SB/56) (Submit a duplicate copy)
2. ☐ Applicant claims small entity status. See 37 CFR 1.27.
3. ☑ Specification and Claims in double column copy of patent format *(amended, if appropriate)*
4. ☑ Drawing(s) *(proposed amendments, if appropriate)*
5. ☑ Reissue Oath/Declaration (original or copy) (37 C.F.R. 1.175) (PTO/SB/51 or 52)
6. ☑ Power of Attorney
7. ☑ Original U.S. Patent currently assigned? ☑ Yes ☐ No *(If Yes, check applicable box(es))*
   - ☑ Written Consent of all Assignees (PTO/SB/53)
   - ☑ 37 CFR 3.73(b) Statement (PTO/SB/96)
8. ☐ CD-ROM or CD-R in duplicate, Computer Program (Appendix) or large table
   - ☐ Landscape Table on CD
9. Nucleotide and/or Amino Acid Sequence Submission *(if applicable, items a. – c. are required))*
   - a. ☐ Computer Readable Form (CRF)
   - b. Specification Sequence Listing on:
     - i ☐ CD-ROM (2 copies) or CD-R (2 copies); **or**
     - ii ☐ paper
   - c. ☐ Statements verifying identity of above copies

## ACCOMPANYING APPLICATION PARTS

10. ☑ Statement of status and support for all changes to the claims. See 37 CFR 1.173(c).
11. ☐ Foreign Priority Claim (35 U.S.C. 119) *(if applicable)*
12. ☑ Information Disclosure Statement (IDS) PTO/SB/08 or PTO-1449
    - ☑ Copies of citations attached
13. ☐ English Translation of Reissue Oath/Declaration *(if applicable)*
14. ☑ Preliminary Amendment
15. ☐ Return Receipt Postcard (MPEP 503) (Should be specifically itemized)
16. ☐ Other:

## 17. CORRESPONDENCE ADDRESS

☑ The address associated with *Customer Number:* 36139 ***OR*** ☐ *Correspondence address below*

| | | | | | |
|---|---|---|---|---|---|
| Name | | | | | |
| Address | | | | | |
| City | | State | | Zip Code | |
| Country | | Telephone | | Email | |

| | | | |
|---|---|---|---|
| Signature | /robert h epstein/ | Date | 11-02-2011 |
| Name (Print/Type) | Robert H. Epstein | Registration No. (Attorney/Agent) | 24,353 |

This collection of information is required by 37 CFR 1.173. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Mail Stop Reissue, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

# PATENT APPLICATION FEE DETERMINATION RECORD
Substitute for Form PTO-875

Application or Docket Number
13/287,620

## APPLICATION AS FILED - PART I

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | SMALL ENTITY RATE($) | SMALL ENTITY FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY FEE($) |
|---|---|---|---|---|---|---|---|
| BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | | N/A | 380 |
| SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | | N/A | 620 |
| EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | | N/A | 750 |
| TOTAL CLAIMS (37 CFR 1.16(i)) | 60 minus 20 = | * 40 | | | OR | x 60 = | 2400 |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | 12 minus 3 = | * 9 | | | | x 250 = | 2250 |
| APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | | 0.00 |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | | 0.00 |
| | | | TOTAL | | | TOTAL | 6400 |

* If the difference in column 1 is less than zero, enter "0" in column 2.

## APPLICATION AS AMENDED - PART II

| AMENDMENT A | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE($) | SMALL ENTITY ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * | Minus | ** | = | x = | | OR | x = | |
| Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x = | | OR | x = | |
| Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

| AMENDMENT B | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | RATE($) | ADDITIONAL FEE($) | OR | RATE($) | ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * | Minus | ** | = | x = | | OR | x = | |
| Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x = | | OR | x = | |
| Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest found in the appropriate box in column 1.

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 13/287,620 | 11/02/2011 | 2611 | 6400 | 1210.104.RE | 60 | 12 |

**CONFIRMATION NO. 8011**

36139
EPSTEIN & GERKEN
1901 RESEARCH BOULEVARD
SUITE 340
ROCKVILLE, MD 20850

**FILING RECEIPT**

*OC000000050953063*

Date Mailed: 11/15/2011

Receipt is acknowledged of this reissue patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please submit a written request for a Filing Receipt Correction. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections**

**Applicant(s)**

Joseph Garodnick, Centerville, MA;

**Assignment For Published Patent Application**

Linex Technologies, Inc. (of DE)

**Power of Attorney:** The patent practitioners associated with Customer Number 36139

**Domestic Priority data as claimed by applicant**

This application is a REI of 11/113,956 04/25/2005 PAT 7,613,247
which is a CON of 09/946,841 09/06/2001 PAT 6,895,037
which is a CON of 09/594,440 06/14/2000 PAT 6,289,039

**Foreign Applications** (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.)

**If Required, Foreign Filing License Granted:** 11/14/2011

The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 13/287,620**

**Projected Publication Date:** None, application is not eligible for pre-grant publication

**Non-Publication Request:** No

**Early Publication Request:** No

**Title**

VARIABLE THROUGHPUT REDUCTION COMMUNICATIONS SYSTEM AND METHOD

**Preliminary Class**

375

## PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4158).

## LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

**GRANTED**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as

set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

**NOT GRANTED**

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

***SelectUSA***

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation and commercialization of new technologies. The USA offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to encourage, facilitate, and accelerate business investment. To learn more about why the USA is the best country in the world to develop technology, manufacture products, and grow your business, visit SelectUSA.gov.

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 2218 | rate with (chang$3 adjust$3) with (multiplex$3 mux) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/02/16 09:14 |
| L2 | 113 | (lower higher) with 1 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/02/16 09:16 |
| L3 | 327 | rate with (chang$3 adjust$3) with (demultiplex$3 de-multiplex$3 de-mux demux) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/02/16 09:34 |
| L4 | 10 | quality with 3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/02/16 09:35 |

**EAST Search History (Interference)**

<This search history is empty>

**2/16/2012 10:54:26 AM**
**C:\Users\dvo\Documents\EAST\Workspaces\Default EAST Workspace (Flat Panel LANDSCAPE).wsp**

Case No. 1:21-cv-01428-RM-MEH Document 1-2 filed 05/26/21 USDC Colorado pg 67 of 182

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 3441 | transmi$5 with receiv$3 with (feedback (feed adj back) back) with rate | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/02/15 09:36 |
| L2 | 625992 | multiplex$3 demultiplex$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/02/15 09:36 |
| L3 | 23368 | interleav$3 and (deinterleav$3 de-interleav$3) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/02/15 09:37 |
| L4 | 269 | 1 and 2 and 3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/02/15 09:37 |
| L5 | 7746 | (transmi$5 with receiv$3 with (feedback (feed adj back) back)) SAME rate | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/02/15 10:13 |
| L6 | 622 | 2 and 3 and 5 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/02/15 10:13 |
| L7 | 353 | 6 not 4 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/02/15 10:13 |

**EAST Search History (Interference)**

<This search history is empty>

**2/15/2012 10:44:31 AM**
**C:\ Users\ dvo\ Documents\ EAST\ Workspaces\ Default EAST Workspace (Flat Panel LANDSCAPE).wsp**

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 625992 | multiplex$3 demultiplex$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/02/15 17:11 |
| L2 | 87874 | multiplex$3 and (demultiplex$3 de-multiplex$3) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/02/15 17:11 |
| L3 | 453357 | decod$3 and cod$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/02/15 17:12 |
| L4 | 23368 | interleav$3 and (deinterleav$3 de-interleav$3) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/02/15 17:12 |
| L5 | 57309 | spread adj spectrum | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/02/15 17:13 |
| L6 | 754 | 2 and 3 and 4 and 5 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/02/15 17:13 |
| L7 | 7746 | (transmi$5 with receiv$3 with (feedback (feed adj back) back)) SAME rate | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/02/15 17:13 |
| L8 | 55 | 6 and 7 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/02/15 17:13 |
| S1 | 3441 | transmi$5 with receiv$3 with (feedback (feed adj back) back) with rate | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/02/15 09:36 |
| S2 | 625992 | multiplex$3 demultiplex$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/02/15 09:36 |
| S3 | 23368 | interleav$3 and (deinterleav$3 de-interleav$3) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/02/15 09:37 |
| S4 | 269 | S1 and S2 and S3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/02/15 09:37 |

| | | | | | | |
|---|---|---|---|---|---|---|
| S5 | 7746 | (transmi$5 with receiv$3 with (feedback (feed adj back) back)) SAME rate | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/02/15 10:13 |
| S6 | 622 | S2 and S3 and S5 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/02/15 10:13 |
| S7 | 353 | S6 not S4 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/02/15 10:13 |
| S8 | 4 | ("6895037" "6289039").pn. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/02/15 10:45 |
| S9 | 4 | (multiplex$3 mux) and S8 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/02/15 10:46 |
| S10 | 109569 | error adj rate | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/02/15 14:02 |
| S11 | 2 | "20110310996".pn. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/02/15 14:02 |
| S12 | 1 | S10 and S11 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/02/15 14:02 |
| S13 | 1 | feedback and S11 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/02/15 14:07 |
| S14 | 1 | (error adj rate) and "20070066320".pn. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/02/15 14:21 |

**EAST Search History (Interference)**

<This search history is empty>

**2/15/2012 5:20:59 PM**
**C:\Users\dvo\Documents\EAST\Workspaces\Default EAST Workspace (Flat Panel LANDSCAPE).wsp**

**STORMBORN 000056**

Receipt date: 11/02/2011 13287620 - GAU: 2611

PTO/SB/08b (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

Substitute for form 1449/PTO

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT

*(Use as many sheets as necessary)*

Sheet 1 of 1

| Complete if Known | |
|---|---|
| Application Number | |
| Filing Date | |
| First Named Inventor | Joseph Garodnick |
| Art Unit | |
| Examiner Name | |
| Attorney Docket Number | 1210.104.RE |

## NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[2] |
|---|---|---|---|
| | | ZHONG YE, GARY J. SAULNIER, DENNIS LEE & MICHAEL J. MEDLEY, A Rate-Adaptive Coded OFDM (RA-OFDM) Spread Spectrum System for Tactical Radio Networks", 1999 IEEE, pgs. 67-71. | |
| | | ZHONG YE, GARY J. SAULNIER & MICHAEL J. MEDLEY, "Rate Adaptive OFDM (RA-OFDM) Spread Spectrum System for LEO Satellite Communications", 1999 IEEE, pgs. 621-625. | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Examiner Signature | /Don Vo/ | Date Considered | 02/13/2012 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] Applicant's unique citation designation number (optional). [2] Applicant is to place a check mark here if English language Translation is attached.

This collection of information is required by 37 CFR 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: **Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /D.V./

Receipt date: 11/02/2011 13287620 - GAU: 2611

PTO/SB/08a (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

Substitute for form 1449/PTO

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT

*(Use as many sheets as necessary)*

Sheet 1 of 1

| *Complete if Known* | |
|---|---|
| Application Number | |
| Filing Date | |
| First Named Inventor | Joseph Garodnick |
| Art Unit | |
| Examiner Name | |
| Attorney Docket Number | 1210.104.RE |

## U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number<br>Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | US- 5,579,304 | 11/1996 | Sugimoto et al | |
| | | US- 5,673,286 | 09/1997 | Lomp | |
| | | US- 5,742,640 | 04/1998 | Haoui et al | |
| | | US- 5,926,500 | 07/1999 | Odenwalder | |
| | | US- 6,075,809 | 06/2000 | Naruse | |
| | | US- 6,192,066 | 02/2001 | Asanuma | |
| | | US- 6,289,039 | 09/2001 | Garodnick | |
| | | US- 6,738,942 | 05/2004 | Sridharan et al | |
| | | US- 6,747,948 | 06/2005 | Saraf et al | |
| | | US- 6,895,037 | 05/2005 | Garodnick | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document<br>Country Code[3] Number[4] Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | /Don Vo/ | Date Considered | 02/13/2012 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

ALL REFERENCES CONSIDERED EXCEPT W[illegible]GH. /D.V./

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# BIB DATA SHEET

**CONFIRMATION NO. 8011**

| SERIAL NUMBER | FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 13/287,620 | 11/02/2011<br>**RULE** | 375 | 2611 | 1210.104.RE |

**APPLICANTS**
Joseph Garodnick, Centerville, MA;

** **CONTINUING DATA** *************************
This application is a REI of 11/113,956 04/25/2005 PAT 7,613,247
which is a CON of 09/946,841 09/06/2001 PAT 6,895,037
which is a CON of 09/594,440 06/14/2000 PAT 6,289,039

** **FOREIGN APPLICATIONS** *************************

** **IF REQUIRED, FOREIGN FILING LICENSE GRANTED** **
11/14/2011

| Foreign Priority claimed ☐ Yes ☑ No<br>35 USC 119(a-d) conditions met ☐ Yes ☑ No<br>Verified and Acknowledged /DON NGUYEN VO/ Examiner's Signature | ☐ Met after Allowance<br>Initials | STATE OR COUNTRY | SHEETS DRAWINGS | TOTAL CLAIMS | INDEPENDENT CLAIMS |
|---|---|---|---|---|---|
| | | MA | 7 | 60 | 12 |

**ADDRESS**

EPSTEIN & GERKEN
1901 RESEARCH BOULEVARD
SUITE 340
ROCKVILLE, MD 20850
UNITED STATES

**TITLE**

VARIABLE THROUGHPUT REDUCTION COMMUNICATIONS SYSTEM AND METHOD

| FILING FEE RECEIVED | FEES: Authority has been given in Paper | |
|---|---|---|
| 6400 | FEES: Authority has been given in Paper<br>No.____________ to charge/credit DEPOSIT ACCOUNT<br>No.____________ for following: | ☐ All Fees<br>☐ 1.16 Fees (Filing)<br>☐ 1.17 Fees (Processing Ext. of time)<br>☐ 1.18 Fees (Issue)<br>☐ Other ________________<br>☐ Credit |

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 13287620 | GARODNICK, JOSEPH |
| | **Examiner** | **Art Unit** |
| | DON N VO | 2611 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 375 | 141, 144, 145-149, 260, 261, 295, 296, 316 | 2/15/12 & 2/16/12 | DV |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| | | |

## INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

| | |
|---|---|
| | /DON N VO/<br>Primary Examiner.Art Unit 2611 |

| *Index of Claims* | Application/Control No. 13287620 | Applicant(s)/Patent Under Reexamination GARODNICK, JOSEPH |
|---|---|---|
| | Examiner DON N VO | Art Unit 2611 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant ☐ CPA ☐ T.D. ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 02/16/2012 | | | | | | | |
| | 1 | ✓ | | | | | | | |
| | 2 | O | | | | | | | |
| | 3 | ✓ | | | | | | | |
| | 4 | ✓ | | | | | | | |
| | 5 | ✓ | | | | | | | |
| | 6 | O | | | | | | | |
| | 7 | ✓ | | | | | | | |
| | 8 | ✓ | | | | | | | |
| | 9 | O | | | | | | | |
| | 10 | ✓ | | | | | | | |
| | 11 | ✓ | | | | | | | |
| | 12 | ✓ | | | | | | | |
| | 13 | ✓ | | | | | | | |
| | 14 | ✓ | | | | | | | |
| | 15 | ✓ | | | | | | | |
| | 16 | ✓ | | | | | | | |
| | 17 | ✓ | | | | | | | |
| | 18 | ✓ | | | | | | | |
| | 19 | ✓ | | | | | | | |
| | 20 | ✓ | | | | | | | |
| | 21 | ✓ | | | | | | | |
| | 22 | ✓ | | | | | | | |
| | 23 | ✓ | | | | | | | |
| | 24 | ✓ | | | | | | | |
| | 25 | ✓ | | | | | | | |
| | 26 | ✓ | | | | | | | |
| | 27 | ✓ | | | | | | | |
| | 28 | ✓ | | | | | | | |
| | 29 | ✓ | | | | | | | |
| | 30 | ✓ | | | | | | | |
| | 31 | ✓ | | | | | | | |
| | 32 | ✓ | | | | | | | |
| | 33 | ✓ | | | | | | | |
| | 34 | ✓ | | | | | | | |
| | 35 | ✓ | | | | | | | |
| | 36 | ✓ | | | | | | | |

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 13287620 | GARODNICK, JOSEPH |
| | Examiner | Art Unit |
| | DON N VO | 2611 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| ✓ | Rejected | | - | Cancelled | | N | Non-Elected | | A | Appeal |
| = | Allowed | | ÷ | Restricted | | I | Interference | | O | Objected |

☐ Claims renumbered in the same order as presented by applicant ☐ CPA ☐ T.D. ☐ R.1.47

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 02/16/2012 | | | | | | | | |
| | 37 | ✓ | | | | | | | | |
| | 38 | ✓ | | | | | | | | |
| | 39 | ✓ | | | | | | | | |
| | 40 | ✓ | | | | | | | | |
| | 41 | ✓ | | | | | | | | |
| | 42 | ✓ | | | | | | | | |
| | 43 | ✓ | | | | | | | | |
| | 44 | ✓ | | | | | | | | |
| | 45 | ✓ | | | | | | | | |
| | 46 | ✓ | | | | | | | | |
| | 47 | ✓ | | | | | | | | |
| | 48 | ✓ | | | | | | | | |
| | 49 | ✓ | | | | | | | | |
| | 50 | ✓ | | | | | | | | |
| | 51 | ✓ | | | | | | | | |
| | 52 | ✓ | | | | | | | | |
| | 53 | ✓ | | | | | | | | |
| | 54 | ✓ | | | | | | | | |
| | 55 | ✓ | | | | | | | | |
| | 56 | ✓ | | | | | | | | |
| | 57 | ✓ | | | | | | | | |
| | 58 | ✓ | | | | | | | | |
| | 59 | ✓ | | | | | | | | |
| | 60 | ✓ | | | | | | | | |

| ***Notice of References Cited*** | Application/Control No. 13/287,620 | Applicant(s)/Patent Under Reexamination GARODNICK, JOSEPH | |
|---|---|---|---|
| | Examiner Don N. Vo | Art Unit 2611 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-5,995,515 | 11-1999 | Suzuki, Mitsuhiro | 370/465 |
| * | B | US-2006/0098759 | 05-2006 | Tiedemann et al. | 375/297 |
| * | C | US-2007/0066320 | 03-2007 | Padovani et al. | 455/450 |
| * | D | US-2011/0310996 | 12-2011 | Raleigh et al. | 375/295 |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/287,620 | 11/02/2011 | Joseph Garodnick | 1210.104.RE | 8011 |

36139 7590 02/22/2012

EPSTEIN & GERKEN
1901 RESEARCH BOULEVARD
SUITE 340
ROCKVILLE, MD 20850

| EXAMINER | |
|---|---|
| VO, DON NGUYEN | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2611 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 02/22/2012 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

| Office Action Summary | Application No. | Applicant(s) | |
|---|---|---|---|
| | 13/287,620 | GARODNICK, JOSEPH | |
| | **Examiner** | **Art Unit** | |
| | Don N. Vo | 2611 | |

***-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --***

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE *3* MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on *02 November 2011*.

2a)☐ This action is **FINAL**. 2b)☒ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

5)☒ Claim(s) *1-60* is/are pending in the application.

5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☒ Claim(s) *1,3-5,7,8 and 10-60* is/are rejected.

8)☒ Claim(s) *2,6 and 9* is/are objected to.

9)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

10)☐ The specification is objected to by the Examiner.

11)☒ The drawing(s) filed on *02 November 2011* is/are: a)☒ accepted or b)☐ objected to by the Examiner.

Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

12)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

13)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

a)☐ All b)☐ Some * c)☐ None of:

1.☐ Certified copies of the priority documents have been received.

2.☐ Certified copies of the priority documents have been received in Application No. _____.

3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)

2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3) ☒ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date *11/2/11*.

4) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____ .

5) ☐ Notice of Informal Patent Application

6) ☐ Other: _____.

## DETAILED ACTION

### *Claim Rejections - 35 USC § 112*

1. The following is a quotation of the first paragraph of 35 U.S.C. 112:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same and shall set forth the best mode contemplated by the inventor of carrying out his invention.

2. Claims 13, 14, 17, 18, 20, 21, 23, 24, 27, 28, 30-32 are rejected under 35 U.S.C. 112, first paragraph, as failing to comply with the written description requirement. The claim(s) contains subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor(s), at the time the application was filed, had possession of the claimed invention.

The specification, as originally filed, does not provide support for the limitations as now recited in the claims. For examples, ‘different QAM levels” in claims 13 and 17; “different number of spatial streams” in claims 14, 15, 23 and 30; “changing the depth of the modulation while maintaining the same symbol rate” in claims 21, 24, 28 and 31; and “separate antennas” in claims 20 and 27; etc..

3. The following is a quotation of the second paragraph of 35 U.S.C. 112:

> The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

4. Claims 19-32 are rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

The recitation of "the data rate of the transmitted signals" recited in claim 19, lines 10-11 lacks antecedent basis.

Claim 26 is incomplete because it does not end with a period.

### *Claim Rejections - 35 USC § 103*

5. The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

6. The factual inquiries set forth in *Graham* **v.** *John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966), that are applied for establishing a background for determining obviousness under 35 U.S.C. 103(a) are summarized as follows:

1. Determining the scope and contents of the prior art.
2. Ascertaining the differences between the prior art and the claims at issue.
3. Resolving the level of ordinary skill in the pertinent art.
4. Considering objective evidence present in the application indicating obviousness or nonobviousness.

7. Claims 1, 3-5, 7, 8 and 10-60 rejected under 35 U.S.C. 103(a) as being unpatentable over Raleigh et al (US 2011/0310996) in view of Padovani et al (US 2007/0066320).

Regarding claims 1, 5 and 11-32, Raleigh, as shown in figures 8-25, teaches all subject matter claimed except for transmitting the error rate control signal from the receiver to the transmitter in order to effectively adjust the rate of the transmitted signal.

See also [0095] – [0166]. Raleigh also teaches transmitting the information from the receiver to the transmitter but the information is for request to retransmission purpose. See fig 22: 460 and [0163]. However, Padovani, from the same field of endeavor and as shown in figures 3A, 3B and 6, teaches wireless communication system wherein the error rate control signal is transmitted from the receiver to the transmitter in order to effectively adjust the rate of the transmitted signal. See Padovani: [0038]. Therefore, it would have been obvious to one of ordinary skill in the art at the time the invention was made to modify the system of Raleigh by employing the teachings as taught by Padovani so that to effectively adjust the rate of the transmitted signal in order to optimize the communications.

Regarding claims 3, 4, 7, 8 and 10, Raleigh as modified by Padovani teach all subject matter claimed except for erasure decoding or sending data rate control command based on the syndrome signals. However, it is well known in the art that syndrome signals are used for erasure decoding and determining the error in signal detecting/decoding. Therefore, it would have been obvious to one of ordinary skill in the art at the time the invention was made to modify the system of Raleigh as modified by Padovani to use the syndrome signals for erasure decoding or sending data rate control command since syndrome is well known parameter for error detection/correction in decoding.

Regarding claims 33-60, Raleigh as modified by Padovani teaches all subject matter claimed. See explanation above. Padovani further teaches spread spectrum communications and controlling the demultiplexer based on the feedback signal

indicating the signal quality or data rate from the receiver. See Padovani: [0093] – [0095].

### *Allowable Subject Matter*

8. Claims 2, 6 and 9 are objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims.

### *Conclusion*

9. **Examiner's note**: Examiner has cited particular columns and line numbers in the references as applied to the claims above for the convenience of the applicant. Although the specified citations are representative of the teachings of the art and are applied to the specific limitations within the individual claim, other passages and figures may apply as well. It is respectfully requested from the applicant in preparing responses, to fully consider the references in entirety as potentially teaching all or part of the claimed invention, as well as the context of the passage as taught by the prior art or disclosed by the Examiner.

10. The prior art made of record and not relied upon is considered pertinent to applicant's disclosure. References Tiedemann, JR. et al (US 2006/0098759) and Suzuki (US 5,995,515) are cited because they are pertinent to the method and apparatus for wireless communication.

11. Any inquiry concerning this communication or earlier communications from the examiner should be directed to Don N. Vo whose telephone number is (571) 272-3018. The examiner can normally be reached on Mon-Fri (9:00AM - 6:00PM).

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, CHIEH FAN can be reached on (571) 272-3042. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/Don N. Vo/
Primary Examiner, Art Unit 2611

## AMENDMENTS TO THE CLAIMS

The following is a complete listing of all of the claims in the subject patent application, with the status of each claim being indicated in a parenthetical expression. Claims 1-10 from U.S. Patent No. 7,613,247 are retained in unamended form. Claims 19 and 26 being currently amended are set forth below with markings showing the changes made relative to the immediate prior version. Claims 11, 12, 15, 16, 19, 22, 25, 26, 28, 29 and 32-60 not being currently amended are set forth below in clean version. Claims 13, 14, 17, 18, 20, 21, 23, 24, 27, 30 and 31 are cancelled.

11. (New) A receiver for recovering wireless data conveyed in data symbols by a plurality of different subchannel signals transmitted over a wireless channel, comprising:

demodulator circuitry for detecting the transmitted signals in a plurality of demodulated channels;

decoder circuitry for FEC decoding and de-interleaving the plurality of demodulated channels, providing a multiplicity of decoded channels, each having an error rate;

command processor circuitry responsive to the error rate of the decoded channels for generating a signal indicating a desired data rate to be sent to the data symbol transmitter of the signals,

transmitting circuitry for conveying the error rate dependent rate control signal back to the data symbol transmitter; and

multiplexer circuitry for combining the multiplicity of decoded channels into a single stream of received data.

12. (New) The receiver of claim 11 wherein the decoder circuitry includes circuitry to decode FEC codes of different rates.

13. Cancelled.

14. Cancelled.

15. (New) A method for recovering wireless data conveyed in data symbols by a plurality of different subchannel signals transmitted over a wireless channel, comprising the steps of:

detecting the transmitted signals in a plurality of demodulated channels;

FEC decoding and de-interleaving the plurality of demodulated channels, providing a multiplicity of decoded channels, each having an error rate;

using command processor circuitry responsive to the error rate of the decoded channels to generate a signal indicating a desired data rate to be sent to the transmitter of the signals,

transmitting the error rate dependent rate control signal back to the data symbol transmitter; and

multiplexing the multiplicity of decoded channels into a single stream of received data.

16. (New) The method of claim 15 wherein the decoding step includes decoding FEC codes of different rates.

17. Cancelled.

18. Cancelled.

19. (New Amended) A transmitter for generating a wireless signal forming transmitted signals having a data rate including

a demultiplexer for demultiplexing input data into a plurality of independent data channels;

encoder circuitry for FEC encoding and interleaving the plurality of data channels as a plurality of FEC encoded and interleaved channels, respectively;

processor circuitry for processing the plurality of FEC encoded and interleaved channels as a plurality of modulated channels;

a receiver, located at the transmitter, for receiving an error rate signal generated from a remote terminal; and

a processor responsive to the error rate signal for adjusting the data rate of the transmitted signals.

20. Cancelled.

21. Cancelled.

22. (New) The transmitter of claim 19 wherein the FEC encoder circuitry is set to different code rates.

23. Cancelled.

24. Cancelled.

25. (New) The transmitter of claim 22 wherein the data rate processor changes the transmitted data rate by changing the FEC encoding rate.

26. (New Amended) A method for transmitting a wireless signal forming transmitted signals having a data rate, including the steps of

demultiplexing input data into a plurality of independent data channels;

FEC encoding and interleaving the plurality of data channels as a plurality of FEC encoded and interleaved channels, respectively;

processing the plurality of FEC encoded and interleaved channels as a plurality of modulated channels;

receiving an error rate signal generated from a remote terminal; and

adjusting the data rate of the transmitted signal in accordance with the error rate signal.

27. Cancelled.

28. (New) The method of claim 26 wherein the modulated channels are set to common symbol rates but different modulated depths.

29 (New). The method of claim 26 wherein the FEC encoding is set to varying code rates.

30. Cancelled.

31. Cancelled.

32. (New) The method of claim 27 wherein the data rate processor changes the transmitted data rate by changing the FEC encoding rate.

33. (New) A wireless transmitter comprising:

a demultiplexer having at least one input and a plurality of outputs, said input receiving an input data stream and said outputs providing a first plurality of parallel output data streams, with each output data stream including a group of different data symbols from said input data stream, said output data streams collectively providing a first data rate;

a spread spectrum processor for generating a separate spread spectrum signal for each of said first plurality of output data streams;

transmission circuitry for simultaneously transmitting said separate spread

spectrum signals in a common channel; and

a controller for said demultiplexer, said controller receiving a feedback signal from a receiver, said feedback signal being an indication of the signal quality in the channel between the transmitter and the receiver, whereby in response to said feedback signal indicating a reduction in signal quality, said controller controls said demultiplexer to change said outputs from output data streams having different data symbols to output data streams having the same data symbols, thereby providing a second data rate lower than said first data rate.

34. (New) The wireless transmitter of claim 33 further including FEC encoder circuitry for FEC-encoding said first plurality of parallel output data streams.

35. (New) The wireless transmitter of claim 34 further including bit-interleaving circuitry for bit-interleaving said first plurality of FEC-encoded parallel output data streams.

36. (New) The wireless transmitter of claim 33 wherein said demultiplexer has additional outputs which provide a second plurality of parallel output data streams accompanying said first plurality of parallel output data streams, each respective one of said second plurality of output data streams including the same data symbols as a respective one of said first plurality of parallel output data streams.

37. (New) The transmitter of claim 33 wherein said feedback signal is a data rate command signal.

38. (New) A wireless transmitter comprising:

a demultiplexer having at least one input and a plurality of outputs, said input receiving an input data stream and said outputs providing a first plurality of parallel output data streams with each output data stream including a group of different data symbols from said input data stream, said output data streams collectively providing a first data rate;

a spread spectrum processor for generating a separate spread spectrum signal for each of said first plurality of output data streams;

transmission circuitry for simultaneously transmitting said separate spread spectrum signals in a common channel; and

a controller for said demultiplexer, said controller receiving a feedback signal from a receiver, said feedback signal being an indication of the signal quality in the channel between the transmitter and the receiver, whereby in response to said feedback signal indicating a reduction in signal quality, said controller controls said demultiplexer to change said outputs from said first plurality of output data streams having different data symbols to a second plurality of output data streams having different data symbols, said second plurality being less than said first plurality, whereby said second plurality of output data streams collectively provides a second data rate

lower than said first data rate.

39. (New) The wireless transmitter of claim 38 further including FEC encoder circuitry for FEC-encoding said first and second plurality of parallel output data streams.

40. (New) The wireless transmitter of claim 39 further including bit-interleaving circuitry for bit-interleaving said first and second plurality of FEC-encoded parallel output data streams.

41. (New) The wireless transmitter of claim 38 wherein said demultiplexer additionally produces a third plurality of parallel output data streams, each respective one of said third plurality of output data streams including the same data symbols as a respective one of said first plurality of parallel output data streams.

42. (New) The wireless transmitter of claim 38 wherein said demultiplexer additionally produces a fourth plurality of parallel output data streams, each respective one of said fourth plurality of output data streams including the same data symbols as a respective one of said second plurality of parallel output data streams.

43. (New) The transmitter of claim 38 wherein said feedback signal is a data rate command signal.

44. (New) A wireless transmitter that transmits an input bit stream by demultiplexing the input bit stream to form plural, parallel, lower-rate output bit streams which, after processing, are simultaneously transmitted in separately detectible signals within a common frequency channel, comprising:

a demultiplexer for demultiplexing said input bit stream and producing parallel, lower-rate output bit streams, each lower-rate output bit stream having a group of different symbols from said input bit stream; and

control circuitry for said demultiplexer responsive to a feedback signal from a receiver, said feedback signal being an indication of the signal quality in the channel between the transmitter and the receiver, said control circuitry causing the number of said parallel, lower-rate output bit streams produced by said demultiplexer to increase when said feedback signal indicates an increase in signal quality and to decrease when said feedback signal indicates a decrease in signal quality.

45. (New) The wireless transmitter of claim 44 wherein said parallel, lower-rate output bit streams are transmitted as signals having constant symbol durations.

46. (New) The wireless transmitter of claim 45 wherein said parallel, lower-rate output bit streams are error-encoded and bit-interleaved before transmission.

47. (New) The wireless transmitter of claim 44 wherein said parallel, lower-rate output bit streams collectively have a data rate that increases when the number of said lower-rate output bit streams increases and have a data rate that decreases when the number of said lower-rate output bit streams decreases.

48. (New) The transmitter of claim 44 wherein said feedback signal is a data rate command signal.

49. (New) A wireless receiver for simultaneously receiving a plurality of spread spectrum signals transmitted in a common frequency channel, comprising:

rf circuitry for converting said received spread spectrum signals to baseband;

a demodulator for separating said baseband spread spectrum signals and for recovering a stream of data symbols from each of said spread spectrum signals;

a multiplexer for multiplexing bit-streams of data derived from said recovered streams of data symbols to form a single stream of output data; and

a controller for controlling the number of bit-streams that are applied to said multiplexer, whereby the rate of said single stream of output data is determined by the number of bit-streams applied to said multiplexer.

50. (New) The receiver of claim 49 further including a bit-deinterleaver and

FEC decoder for deinterleaving and decoding said bit-streams before they are applied to the multiplexer.

51. (New) The receiver of claim 49 wherein said controller combines bit-streams having the same bit sequences to produce said bit-streams applied to said multiplexer.

52. (New) The receiver of claim 49 wherein said controller generates a feedback signal which is sent to the transmitter that transmits said plurality of spread spectrum signals, said feedback signal indicating the signal quality in the channel between the transmitter and said receiver, said feedback signal changing the number of transmitted spread spectrum signals that have different bit sequences, whereupon said controller changes the number of bit-streams that are applied to said multiplexer to change the rate of said single stream of output data.

53. (New) The receiver of claim 52 wherein said controller increases the number of inputs applied to said multiplexer when said feedback signal indicates an increase in signal quality.

54. (New) The receiver of claim 52 wherein said controller decreases the number of inputs applied to said multiplexer when said feedback signal indicates a

decrease in signal quality.

55. (New) A receiver for simultaneously receiving a plurality of separately-detectible signals simultaneously transmitted in a common frequency channel, comprising:

rf circuitry for converting said received plurality of signals to baseband;

a demodulator for separating said plurality of baseband signals and for recovering a stream of data symbols from each of said signals;

a multiplexer for multiplexing bit-streams of data derived from said recovered streams of data symbols to form a single stream of output data; and

a controller for controlling the number of bit-streams that are applied to said multiplexer, whereby the rate of said single stream of output data is determined by the number of bit-streams applied to said multiplexer.

56. (New) The receiver of claim 55 further including a bit-deinterleaver and an FEC decoder for deinterleaving and decoding said bit-streams before they are applied to said multiplexer.

57. (New) The receiver of claim 55 wherein said controller combines bit-streams having the same bit sequences to produce said bit-streams applied to said

multiplexer.

58. (New) The receiver of claim 55 wherein said controller generates a feedback signal which is sent to the transmitter that transmits said plurality of signals, said feedback signal indicating the signal quality in the channel between the transmitter and said receiver, said feedback signal changing the number of transmitted separately-detectible signals that have different bit sequences, whereupon said controller changes the number of bit-streams that are applied to said multiplexer to change the rate of said single stream of output data.

59. (New) The receiver of claim 58 wherein said controller increases the number of inputs applied to said multiplexer when said feedback signal indicates an increase in signal quality.

60. (New) The receiver of claim 58 wherein said controller decreases the number of inputs applied to said multiplexer when said feedback signal indicates a decrease in signal quality.

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 13391506 |
| **Application Number:** | 13287620 |
| **International Application Number:** | |
| **Confirmation Number:** | 8011 |
| **Title of Invention:** | VARIABLE THROUGHPUT REDUCTION COMMUNICATIONS SYSTEM AND METHOD |
| **First Named Inventor/Applicant Name:** | Joseph Garodnick |
| **Customer Number:** | 36139 |
| **Filer:** | Robert Howard Epstein/Ann Shebovsky |
| **Filer Authorized By:** | Robert Howard Epstein |
| **Attorney Docket Number:** | 1210.104.RE |
| **Receipt Date:** | 01-AUG-2012 |
| **Filing Date:** | 02-NOV-2011 |
| **Time Stamp:** | 12:37:34 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $1270 |
| RAM confirmation Number | 11994 |
| Deposit Account | |
| Authorized User | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| 1 | Applicant Arguments/Remarks Made in an Amendment | Amendment.pdf | 3005781<br>399785db9d8c11ec47eebf72f1c2c8cc0f76a1c4 | no | 21 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 2 | Extension of Time | Amendment-EOT.pdf | 238619<br>38fb77c7579883734b1910582a4e4665b886ec16 | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 3 | Fee Worksheet (SB06) | fee-info.pdf | 30795<br>e47c31faa2d803ebef48f1b3db07e84d42ae8c8a | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| | | **Total Files Size (in bytes):** | 3275195 | | |

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**<u>New Applications Under 35 U.S.C. 111</u>**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**

**<u>National Stage of an International Application under 35 U.S.C. 371</u>**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**

**<u>New International Application Filed with the USPTO as a Receiving Office</u>**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 13287620 |
| **Filing Date:** | 02-Nov-2011 |
| **Title of Invention:** | VARIABLE THROUGHPUT REDUCTION COMMUNICATIONS SYSTEM AND METHOD |
| **First Named Inventor/Applicant Name:** | Joseph Garodnick |
| **Filer:** | Robert Howard Epstein/Ann Shebovsky |
| **Attorney Docket Number:** | 1210.104.RE |

Filed as Large Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| Extension - 3 months with $0 paid | 1253 | 1 | 1270 | 1270 |

STORMBORN 000086

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **1270** |

PTO/SB/22 (09-11)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARMENT OF COMMERCE
Under the paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| **PETITION FOR EXTENSION OF TIME UNDER 37 CFR 1.136(a)** | Docket Number (Optional) 1210.104.RE |
|---|---|
| Application Number 13/287,620 | Filed 07/02/2011 |
| For Variable Throughput Reduction Communications System and Method | |
| Art Unit 2611 | Examiner Don Nguyen Vo |

This is a request under the provisions of 37 CFR 1.136(a) to extend the period for filing a reply in the above identified application.

The requested extension and fee are as follows (check time period desired and enter the appropriate fee below):

| | Fee | Small Entity Fee | |
|---|---|---|---|
| ☐ One month (37 CFR 1.17(a)(1)) | $150 | $75 | $ |
| ☐ Two months (37 CFR 1.17(a)(2)) | $560 | $280 | $ |
| ☑ Three months (37 CFR 1.17(a)(3)) | $1270 | $635 | $ 1270.00 |
| ☐ Four months (37 CFR 1.17(a)(4)) | $1980 | $990 | $ |
| ☐ Five months (37 CFR 1.17(a)(5)) | $2690 | $1345 | $ |

☐ Applicant claims small entity status. See 37 CFR 1.27.

☐ A check in the amount of the fee is enclosed.

☑ Payment by credit card. via online payment system.

☐ The Director has already been authorized to charge fees in this application to a Deposit Account.

☐ The Director is hereby authorized to charge any fees which may be required, or credit any overpayment, to Deposit Account Number ______________.

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

I am the

☐ applicant/inventor.

☐ assignee of record of the entire interest. See 37 CFR 3.71.
Statement under 37 CFR 3.73(b) is enclosed (Form PTO/SB/96).

☑ attorney or agent of record. Registration Number 24,353

☐ attorney or agent under 37 CFR 1.34.
Registration number if acting under 37 CFR 1.34 ______________

| /robert h epstein/ | 08/01/2012 |
|---|---|
| Signature | Date |
| Robert H. Epstein | 301-610-7634 |
| Typed or printed name | Telephone Number |

NOTE: Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more than one signature is required, see below.

☐ Total of ______________ forms are submitted.

This collection of information is required by 37 CFR 1.136(a). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 6 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

REMARKS

Reconsideration of the present application is requested in view of the foregoing amendments and the following remarks

Claims 1-12, 15, 16, 19, 22, 25, 26, 28, 29 and 32-60 remain in the present application.

With respect to paragraph 2 of the Office Action, claims 13, 14, 17, 18, 20, 21, 23, 24, 27, 30 and 31 have been cancelled without in any way limiting the breadth of the claims from which the cancelled claims depend. The above claims have been cancelled since the specification does not specifically utilize the terminology "different QAM levels", "different number of spatial streams" or "separate antennas". It is understood by those of ordinary skill in the art that the subject matter set forth in the cancelled claims is inherently disclosed in the specification, and it is only the specific terms set forth in quotes that have not been used in the specification.

The present invention relates to changing or controlling the data rate of a transmitter in response to a data-rate command signal transmitted by a receiver. The manner in which the data rate is controlled or changed can be accomplished in various well-known manners including, but not limited to, controlling/changing demultiplexing by a demultiplexer, controlling/changing FEC error-encoding and interleaving and controlling/changing the modulation levels utilized at the transmitter. Of course, the present invention can be utilized with arrangements where the different channels of transmitted data are from a different number of spatial streams.

The rejection of claims 19-32 under 35 USC §112 as set forth in paragraph 4 of the Office Action has been overcome by adding the terminology "the data rate" in the

preamble of claims 19 and 26. Additionally, a "." has been added to the end of claim 26.

The rejection of claims 1, 3-5, 7, 8 and 10-60 set forth in paragraph 7 of the Office Action under 35 USC §103(a) as being unpatentable over Raleigh et al in view of Padovani et al is respectfully traversed for reasons set forth hereinafter. Initially, it should be noted that Raleigh et al does not teach all subject matter claimed and does not disclose a system or method or transmitter or receiver responsive to an error rate dependent control signal from a receiver to adjust the rate of the transmitted signal. This is acknowledged by the Examiner in paragraph 7. Raleigh et al discloses control of a transmitter in response to a request for retransmission; and, thus, it is clear that Raleigh et al teaches away from the present invention and does not recognize the step of the present invention of controlling a transmitter data rate in response to an error rate control signal or a signal indicating reduced signal quality at a receiver. In rejecting the claims, the Examiner indicates that Padovani et al teaches "wireless communication system wherein the error rate control signal is transmitted from the receiver to the transmitter in order to effectively adjust the rate of the transmitted signal." Padovani et al does not provide the teaching as set forth above anywhere in its specification and particularly not in figures 3A, 3B and 6 or in paragraph [0038] as indicated by the Examiner. As noted in paragraph [0038], Padovani et al teaches selecting the best base station based on a set of parameters that can comprise C/I measurement and the bit-error-rate or packet-error-rate. That is, Padovani et al does not teach controlling or changing the data rate of a transmitter based on a signal from a receiver but, rather, selects a different transmitter.

None of the cited references change the data rate at a transmitter as in the present invention. In accordance with the present invention and the claims, the data rate is changed in response to the error rate or syndrome received from a receiver. In other words, the receiver or base station tells the transmitter to adjust certain of its transmission parameters, for example the demultiplexing. This is exemplary only in that the transmission parameters can be changed in any desired fashion in accordance with the present invention. The cited references fail to disclose this concept; and, accordingly, any combination of the references cannot produce the claimed method, system, transmitter or receiver of the present invention as set forth in the claims.

Independent claims 1 and 5 recite a command processor at a receiver for determining a desired data rate and generating a control signal to be transmitted to the transmitter. None of the cited references teach such a control signal generated by a command processor at a receiver, it being noted that Padovani et al, as explained in paragraph [0038], merely selects the best base station based on a set of parameters and C/I measurements and the bit-error-rate or packet-error-rate. Padovani et al does not teach or remotely contemplate the control of the operation of the transmitter in response to a control signal transmitted from a receiver. Accordingly, independent claims 1 and 5 are clearly patentable over the cited references. Claims 2, 3 and 4, dependent on independent claim 1, and claims 6 and 7, dependent on independent claim 5, are patentable for the same reasons and further due to the additional recitations therein.

Independent claim 8 recites the step of generating, in response to a syndrome signal, a channel quality indication signal indicating a desired data rate, and none of the

cited references disclose or remotely contemplate the generation of such a signal for transmission to a transmitter. Accordingly, independent claim 8 is clearly patentable over the cited references. Claims 9 and 10, dependent on independent claim 8, are patentable for the same reasons and further due to the additional recitations therein.

Independent claim 11 is directed to a receiver and recites command processor circuitry responsive to the error rate of the decoded channels for generating a signal indicating a desired data rate, the signal to be sent to the transmitter. None of the cited references disclose such command processor circuitry, and Padovani et al as described in paragraph [0038], only indicates that a base station uses rate control information from each mobile station to efficiently transmit forward link data contrary to the present invention. Accordingly, independent claim 11 is clearly patentable over the cited references. Claim 12, dependent on independent claim 11, is patentable for the same reasons and further due to the additional recitations therein.

Independent claim 15 is directed to a method and recites the step of using command processor circuitry responsive to the error rate of the decoded channels in a manner similar to that recited in independent claim 11, and the cited references fail to disclose this feature for the same reasons as noted above. Accordingly, independent claim 15 is clearly patentable over the cited references. Claim 16, dependent on independent claim 15, is patentable for the same reasons and further due to the additional recitations therein.

Independent claim 19 is directed to a transmitter and recites a processor responsive to an error rate signal generated from a remote terminal for adjusting the data rate of the transmitted signal. As previously noted, none of the cited references

disclose operation of a transmitter in response to an error rate signal from a remote terminal or receiver; and, accordingly, independent claim 19 is clearly patentable over the cited references. Claims 22 and 25, dependent on independent claim 19, are patentable for the same reasons and further due to the additional recitations therein.

Independent claim 26 is directed to a method for transmitting and recites the step of receiving an error rate signal generated from a remote terminal and adjusting the data rate of the transmitted signal in accordance with the error rate signal. Accordingly, independent claim 26 is clearly patentable over the cited references. Claims 28, 29 and 32, dependent on independent claim 26, are patentable for the same reasons and further due to the additional recitations therein.

Independent claim 33 is directed to a wireless transmitter and recites a demultiplexer and a controller for the demultiplexer responsive to a feedback signal indicating signal quality from a receiver to control the demultiplexer and provide a lower data rate. Accordingly, independent claim 33 is clearly patentable over the cited references. Claims 34, 35, 36 and 37, dependent on independent claim 33, are patentable for the same reasons and further due to the additional recitations therein.

Independent claim 38 is directed to a wireless transmitter and recites a demultiplexer and a controller for the demultiplexer in a manner similar to the arrangement recited in claim 33. Accordingly, independent claim 38 is clearly patentable over the cited references. Claims 39, 40, 41, 42 and 43, dependent on independent claim 38, are patentable for the same reasons and further due to the additional recitations therein.

Independent claim 44 is directed to a wireless transmitter and recites control

circuitry for a demultiplexer causing the number of output bit streams produced by the demultiplexer to increase when a feedback signal from a receiver indicates an increase in signal quality and to decrease when the feedback signal indicates a decrease in signal quality. Accordingly, independent claim 44 is clearly patentable over the cited references. Claims 45, 46, 47 and 48, dependent on independent claim 44, are patentable for the same reasons and further due to the additional recitations therein.

Independent claim 49 is directed to a receiver for receiving spread spectrum signals and recites a controller for controlling the number of bit streams applied to a multiplexer such that the rate of the single stream of output data is determined by the number of bit streams applied to the multiplexer. Accordingly, independent claim 49 is clearly patentable over the cited references. Claims 50, 51, 52, 53 and 54, dependent on independent claim 49, are patentable for the same reasons and further due to the additional recitations therein.

Independent claim 55 is directed to a receiver and recites a controller for controlling the number of bit streams applied to a multiplexer. Accordingly, independent claim 55 is clearly patentable over the cited references. Claims 56, 57, 58, 59 and 60, dependent on independent claim 55, are patentable for the same reasons and further due to the additional recitations therein.

Applicant notes that, as explained above, a combination of Raleigh et al and Padovani et al would not produce the claimed subject matter. It is believed, however, that it would not be obvious to combine Raleigh et al and Padovani et al in that there is no motivation for such a combination since neither Raleigh et al nor Padovani et al teach or disclose the concept of the present invention as set forth in the claims, namely

the use of a signal produced by a receiver relating to quality of the received signals and using such a signal to control the data rate of the transmitter. Both Raleigh et al and Padovani et al seek to increase signal quality in different manners, Raleigh et al using a reverse link control channel to request retransmission and Padovani et al electing a different base station.

The Tiedemann, Jr. et al published patent application (US 2006/0098759) and the Suzuki patent (US 5,995,515) have been reviewed but do not disclose the concept of the subject invention as claimed.

A petition for a three-month extension of time is submitted herewith and the requisite payment is being made via the EFS online payment system.

In view of the above, it is believed that all claims remaining in the present reissue application are clearly patentable over the cited references and that the reissue application is in condition for allowance, early notice of which is solicited.

Respectfully submitted,

Robert H. Epstein
Registration No. 24,353

EPSTEIN & GERKEN
1901 Research Boulevard, Suite 340
Rockville, Maryland 20850
(301) 610-7634

Filed Electronically via EFS: 08-01-2012

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Atty Docket No.: 1210.104.RE

In re the reissue PATENT application of

Joseph Garodnick — Examiner: Don Nguyen Vo

Serial No.: 13/287,620 — Group Art Unit: 2611

Filed: November 2, 2011 — Confirmation No.: 8011

For: Variable Throughput Reduction Communications System and Method

## AMENDMENT

**Mail Stop: Amendment**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313

Sir:

## INTRODUCTORY COMMENTS

In response to the Office Action dated February 22, 2012, please amend the subject reissue patent application as follows.

# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**U.S. Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

36139 e 2012-08-14

EPSTEIN & GERKEN
1901 RESEARCH BOULEVARD
SUITE 340
ROCKVILLE, MD 20850

**Paper No.**

| | | | |
|---|---|---|---|
| **Application No.:** | **13/287,620** | **Date Mailed:** | **2012-08-14** |
| First Named Inventor: | Garodnick, Joseph, | Examiner: | VO, DON NGUYEN |
| Attorney Docket No.: | 1210.104.RE | Art Unit: | 2611 |
| Confirmation No.: | 8011 | Filing Date: | 2011-11-02 |

**Please find attached an Office communication concerning this application or proceeding.**

**Commissioner for Patents**

PTO-90c (Rev.08-06)

| Notice of Non-Compliant Amendment (37 CFR 1.121) | **Application No.** 13/287,620 | **Applicant(s)** GARODNICK, JOSEPH |
|---|---|---|
| | | **Art Unit** 2400 |

***-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --***

The amendment document filed on *01 August, 2012* is considered non-compliant because it has failed to meet the requirements of 37 CFR 1.121 or 1.4. In order for the amendment document to be compliant, correction of the following item(s) is required.

THE FOLLOWING MARKED (X) ITEM(S) CAUSE THE AMENDMENT DOCUMENT TO BE NON-COMPLIANT:

☐ 1. Amendments to the specification:
- ☐ A. Amended paragraph(s) do not include markings.
- ☐ B. New paragraph(s) should not be underlined.
- ☐ C. Other ______.

☐ 2. Abstract:
- ☐ A. Not presented on a separate sheet. 37 CFR 1.72.
- ☐ B. Other ______.

☐ 3. Amendments to the drawings:
- ☐ A. The drawings are not properly identified in the top margin as "Replacement Sheet," "New Sheet," or "Annotated Sheet" as required by 37 CFR 1.121(d).
- ☐ B. The practice of submitting proposed drawing correction has been eliminated. Replacement drawings showing amended figures, without markings, in compliance with 37 CFR 1.84 are required.
- ☐ C. Other ______.

☒ 4. Amendments to the claims:
- ☒ A. A complete listing of all of the claims is not present.
- ☐ B. The listing of claims does not include the text of all pending claims (including withdrawn claims)
- ☐ C. Each claim has not been provided with the proper status identifier, and as such, the individual status of each claim cannot be identified. Note: the status of every claim must be indicated after its claim number by using one of the following status identifiers: (Original), (Currently amended), (Canceled), (Previously presented), (New), (Not entered), (Withdrawn) and (Withdrawn-currently amended).
- ☐ D. The claims of this amendment paper have not been presented in ascending numerical order.
- ☐ E. Other: ______.

☐ 5. Other (e.g., the amendment is unsigned or not signed in accordance with 37 CFR 1.4): For further explanation of the amendment format required by 37 CFR 1.121, see MPEP § 714.

TIME PERIODS FOR FILING A REPLY TO THIS NOTICE:

1. Applicant is given **no new time period if the non-compliant amendment is an** after-final amendment or an amendment filed after allowance, or a drawing submission (only) If applicant wishes to resubmit the non-compliant after-final amendment with corrections, the **entire corrected amendment** must be resubmitted.

2. Applicant is given **one month**, or thirty (30) days, whichever is longer, from the mail date of this notice to supply the correction, if the non-compliant amendment is one of the following: a preliminary amendment, a non-final amendment (including a submission for a request for continued examination (RCE) under 37 CFR 1.114), a supplemental amendment filed within a suspension period under 37 CFR 1.103(a) or (c), and an amendment filed in response to a Quayle action. If any of above boxes 1 to 4 are checked, the correction required is only the corrected section of the non-compliant amendment in compliance with 37 CFR 1.121.

**Extensions of time** are available under 37 CFR 1.136(a) only if the non-compliant amendment is a non-final amendment or an amendment filed in response to a *Quayle* action.
**Failure to timely respond** to this notice will result in:
**Abandonment** of the application if the non-compliant amendment is a non-final amendment or an amendment filed in response to a *Quayle* action; or
**Non-entry** of the amendment if the non-compliant amendment is a preliminary amendment or supplemental amendment.

Legal Instruments Examiner (LIE), if applicable /STEFANIE BRYCE/ Telephone No: (571)272-4334

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**U.S. Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

36139 e 2012-08-17

EPSTEIN & GERKEN
1901 RESEARCH BOULEVARD
SUITE 340
ROCKVILLE, MD 20850

**Paper No.**

| | | | |
|---|---|---|---|
| **Application No.:** | **13/287,620** | **Date Mailed:** | **2012-08-17** |
| First Named Inventor: | Garodnick, Joseph, | Examiner: | VO, DON NGUYEN |
| Attorney Docket No.: | 1210.104.RE | Art Unit: | 2611 |
| Confirmation No.: | 8011 | Filing Date: | 2011-11-02 |

**Please find attached an Office communication concerning this application or proceeding.**

**Commissioner for Patents**

PTO-90c (Rev.08-06)

| **Letter Withdrawing a Notice of Non-Compliant Amendment** | **Application No.:** 13/287,620 | **Applicant(s):** GARODNICK, JOSEPH |
|---|---|---|
| | | **Art Unit:** 2400 |

The Notice of Non-Compliant Amendment mailed on 14 August, 2012 was sent in error, and is hereby withdrawn. The application is being forwarded to the examiner for appropriate action. (Note: this letter does not apply to any Notice of Non-Compliant Amendment where the amendment was a reply to a final Office action.)

| Legal Instruments Examiner (LIE): | Telephone Number: |
|---|---|
| /STEFANIE BRYCE/ | (571)272-4334 |

| *Index of Claims* | Application/Control No.<br>13287620 | Applicant(s)/Patent Under Reexamination<br>GARODNICK, JOSEPH |
|---|---|---|
| | Examiner<br>DON N VO | Art Unit<br>2611 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant ☐ CPA ☐ T.D. ☐ R.1.47

| CLAIM | | DATE | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 02/16/2012 | 09/05/2012 | | | | | | | | |
| | 1 | ✓ | ✓ | | | | | | | | |
| | 2 | O | O | | | | | | | | |
| | 3 | ✓ | ✓ | | | | | | | | |
| | 4 | ✓ | ✓ | | | | | | | | |
| | 5 | ✓ | ✓ | | | | | | | | |
| | 6 | O | O | | | | | | | | |
| | 7 | ✓ | ✓ | | | | | | | | |
| | 8 | ✓ | ✓ | | | | | | | | |
| | 9 | O | O | | | | | | | | |
| | 10 | ✓ | ✓ | | | | | | | | |
| | 11 | ✓ | ✓ | | | | | | | | |
| | 12 | ✓ | ✓ | | | | | | | | |
| | 13 | ✓ | - | | | | | | | | |
| | 14 | ✓ | - | | | | | | | | |
| | 15 | ✓ | ✓ | | | | | | | | |
| | 16 | ✓ | ✓ | | | | | | | | |
| | 17 | ✓ | - | | | | | | | | |
| | 18 | ✓ | - | | | | | | | | |
| | 19 | ✓ | ✓ | | | | | | | | |
| | 20 | ✓ | - | | | | | | | | |
| | 21 | ✓ | - | | | | | | | | |
| | 22 | ✓ | ✓ | | | | | | | | |
| | 23 | ✓ | - | | | | | | | | |
| | 24 | ✓ | - | | | | | | | | |
| | 25 | ✓ | ✓ | | | | | | | | |
| | 26 | ✓ | ✓ | | | | | | | | |
| | 27 | ✓ | - | | | | | | | | |
| | 28 | ✓ | ✓ | | | | | | | | |
| | 29 | ✓ | ✓ | | | | | | | | |
| | 30 | ✓ | - | | | | | | | | |
| | 31 | ✓ | - | | | | | | | | |
| | 32 | ✓ | ✓ | | | | | | | | |
| | 33 | ✓ | ✓ | | | | | | | | |
| | 34 | ✓ | ✓ | | | | | | | | |
| | 35 | ✓ | ✓ | | | | | | | | |
| | 36 | ✓ | ✓ | | | | | | | | |

| **Index of Claims** | **Application/Control No.** 13287620 | **Applicant(s)/Patent Under Reexamination** GARODNICK, JOSEPH |
|---|---|---|
| | **Examiner** DON N VO | **Art Unit** 2611 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| ✓ | **Rejected** | - | **Cancelled** | N | **Non-Elected** | A | **Appeal** |
| = | **Allowed** | ÷ | **Restricted** | I | **Interference** | O | **Objected** |

☐ **Claims renumbered in the same order as presented by applicant** ☐ **CPA** ☐ **T.D.** ☐ **R.1.47**

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 02/16/2012 | 09/05/2012 | | | | | | | |
| | 37 | ✓ | ✓ | | | | | | | |
| | 38 | ✓ | ✓ | | | | | | | |
| | 39 | ✓ | ✓ | | | | | | | |
| | 40 | ✓ | ✓ | | | | | | | |
| | 41 | ✓ | ✓ | | | | | | | |
| | 42 | ✓ | ✓ | | | | | | | |
| | 43 | ✓ | ✓ | | | | | | | |
| | 44 | ✓ | ✓ | | | | | | | |
| | 45 | ✓ | ✓ | | | | | | | |
| | 46 | ✓ | ✓ | | | | | | | |
| | 47 | ✓ | ✓ | | | | | | | |
| | 48 | ✓ | ✓ | | | | | | | |
| | 49 | ✓ | ✓ | | | | | | | |
| | 50 | ✓ | ✓ | | | | | | | |
| | 51 | ✓ | ✓ | | | | | | | |
| | 52 | ✓ | ✓ | | | | | | | |
| | 53 | ✓ | ✓ | | | | | | | |
| | 54 | ✓ | ✓ | | | | | | | |
| | 55 | ✓ | ✓ | | | | | | | |
| | 56 | ✓ | ✓ | | | | | | | |
| | 57 | ✓ | ✓ | | | | | | | |
| | 58 | ✓ | ✓ | | | | | | | |
| | 59 | ✓ | ✓ | | | | | | | |
| | 60 | ✓ | ✓ | | | | | | | |

Case No. 1:21-cv-01428-RM-MEH Document 1-2 filed 05/26/21 USDC Colorado pg 116 of 182

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 3 | "7613247".PN. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/09/05 08:22 |
| L2 | 108315 | demultiplex$3 de-multiplex$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/09/05 08:48 |
| L3 | 29590 | fec (forward adj error adj control$4) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/09/05 08:48 |
| L4 | 181424 | interleav$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/09/05 08:48 |
| L5 | 17404 | (processor controller) with (data adj rate) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/09/05 08:49 |
| L6 | 595535 | (feedback$3 transmit$4) with (receiver (remote adj station)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/09/05 08:50 |
| L7 | 112 | 2 and 3 and 4 and 5 and 6 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2012/09/05 08:51 |

**EAST Search History (Interference)**

<This search history is empty>

**9/5/2012 9:11:01 AM**
**C:\Users\dvo\Documents\EAST\Workspaces\Default EAST Workspace (Flat Panel LANDSCAPE).wsp**

| Search Notes | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 13287620 | GARODNICK, JOSEPH |
| | **Examiner** | **Art Unit** |
| | DON N VO | 2611 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 375 | 141, 144, 145-149, 260, 261, 295, 296, 316 | 2/15/12 & 2/16/12 | DV |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| EAST | 9/5/12 | DV |

## INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

| | |
|---|---|
| | /DON N VO/<br>Primary Examiner.Art Unit 2611 |

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/287,620 | 11/02/2011 | Joseph Garodnick | 1210.104.RE | 8011 |

36139 7590 09/10/2012
EPSTEIN & GERKEN
1901 RESEARCH BOULEVARD
SUITE 340
ROCKVILLE, MD 20850

| EXAMINER | |
|---|---|
| VO, DON NGUYEN | |
| **ART UNIT** | **PAPER NUMBER** |
| 2611 | |
| **MAIL DATE** | **DELIVERY MODE** |
| 09/10/2012 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

| **Office Action Summary** | **Application No.** 13/287,620 | **Applicant(s)** GARODNICK, JOSEPH |
|---|---|---|
| | **Examiner** Don N. Vo | **Art Unit** 2611 |

***-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --***

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE *3* MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1)☒ Responsive to communication(s) filed on *01 August 2012*.

2a)☒ This action is **FINAL**. 2b)☐ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

5)☒ Claim(s) *1-12,15,16,19,22,25,26,28,29 and 32-60* is/are pending in the application.

5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☒ Claim(s) *1,3-5,7,8,10-12,15,16,19,22,25,26,28,29 and 32-60* is/are rejected.

8)☒ Claim(s) *2,6 and 9* is/are objected to.

9)☐ Claim(s) _____ are subject to restriction and/or election requirement.

## Application Papers

10)☐ The specification is objected to by the Examiner.

11)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

12)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

## Priority under 35 U.S.C. § 119

13)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

a)☐ All b)☐ Some * c)☐ None of:

1.☐ Certified copies of the priority documents have been received.

2.☐ Certified copies of the priority documents have been received in Application No. _____.

3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)
2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3) ☐ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date _____.
4) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____ .
5) ☐ Notice of Informal Patent Application
6) ☐ Other: _____.

## DETAILED ACTION

### *Acknowledgment*

1. This Office Action is responsive to the Amendment filed on 08/01/2012.

### *Claim Objections*

2. Claim 32 is objected to because of the following informalities:

The claim is depending from the cancelled claim 27. For the purpose of examination, it is assumed to depend from claim 26.

Appropriate correction is required.

### *Claim Rejections - 35 USC § 103*

3. The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

4. The factual inquiries set forth in *Graham* **v.** *John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966), that are applied for establishing a background for determining obviousness under 35 U.S.C. 103(a) are summarized as follows:

1. Determining the scope and contents of the prior art.
2. Ascertaining the differences between the prior art and the claims at issue.
3. Resolving the level of ordinary skill in the pertinent art.
4. Considering objective evidence present in the application indicating obviousness or nonobviousness.

5. Claims 1, 3-5, 7, 8 and 10-11, 15, 16, 19, 22, 25, 26, 28, 29, and 32-60 are rejected under 35 U.S.C. 103(a) as being unpatentable over Raleigh et al (US 2011/0310996; art of record) in view of Padovani et al (US 2007/0066320; art of record).

Regarding claims 1, 5, 11, 12, 15, 16, 19, 22, 25, 26, 28, 29, and 32, Raleigh, as shown in figures 8-25, teaches all subject matter claimed except for transmitting the error rate control signal from the receiver to the transmitter in order to effectively adjust the rate of the transmitted signal. See also [0095] – [0166]. Raleigh also teaches transmitting the information from the receiver to the transmitter but the information is for request to retransmission purpose. See fig 22: 460 and [0163]. In addition, Raleigh further teaches rate adaptation in the transmitter based on the probability of error constraint ([0167] – [0169]) and using feedback from the receiver for training purposes ([0195]), which is well known in the art of digital communications, to include data rate adaptation. However, Padovani, from the same field of endeavor and as shown in figures 2, 3A, 3B and 6, teaches wireless communication system wherein the error rate control signal is transmitted from the receiver having command processor (fig. 2: 76) to the transmitter in order to effectively adjust the rate of the transmitted signal. See Padovani: [0038] and [0060] – [0065]. Therefore, it would have been obvious to one of ordinary skill in the art at the time the invention was made to modify the system of Raleigh by employing the teachings as taught by Padovani so that to effectively adjust the rate of the transmitted signal in order to optimize the communications.

Regarding claims 3, 4, 7, 8 and 10, Raleigh as modified by Padovani teach all subject matter claimed except for erasure decoding or sending data rate control

command based on the syndrome signals. However, it is well known in the art that syndrome signals are used for erasure decoding and determining the error in signal detecting/decoding. Therefore, it would have been obvious to one of ordinary skill in the art at the time the invention was made to modify the system of Raleigh as modified by Padovani to use the syndrome signals for erasure decoding or sending data rate control command since syndrome is well known parameter for error detection/correction in decoding.

Regarding claims 33-60, Raleigh as modified by Padovani teaches all subject matter claimed. See explanation above. Padovani further teaches spread spectrum communications and controlling the demultiplexer based on the feedback signal indicating the signal quality or data rate from the receiver. See Padovani: [0093] – [0095].

## ***Allowable Subject Matter***

6. Claims 2, 6 and 9 are objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims.

## ***Response to Arguments***

7. Applicant's arguments filed 08/01/2012 have been fully considered but they are not persuasive.

In the Remarks, Applicant traverses to the rejection by mainly arguing that (1) the cited reference Raleigh teaches control of a transmitter in response to a request for a retransmission; and thus, teaches away from the present invention and does not control a transmitter data rate in response to an error rate control signal or a signal indicating reduced signal quality at the receiver and (2) the cited reference Padovani fails to teach controlling or changing the data rate of a transmitter based on a signal from a receiver but, rather, selects a different transmitter.

The examiner is respectfully not agreed.

Regarding (1), in addition to the teaching of control of a transmitter in response to a request for a retransmission, Raleigh teaches rate adaptation in the transmitter based on the probability of error constraint ([0167] – [0169]) and using feedback from the receiver for training purposes ([0195]), which, is well known in the art of digital communications to include data rate adaptation.

Regarding (2), the cited reference Padovani teaches controlling or changing the data rate of a transmitter based on a signal from a receiver. See [0060] – [0065].

Based on the above rationale, it is believed that claims 1, 3-5, 7, 8 and 10, 11, 15, 16, 19, 22-26, 28, 29, and 32-60 are met by Raleigh et al (US 2011/0310996) and Padovani et al (US 2007/0066320) and the rejections are therefore still maintained.

### *Conclusion*

8. **Examiner's note**: Examiner has cited particular columns and line numbers in the references as applied to the claims above for the convenience of the applicant.

Although the specified citations are representative of the teachings of the art and are applied to the specific limitations within the individual claim, other passages and figures may apply as well. It is respectfully requested from the applicant in preparing responses, to fully consider the references in entirety as potentially teaching all or part of the claimed invention, as well as the context of the passage as taught by the prior art or disclosed by the Examiner.

9. **THIS ACTION IS MADE FINAL.** Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE MONTHS from the mailing date of this action. In the event a first reply is filed within TWO MONTHS of the mailing date of this final action and the advisory action is not mailed until after the end of the THREE-MONTH shortened statutory period, then the shortened statutory period will expire on the date the advisory action is mailed, and any extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of the advisory action. In no event, however, will the statutory period for reply expire later than SIX MONTHS from the mailing date of this final action.

10. Any inquiry concerning this communication or earlier communications from the examiner should be directed to Don N. Vo whose telephone number is (571) 272-3018. The examiner can normally be reached on Mon-Fri (9:00AM - 6:00PM).

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, CHIEH FAN can be reached on (571) 272-3042. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/Don N. Vo/
Primary Examiner, Art Unit 2611

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 14327875 |
| **Application Number:** | 13287620 |
| **International Application Number:** | |
| **Confirmation Number:** | 8011 |
| **Title of Invention:** | VARIABLE THROUGHPUT REDUCTION COMMUNICATIONS SYSTEM AND METHOD |
| **First Named Inventor/Applicant Name:** | Joseph Garodnick |
| **Customer Number:** | 36139 |
| **Filer:** | Robert Howard Epstein/Ann Shebovsky |
| **Filer Authorized By:** | Robert Howard Epstein |
| **Attorney Docket Number:** | 1210.104.RE |
| **Receipt Date:** | 28-NOV-2012 |
| **Filing Date:** | 02-NOV-2011 |
| **Time Stamp:** | 14:56:17 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Applicant Arguments/Remarks Made in an Amendment | Amendment2.pdf | 3753035<br>9fae61c1c45a006bb0f809e3a9f741b9cfb0205a | no | 27 |

**Warnings:**

**Information:**

| | |
|---|---|
| Total Files Size (in bytes): | 3753035 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

REMARKS

Reconsideration of the present application is requested in view of the foregoing amendments and the following remarks.

Claims 1-12, 15, 16, 19, 22, 25, 26, 28, 29 and 32-60 remain in the present application with independent claims 1, 5 and 8 from U.S. Patent No. 7, 613,247 and claims 11, 15, 19, 26, 32, 33, 37, 38, 43, 44, 48, 52, 53 and 58 being amended herein.

The present invention relates to changing or controlling the data rate of data transmitted by a transmitter in response to a control signal transmitted by a receiver to control circuitry at the transmitter and, thereby, the data rate of data being transmitted. The manner in which the data rate is controlled or changed can be accomplished in various well known manners including, but not limited to, controlling/changing demultiplexing by a demultiplexer, controlling/changing FEC error-encoding and interleaving and controlling/changing the modulation levels utilized at the transmitter. None of the cited references taken singularly or in combination disclose the basic concept of the present invention as set forth above; however, amendments to some of the claims have been made in order to more clearly recite the control signal transmitted by the receiver being of a nature such that circuitry in the transmitter is responsive to the control signal to control the data rate of transmitted data. The basic concept of the present invention is expressed using different terminology in some claims. The above terminology should not be utilized in place of the terminology in the claims which will be described below to explain the differences between the cited references and the claimed invention.

The objection to claim 32 has been overcome by amending claim 32 to depend

from independent claim 26, it being noted that the dependency from claim 26 was assumed in the Office Action.

The rejection of claims 1, 3-5, 7, 8, 10, 11, 15, 16, 19, 22, 25, 26, 28, 29 and 32-60 under 35 USC §103(a) as being unpatentable over Raleigh et al in view of Padovani et al is respectfully traversed for the reasons pointed out hereinafter.

Bearing in mind the basic concept of the present invention as set forth above, it should be appreciated, as recognized by the Examiner, that Raleigh et al does not teach controlling the data rate at a transmitter in response to a control signal received from a receiver. Raleigh et al teaches the use of "space-time coding" in which each of the demultiplexed data streams are correlated to one another through repetition. The failure of Raleigh et al to teach control of circuitry at the transmitter to control data rate transmission by the transmitter is not overcome by Padovani et al in that, contrary to the comments in the Office Action, Raleigh et al merely recognizes determining of the SNR required to achieve a theoretical capacity equal to the desired data rate, and is not pertinent to the basic concept of the present invention. Padovani et al does not overcome this lack of teaching in that, contrary to the statements made in the Office Action in rejecting the claims, Padovani et al does not generate a control signal for controlling a transmitter to adjust the data rate from the transmitter. In paragraph (0038), Padovani et al merely discusses the selection of the best base station based on requested data rate and in paragraphs (0060) – (0065), merely indicates that a requested data rate based on C/I can be generated. In paragraph (0064), it is stated that a base station monitors a reverse link DRC channel for DRC messages from a mobile station and explains that, after a predetermined number of retransmission

attempts, the base station can terminate the process or re-initiate a call. Padovani et al does not teach control of a transmitter to produce a desired data rate, i.e. vary the data rate, with the control dependent upon a control signal received from a receiver as recited in the claims. That is, Padovani et al does not adjust the rate of the transmitted signal from the transmitter that receives the control signal. Padovani et al is discussing a handover process, where a signal is handed off from one base station to another, not a controlled, variable or adjustable data rate system as recited in the claims.

Independent claims 1 and 5 each specifically recites circuitry at the transmitter responsive to the control signal to control the data rate of transmitted data. Neither Raleigh et al nor Padovani et al teach such circuitry responsive to a control signal generated by a command processor at a receiver. The rejection of claims 1 and 5 as being unpatentable over Raleigh et al in view of Padovani et al is respectfully traversed for the reasons that it would not be obvious to combine Padovani et al with Raleigh et al because there is no motivation to combine the teachings of Raleigh et al and Padovani et al and, most importantly, even if the teachings of Raleigh et al and Padovani et al were combined, the combined teachings would not result in the claimed invention, namely circuitry in the transmitter responsive to a control signal transmitted from the receiver to produce a desired data rate. In view of the above, even if it were considered to be obvious to combine the teachings of Raleigh et al and Padovani et al, the combination would not result in the transmitter, receiver, systems, or methods recited in the claims.

Claims 2, 3 and 4, dependent on independent claim 1 and claims 6 and 7, dependent on independent claim 5 are patentable over the cited references for the

same reasons and further due to the additional recitations therein.

Independent claim 8 relates to a communications method including the step of "controlling the data rate of data transmitted in said transmitting step in response to the control signal." As noted above, neither Raleigh et al nor Padovani et al, taken either singly or in combination, disclose controlling the data rate of data transmitted in a transmitting step. Claims 9 and 10, dependent on independent claim 8, are patentable for the same reasons and further due to the additional recitations therein

Independent claim 11 is directed to a receiver including command processor circuitry responsive to the error rate of decoded channels for generating a "data-rate control signal to produce a desired data rate to be sent by the transmitter of the signals" such that the data rate control signal controls operation of circuitry at the transmitter to produce a desired data rate. That is, independent claim 11 recites the control signal being of a nature to control operation of circuitry at the transmitter to produce the desired data rate. As noted above, neither Raleigh et al nor Padovani et al, taken either singly or in combination, disclose generating a control signal of a nature to control circuitry at a transmitter to produce a desired data rate to be sent by the transmitter.

Claim 12 is dependent on independent claim 11 and patentable over the cited references for the same reasons and further due to the structure recited therein.

Independent claim 15 is directed to a method for recovering wireless data including generating a data-rate control signal to produce a desired data rate to be sent by the data symbol transmitter. As noted above, neither Raleigh et al nor Padovani et al, taken either singly or in combination, disclose generating a control signal of a nature to control circuitry at a transmitter to produce a desired data rate to be sent by the

transmitter.

Claim 16 is dependent on independent claim 15 and patentable over the cited references for the same reasons and further due to the structure recited therein.

Independent claim 19 is directed to a transmitter including a receiver therein for receiving a data rate control signal generated from a remote terminal and a processor responsive to the data rate control signal for adjusting the data rate of the transmitted signal. As noted above, neither Raleigh et al nor Padovani et al, taken either singly or in combination, disclose generating a control signal of a nature to control circuitry at a transmitter to produce a desired data rate to be sent by the transmitter.

Claims 22 and 25 are dependent on independent claim 19 and patentable over the cited references for the same reasons and further due to the structure recited therein.

Independent claim 26 is directed to a method for transmitting a wireless signal including the steps of receiving an error rate dependent data rate control signal generated from a remote terminal and adjusting the data rate of the transmitted signal in accordance with the data-rate control signal. As noted above, neither Raleigh et al nor Padovani et al, taken either singly or in combination, disclose generating a control signal of a nature to control circuitry at a transmitter to produce a desired data rate to be sent by the transmitter.

Independent claim 33 is directed to a wireless transmitter and recites a controller for a demultiplexer that operates in response to a feedback control signal from a receiver indicating a reduction in signal quality to control the demultiplexer. As noted above, neither Raleigh et al nor Padovani et al, taken either singly or in combination,

disclose generating a control signal of a nature to control circuitry at a transmitter to produce a desired data rate to be sent by the transmitter.

Claims 34, 35, 36 and 37 are dependent on independent claim 33 and patentable over the cited references for the same reasons and further due to the structure therein.

Independent claim 38 is directed to a wireless transmitter and recites a controller receiving a feedback control signal from a receiver for controlling a demultiplexer. As noted above, neither Raleigh et al nor Padovani et al, taken either singly or in combination, disclose generating a control signal of a nature to control circuitry at a transmitter to produce a desired data rate to be sent by the transmitter.

Claims 39, 40, 41, 42 and 43 are dependent on independent claim 38 and patentable over the cited references for the same reasons and further due to the structure recited therein.

Independent claim 44 is directed to a wireless transmitter including control circuitry for a demultiplexer operable in response to a feedback control signal from a receiver. As noted above, neither Raleigh et al nor Padovani et al, taken either singly or in combination, disclose generating a control signal of a nature to control circuitry at a transmitter to produce a desired data rate to be sent by the transmitter.

Claims 45, 46, 47 and 48 are dependent on independent claim 44 and patentable over the cited references for the same reasons and further due to the structure recited therein.

Independent claim 49 is directed to a wireless receiver including a multiplexer for multiplexing bit-streams of data and a controller for controlling the number of bit-

streams that are applied to the multiplexer such that the rate of a single stream of output data is determined by the number of bit-streams applied to the multiplexer. Raleigh et al does not disclose a controller for the number of bit-streams, nor does Padovani et al teach such a controller. Accordingly, it is submitted that claim 49 is clearly patentable over the cited references.

Claims 50, 51, 52, 53 and 54 are dependent on independent claim 49 and patentable over the cited references for the same reasons and further due to the structure recited therein.

Independent claim 55 is directed to a receiver including a multiplexer and a controller for controlling the number of bit-streams applied to the multiplexer such that the rate of a single stream of output data is determined by the number of bit-streams applied to the multiplexer. Raleigh et al does not disclose a controller for the number of bit-streams, nor does Padovani et al teach such a controller. Accordingly, it is submitted that claim 55 is clearly patentable over the cited references.

Claims 56, 57, 58, 59 and 60 are dependent on independent claim 55 and patentable over the cited references for the same reasons and further due to the structure recited therein.

The amendments to the claims as set forth herein add no matter not previously claimed, and it is requested that the present amendment be entered such that any appeal to be a filed will be based on the claims as amended, rather than requiring the filing of an RCE. The examiner is encouraged to telephone the undersigned attorney to expedite any further prosecution.

In view of the above, it is believed that all claims remaining in the present reissue

application are clearly patentable over the cited references and that the reissue application is in condition for allowance, early notice of which is solicited.

Respectfully submitted,

Robert H. Epstein
Registration No. 24,353

EPSTEIN & GERKEN
1901 Research Boulevard, Suite 340
Rockville, Maryland 20850
(301) 610-7634

Filed Electronically via EFS: 11-28-2012

## AMENDMENTS TO THE CLAIMS

The following is a complete listing of all of the claims in the subject patent application, with the status of each claim being indicated in a parenthetical expression. Claims 2, 3, 4, 7, 9 and 10 from U.S. Patent No. 7,613,247 are retained in unamended form. Currently amended claims 1, 5 and 8 from U.S. Patent No. 7,613,247 and currently amended new claims 11, 15, 19, 26, 32, 33, 37, 38, 43, 44, 48, 52, 53 and 58 are set forth below with required markings.

1. (Currently Amended) A communications system comprising

a transmitter, including,

a demultiplexer for demultiplexing input data into a plurality of data channels;

a plurality of forward-error-correction encoders and interleavers, coupled to said demultiplexer for FEC encoding and interleaving the plurality of data channels as a plurality of FEC encoded and interleaved channels, respectively;

a plurality of processors coupled to said plurality of FEC encoders and interleavers, for processing the plurality of FEC encoded and interleaved channels as a plurality of modulated channels;

a combiner coupled to said plurality of processors, for combining the plurality of modulated channels as a

multiplexed signal;

a receiver, including,

a plurality of demodulators for demodulating the multiplexed signal into a plurality of demodulated channels, respectively;

a multiplicity of FEC decoder and de-interleavers, coupled to said plurality of demodulators for FEC decoding and de-interleaving the multiplicity of demodulated channels, as a multiplicity of decoded demodulated channels having an error rate;

a command processor responsive to the error rate for determining a desired data rate and generating a control signal to be transmitted to the transmitter; and

a multiplexer, coupled to said plurality of FEC decoders and de-interleavers, for multiplexing the multiplicity of decoded channels[;]

said transmitter including receiver circuitry for receiving the control signal transmitted by the receiver and circuitry responsive to the control signal to control the data rate of transmitted data.

2. (From USPN 7,613,247)

3. (From USPN 7,613,247)

4. (From USPN 7,613,247)

5. (Currently Amended) A communications system comprising:

a transmitter, including,

demultiplexer means for demultiplexing input data into a plurality of data channels;

encoder means for FEC encoding and interleaving the plurality of data channels as a plurality of FEC encoded and interleaved channels, respectively;

processor means for processing the plurality of FEC encoded and interleaved channels as a plurality of modulated channels;

combiner means for combining the plurality of modulated channels as a multiplexed signal;

a receiver, including,

demodulator means for demodulating the multiplexed signal into a plurality of demodulated channels, respectively;

decoder means for FEC decoding and de-interleaving the multiplicity of demodulated channels, as a multiplicity of decoded channels having an error rate;

command processor means responsive to the error rate

for generating a signal indicating a desired data rate to be sent to said transmitter; and

multiplexer means for multiplexing the multiplicity of decoded channels[;]

said transmitter including receiver circuitry for receiving the control signal transmitted by the receiver and circuitry responsive to the control signal to control the data rate of transmitted data.

6. (From USPN 7,613,247)

7. (From USPN 7,613,247)

8. (Currently Amended) A communications method comprising the steps of:

demultiplexing input data into a plurality of data channels;

FEC encoding and interleaving the plurality of data channels as a plurality of FEC encoded and interleaved channels, respectively;

processing the plurality of FEC encoded and interleaved channels as a plurality of modulated channels;

combining the plurality of channels as a multiplexed signal;

transmitting the multiplexed signal having the plurality of modulated channels, over a communications channel;

demodulating the multiplexed signal into a plurality of

demodulated channels, respectively;

FEC decoding and de-interleaving the plurality of demodulated channels, as a multiplicity of decoded channels;

generating a syndrome signal from an error rate of the multiplicity of decoded channels;

generating, in response to the syndrome signal, a channel quality ~~indication~~ control signal indicating a desired data rate;

transmitting the quality ~~indication~~ control signal to the transmitter; ~~and~~

multiplexing the multiplicity of decoded channels; and

controlling the data rate of data transmitted during said transmitting step in response to the control signal.

9. (From USPN 7,613,247)

10. (From USPN 7,613,247)

11. (New, Currently Amended) A receiver for recovering wireless data conveyed in data symbols by a plurality of different subchannel signals transmitted over a wireless channel, comprising:

demodulator circuitry for detecting the transmitted signals in a plurality of demodulated channels;

decoder circuitry for FEC decoding and de-interleaving the plurality of

demodulated channels, providing a multiplicity of decoded channels, each having an error rate;

command processor circuitry responsive to the error rate of the decoded channels for generating a data-rate control signal to produce a desired data rate to be sent by the data symbol transmitter of the signals, the data rate control signal controlling operation of circuitry at the transmitter to produce the desired data rate to be sent by the data symbol transmitter of the signals;

transmitting circuitry for conveying the error rate dependent rate control signal back to the data symbol transmitter; and

multiplexer circuitry for combining the multiplicity of decoded channels into a single stream of received data.

12. (New) The receiver of claim 11 wherein the decoder circuitry includes circuitry to decode FEC codes of different rates.

13. Cancelled.

14. Cancelled.

15. (New, Currently Amended) A method for recovering wireless data conveyed in data symbols by a plurality of different subchannel signals transmitted over a wireless channel, comprising the steps of:

detecting the transmitted signals in a plurality of demodulated channels;

FEC decoding and de-interleaving the plurality of demodulated channels, providing a multiplicity of decoded channels, each having an error rate;

using command processor circuitry responsive to the error rate of the decoded channels to generate a data-rate control signal to produce a desired data rate to be sent by the data symbol transmitter of the signals,

transmitting the error rate dependent data-rate control signal back to the data symbol transmitter; and

multiplexing the multiplicity of decoded channels into a single stream of received data.

16. (New) The method of claim 15 wherein the decoding step includes decoding FEC codes of different rates.

17. Cancelled.

18. Cancelled.

19. (New, Currently Amended) A transmitter for generating a wireless signal forming transmitted signals having a data rate including

a demultiplexer for demultiplexing input data into a plurality of independent data channels;

encoder circuitry for FEC encoding and interleaving the plurality of data channels as a plurality of FEC encoded and interleaved channels, respectively;

processor circuitry for processing the plurality of FEC encoded and interleaved channels as a plurality of modulated channels;

a receiver, located at the transmitter, for receiving a data-rate control signal generated from a remote terminal; and

a processor responsive to the data-rate control signal for adjusting the data rate of the transmitted signals.

20. Cancelled.

21. Cancelled.

22. (New) The transmitter of claim 19 wherein the FEC encoder circuitry is set to different code rates.

23. Cancelled.

24. Cancelled.

25. (New) The transmitter of claim 22 wherein the data rate processor changes the transmitted data rate by changing the FEC encoding rate.

26. (New, Currently Amended) A method for transmitting a wireless signal forming transmitted signals having a data rate, including the steps of

demultiplexing input data into a plurality of independent data channels;

FEC encoding and interleaving the plurality of data channels as a plurality of FEC encoded and interleaved channels, respectively;

processing the plurality of FEC encoded and interleaved channels as a plurality of modulated channels;

receiving an error rate dependent data-rate control signal generated from a remote terminal; and

adjusting the data rate of the transmitted signal in accordance with the data-rate control signal.

27. Cancelled.

28. (New) The method of claim 26 wherein the modulated channels are set to common symbol rates but different modulated depths.

29 (New). The method of claim 26 wherein the FEC encoding is set to varying code rates.

30. Cancelled.

31. Cancelled.

32. (New) The method of claim 26 wherein the data rate processor changes the

transmitted data rate by changing the FEC encoding rate.

33. (New, Currently Amended) A wireless transmitter comprising:

a demultiplexer having at least one input and a plurality of outputs, said input receiving an input data stream and said outputs providing a first plurality of parallel output data streams, with each output data stream including a group of different data symbols from said input data stream, said output data streams collectively providing a first data rate;

a spread spectrum processor for generating a separate spread spectrum signal for each of said first plurality of output data streams;

transmission circuitry for simultaneously transmitting said separate spread spectrum signals in a common channel; and

a controller for said demultiplexer, said controller receiving a feedback control signal from a receiver, said feedback control signal being an indication of the signal quality of the data rate received at the receiver, whereby in response to said feedback control signal indicating a reduction in signal quality, said controller controls said demultiplexer to change said outputs from output data streams having different data symbols to output data streams having the same data symbols, thereby providing a second data rate lower than said first data rate.

34. (New) The wireless transmitter of claim 33 further including FEC encoder circuitry for FEC-encoding said first plurality of parallel output data streams.

35. (New) The wireless transmitter of claim 34 further including bit-interleaving circuitry for bit-interleaving said first plurality of FEC-encoded parallel output data streams.

36. (New) The wireless transmitter of claim 33 wherein said demultiplexer has additional outputs which provide a second plurality of parallel output data streams accompanying said first plurality of parallel output data streams, each respective one of said second plurality of output data streams including the same data symbols as a respective one of said first plurality of parallel output data streams.

37. (New, Currently Amended) The transmitter of claim 33 wherein said feedback control signal is a data rate command signal.

38. (New, Currently Amended) A wireless transmitter comprising:

a demultiplexer having at least one input and a plurality of outputs, said input receiving an input data stream and said outputs providing a first plurality of parallel output data streams with each output data stream including a group of different data symbols from said input data stream, said output data streams collectively providing a first data rate;

a spread spectrum processor for generating a separate spread spectrum signal

for each of said first plurality of output data streams;

transmission circuitry for simultaneously transmitting said separate spread spectrum signals in a common channel; and

a controller for said demultiplexer, said controller receiving a feedback control signal from a receiver, said feedback control signal being an indication of the signal quality of the data received at the receiver whereby, in response to said feedback control signal indicating a reduction in signal quality, said controller controls said demultiplexer to change said outputs from said first plurality of output data streams having different data symbols to a second plurality of output data streams having different data symbols, said second plurality being less than said first plurality, whereby said second plurality of output data streams collectively provides a second data rate lower than said first data rate.

39. (New) The wireless transmitter of claim 38 further including FEC encoder circuitry for FEC-encoding said first and second plurality of parallel output data streams.

40. (New) The wireless transmitter of claim 39 further including bit-interleaving circuitry for bit-interleaving said first and second plurality of FEC-encoded parallel output data streams.

41. (New) The wireless transmitter of claim 38 wherein said demultiplexer

additionally produces a third plurality of parallel output data streams, each respective one of said third plurality of output data streams including the same data symbols as a respective one of said first plurality of parallel output data streams.

42. (New) The wireless transmitter of claim 38 wherein said demultiplexer additionally produces a fourth plurality of parallel output data streams, each respective one of said fourth plurality of output data streams including the same data symbols as a respective one of said second plurality of parallel output data streams.

43. (New, Currently Amended) The transmitter of claim 38 wherein said feedback control signal is a data rate command signal.

44. (New, Currently Amended) A wireless transmitter that transmits an input bit stream by demultiplexing the input bit stream to form plural, parallel, lower-rate output bit streams which, after processing, are simultaneously transmitted in separately detectible signals within a common frequency channel, comprising:

a demultiplexer for demultiplexing said input bit stream and producing parallel, lower-rate output bit streams, each lower-rate output bit stream having a group of different symbols from said input bit stream; and

control circuitry for said demultiplexer responsive to a feedback control signal from a receiver, said feedback control signal being an indication of the signal quality of

data received at the receiver, said control circuitry causing the number of said parallel, lower-rate output bit streams produced by said demultiplexer to increase when said feedback control signal indicates an increase in signal quality and to decrease when said feedback signal indicates a decrease in signal quality.

45. (New) The wireless transmitter of claim 44 wherein said parallel, lower-rate output bit streams are transmitted as signals having constant symbol durations.

46. (New) The wireless transmitter of claim 45 wherein said parallel, lower-rate output bit streams are error-encoded and bit-interleaved before transmission.

47. (New) The wireless transmitter of claim 44 wherein said parallel, lower-rate output bit streams collectively have a data rate that increases when the number of said lower-rate output bit streams increases and have a data rate that decreases when the number of said lower-rate output bit streams decreases.

48. (New, Currently Amended) The transmitter of claim 44 wherein said feedback control signal is a data rate command signal.

49. (New) A wireless receiver for simultaneously receiving a plurality of spread spectrum signals transmitted in a common frequency channel, comprising:

rf circuitry for converting said received spread spectrum signals to baseband;

a demodulator for separating said baseband spread spectrum signals and for recovering a stream of data symbols from each of said spread spectrum signals;

a multiplexer for multiplexing bit-streams of data derived from said recovered streams of data symbols to form a single stream of output data; and

a controller for controlling the number of bit-streams that are applied to said multiplexer, whereby the rate of said single stream of output data is determined by the number of bit-streams applied to said multiplexer.

50. (New) The receiver of claim 49 further including a bit-deinterleaver and FEC decoder for deinterleaving and decoding said bit-streams before they are applied to the multiplexer.

51. (New) The receiver of claim 49 wherein said controller combines bit-streams having the same bit sequences to produce said bit-streams applied to said multiplexer.

52. (New, Currently Amended) The receiver of claim 49 wherein said controller generates a feedback control signal which is sent to the transmitter that transmits said plurality of spread spectrum signals, said feedback control signal indicating the signal quality of the data received at the receiver, said feedback control

signal changing the number of transmitted spread spectrum signals that have different bit sequences, whereupon said controller changes the number of bit-streams that are applied to said multiplexer to change the rate of said single stream of output data.

53. (New, Currently Amended) The receiver of claim 52 wherein said controller increases the number of inputs applied to said multiplexer when said feedback control signal indicates an increase in signal quality.

54. (New) The receiver of claim 52 wherein said controller decreases the number of inputs applied to said multiplexer when said feedback signal indicates a decrease in signal quality.

55. (New) A receiver for simultaneously receiving a plurality of separately-detectible signals simultaneously transmitted in a common frequency channel, comprising:

rf circuitry for converting said received plurality of signals to baseband;

a demodulator for separating said plurality of baseband signals and for recovering a stream of data symbols from each of said signals;

a multiplexer for multiplexing bit-streams of data derived from said recovered streams of data symbols to form a single stream of output data; and

a controller for controlling the number of bit-streams that are applied to said multiplexer, whereby the rate of said single stream of output data is determined by the number of bit-streams applied to said multiplexer.

56. (New) The receiver of claim 55 further including a bit-deinterleaver and an FEC decoder for deinterleaving and decoding said bit-streams before they are applied to said multiplexer.

57. (New) The receiver of claim 55 wherein said controller combines bit-streams having the same bit sequences to produce said bit-streams applied to said multiplexer.

58. (New, Currently Amended) The receiver of claim 55 wherein said controller generates a feedback control signal which is sent to the transmitter that transmits said plurality of signals, said feedback control signal indicating the signal quality in the channel between the transmitter and said receiver, said feedback control signal changing the number of transmitted separately-detectible signals that have different bit sequences, whereupon said controller changes the number of bit-streams that are applied to said multiplexer to change the rate of said single stream of output data.

59. (New) The receiver of claim 58 wherein said controller increases the number of inputs applied to said multiplexer when said feedback signal indicates an increase in signal quality.

60. (New) The receiver of claim 58 wherein said controller decreases the number of inputs applied to said multiplexer when said feedback signal indicates a decrease in signal quality.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Atty Docket No.: 1210.104.RE

In re the reissue PATENT application of

Joseph Garodnick | Examiner: Don Nguyen Vo

Serial No.: 13/287,620 | Group Art Unit: 2611

Filed: November 2, 2011 | Confirmation No.: 8011

For: Variable Throughput Reduction Communications System and Method

## AMENDMENT

**Mail Stop: Amendment**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313

Sir:

## INTRODUCTORY COMMENTS

In response to the Office Action dated September 10, 2012, please amend the subject reissue patent application as follows.

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/287,620 | 11/02/2011 | Joseph Garodnick | 1210.104.RE | 8011 |

36139 7590 12/05/2012
EPSTEIN & GERKEN
1901 RESEARCH BOULEVARD
SUITE 340
ROCKVILLE, MD 20850

| EXAMINER | |
|---|---|
| VO, DON NGUYEN | |
| ART UNIT | PAPER NUMBER |
| 2634 | |
| MAIL DATE | DELIVERY MODE |
| 12/05/2012 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

| **Advisory Action Before the Filing of an Appeal Brief** | **Application No.** *13/287,620* | **Applicant(s)** GARODNICK, JOSEPH |
|---|---|---|
| | **Examiner** Don N. Vo | **Art Unit** 2634 |

***--The MAILING DATE of this communication appears on the cover sheet with the correspondence address --***

THE REPLY FILED 28 November 2012 FAILS TO PLACE THIS APPLICATION IN CONDITION FOR ALLOWANCE.

NO NOTICE OF APPEAL FILED

1. ☒ The reply was filed after a final rejection. No Notice of Appeal has been filed. To avoid abandonment of this application, applicant must timely file one of the following replies: (1) an amendment, affidavit, or other evidence, which places the application in condition for allowance; (2) a Notice of Appeal (with appeal fee) in compliance with 37 CFR 41.31; or (3) a Request for Continued Examination (RCE) in compliance with 37 CFR 1.114 if this is a utility or plant application. Note that RCEs are not permitted in design applications. The reply must be filed within one of the following time periods:
   - a) ☒ The period for reply expires *3* months from the mailing date of the final rejection.
   - b) ☐ The period for reply expires on: (1) the mailing date of this Advisory Action; or (2) the date set forth in the final rejection, whichever is later. In no event, however, will the statutory period for reply expire later than SIX MONTHS from the mailing date of the final rejection.
   - c) ☐ A prior Advisory Action was mailed more than 3 months after the mailing date of the final rejection in response to a first after-final reply filed within 2 months of the mailing date of the final rejection. The current period for reply expires months from the mailing date of *the prior Advisory Action* or SIX MONTHS from the mailing date of the final rejection, whichever is earlier.

   *Examiner Note*: If box 1 is checked, check either box (a), (b) or (c). ONLY CHECK BOX (b) WHEN THIS ADVISORY ACTION IS THE FIRST RESPONSE TO APPLICANT'S FIRST AFTER-FINAL REPLY WHICH WAS FILED WITHIN TWO MONTHS OF THE FINAL REJECTION. ONLY CHECK BOX (c) IN THE LIMITED SITUATION SET FORTH UNDER BOX (c). See MPEP 706.07(f).

Extensions of time may be obtained under 37 CFR 1.136(a). The date on which the petition under 37 CFR 1.136(a) and the appropriate extension fee have been filed is the date for purposes of determining the period of extension and the corresponding amount of the fee. The appropriate extension fee under 37 CFR 1.17(a) is calculated from: (1) the expiration date of the shortened statutory period for reply originally set in the final Office action; or (2) as set forth in (b) or (c) above, if checked. Any reply received by the Office later than three months after the mailing date of the final rejection, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

NOTICE OF APPEAL

2. ☐ The Notice of Appeal was filed on ____. A brief in compliance with 37 CFR 41.37 must be filed within two months of the date of filing the Notice of Appeal (37 CFR 41.37(a)), or any extension thereof (37 CFR 41.37(e)), to avoid dismissal of the appeal. Since a Notice of Appeal has been filed, any reply must be filed within the time period set forth in 37 CFR 41.37(a).

AMENDMENTS

3. ☒ The proposed amendments filed after a final rejection, but prior to the date of filing a brief, will not be entered because
   - a) ☒ They raise new issues that would require further consideration and/or search (see NOTE below);
   - b) ☐ They raise the issue of new matter (see NOTE below);
   - c) ☐ They are not deemed to place the application in better form for appeal by materially reducing or simplifying the issues for appeal; and/or
   - d) ☐ They present additional claims without canceling a corresponding number of finally rejected claims.

   NOTE: *See Continuation Sheet*. (See 37 CFR 1.116 and 41.33(a)).
4. ☐ The amendments are not in compliance with 37 CFR 1.121. See attached Notice of Non-Compliant Amendment (PTOL-324).
5. ☐ Applicant's reply has overcome the following rejection(s): ____.
6. ☐ Newly proposed or amended claim(s) ____ would be allowable if submitted in a separate, timely filed amendment canceling the non-allowable claim(s).
7. ☒ For purposes of appeal, the proposed amendment(s): (a) ☒ will not be entered, or (b) ☐ will be entered, and an explanation of how the new or amended claims would be rejected is provided below or appended.

AFFIDAVIT OR OTHER EVIDENCE

8. ☐ The affidavit or other evidence filed after final action, but before or on the date of filing a Notice of Appeal will not be entered because applicant failed to provide a showing of good and sufficient reasons why the affidavit or other evidence is necessary and was not earlier presented. See 37 CFR 1.116(e).
9. ☐ The affidavit or other evidence filed after the date of filing the Notice of Appeal, but prior to the date of filing a brief, will not be entered because the affidavit or other evidence failed to overcome all rejections under appeal and/or appellant fails to provide a showing of good and sufficient reasons why it is necessary and was not earlier presented. See 37 CFR 41.33(d)(1).
10. ☐ The affidavit or other evidence is entered. An explanation of the status of the claims after entry is below or attached.

REQUEST FOR RECONSIDERATION/OTHER

11. ☐ The request for reconsideration has been considered but does NOT place the application in condition for allowance because: ____.
12. ☐ Note the attached Information *Disclosure Statement*(s). (PTO/SB/08) Paper No(s). ____
13. ☐ Other: ____.

STATUS OF CLAIMS

14. The status of the claim(s) is (or will be) as follows:

Claim(s) allowed: .

Claim(s) objected to: 2,6 and 9.

Claim(s) rejected: 1,3-5,7,8,10-12,15,16,19,22,25,26,28,29 and 32-60.

Claim(s) withdrawn from consideration: .

/Don N Vo/
Primary Examiner, Art Unit 2634

Continuation of 3. NOTE: The proposed amendments to claims 1, 5, 8, 11, 15, 19, 26, 33, 38, 44, 52 and 58 are considered to raised new issues.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Atty Docket No.: 1210.104.RE

In re the Patent application of

Joseph Garodnick

Examiner: Don Nguyen Vo

Serial No.: 13/287,620

Group Art Unit: 2611

Filed: November 2, 2011

Confirmation No.: 8011

For:

LETTER

**MAIL STOP: PATENT APPLICATION**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

Filed herewith is a Request for Continued Examination (RCE) under 37 CFR 1.114. The submission for the RCE is the unentered Amendment filed in the U.S. Patent and Trademark Office on November 28, 2012.

Respectfully submitted,

Robert H. Epstein
Registration No. 24,353

EPSTEIN & GERKEN
1901 Research Boulevard, Suite 340
Rockville, Maryland 20850
(301) 610-7634

Filed Electronically via EFS: 12-10-2012

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 14426371 |
| **Application Number:** | 13287620 |
| **International Application Number:** | |
| **Confirmation Number:** | 8011 |
| **Title of Invention:** | VARIABLE THROUGHPUT REDUCTION COMMUNICATIONS SYSTEM AND METHOD |
| **First Named Inventor/Applicant Name:** | Joseph Garodnick |
| **Customer Number:** | 36139 |
| **Filer:** | Robert Howard Epstein/Ann Shebovsky |
| **Filer Authorized By:** | Robert Howard Epstein |
| **Attorney Docket Number:** | 1210.104.RE |
| **Receipt Date:** | 10-DEC-2012 |
| **Filing Date:** | 02-NOV-2011 |
| **Time Stamp:** | 15:56:21 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $930 |
| RAM confirmation Number | 2651 |
| Deposit Account | |
| Authorized User | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part/.zip | Pages (if appl.) |
|---|---|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| 1 | Miscellaneous Incoming Letter | Letter-RCE.pdf | 110918<br>7a2ecc93dd9ba6d84c35133d397f009a2779a597 | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 2 | Request for Continued Examination (RCE) | RCE.pdf | 52826<br>e658c3bcdd2926a54549f3c94ffd9f7a858b0ca0 | no | 1 |
| **Warnings:** | | | | | |
| This is not a USPTO supplied RCE SB30 form. | | | | | |
| **Information:** | | | | | |
| 3 | Fee Worksheet (SB06) | fee-info.pdf | 30976<br>09f4df973cb78ae69bb4ecc1a47f336a9e17dd24 | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| | | **Total Files Size (in bytes):** | 194720 | | |

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**

**National Stage of an International Application under 35 U.S.C. 371**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**

**New International Application Filed with the USPTO as a Receiving Office**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 13287620 |
| **Filing Date:** | 02-Nov-2011 |
| **Title of Invention:** | VARIABLE THROUGHPUT REDUCTION COMMUNICATIONS SYSTEM AND METHOD |
| **First Named Inventor/Applicant Name:** | Joseph Garodnick |
| **Filer:** | Robert Howard Epstein/Ann Shebovsky |
| **Attorney Docket Number:** | 1210.104.RE |

Filed as Large Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| Request for continued examination | 1801 | 1 | 930 | 930 |
| | **Total in USD ($)** | | | **930** |

PTO/SB/30 (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

# Request for Continued Examination (RCE) Transmittal

Address to:
Mail Stop RCE
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

| | |
|---|---|
| Application Number | 13/287,620 |
| Filing Date | 11/02/2011 |
| First Named Inventor | Joseph Garodnick |
| Art Unit | 2611 |
| Examiner Name | Don Nguyen Vo |
| Attorney Docket Number | 1210.104.RE |

**This is a Request for Continued Examination (RCE) under 37 CFR 1.114 of the above-identified application.**
Request for Continued Examination (RCE) practice under 37 CFR 1.114 does not apply to any utility or plant application filed prior to June 8, 1995, or to any design application. See Instruction Sheet for RCEs (not to be submitted to the USPTO) on page 2.

1. Submission required under 37 CFR 1.114 Note: If the RCE is proper, any previously filed unentered amendments and amendments enclosed with the RCE will be entered in the order in which they were filed unless applicant instructs otherwise. If applicant does not wish to have any previously filed unentered amendment(s) entered, applicant must request non-entry of such amendment(s).

a. ☐ Previously submitted. If a final Office action is outstanding, any amendments filed after the final Office action may be considered as a submission even if this box is not checked.

i. ☐ Consider the arguments in the Appeal Brief or Reply Brief previously filed on ____________

Ii. ☐ Other ____________

b. ☑ Enclosed

I. ☐ Amendment/Reply

ii. ☐ Affidavit(s)/ Declaration(s)

iii. ☐ Information Disclosure Statement (IDS)

iv. ☑ Other Letter

2. Miscellaneous

a. ☐ Suspension of action on the above-identified application is requested under 37 CFR 1.103(c) for a period of ________ months. (Period of suspension shall not exceed 3 months; Fee under 37 CFR 1.17(i) required)

b. ☐ Other ____________

3. Fees The RCE fee under 37 CFR 1.17(e) is required by 37 CFR 1.114 when the RCE is filed.

a. ☐ The Director is hereby authorized to charge the following fees, any underpayment of fees, or credit any overpayments, to Deposit Account No. ____________.

i. ☐ RCE fee required under 37 CFR 1.17(e)

ii. ☐ Extension of time fee (37 CFR 1.136 and 1.17)

iii. ☐ Other ____________

b. ☐ Check in the amount of $ ____________ enclosed

c. ☑ Payment by credit card (~~Form PTO-2038 enclosed~~) via online payment system.

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

***SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT REQUIRED***

| | | | |
|---|---|---|---|
| Signature | /robert h epstein/ | Date | 12-10-2012 |
| Name (Print/Type) | Robert H. Epstein | Registration No. | 24,353 |

***CERTIFICATE OF MAILING OR TRANSMISSION***

I hereby certify that this correspondence is being deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to: Mail Stop RCE, Commissioner for Patents, P. O. Box 1450, Alexandria, VA 22313-1450 or facsimile transmitted to the U.S. Patent and Trademark Office on the date shown below.

| | | | |
|---|---|---|---|
| Signature | | | |
| Name (Print/Type) | | Date | |

This collection of information is required by 37 CFR 1.114. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Mail Stop RCE, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

| *Search Notes* | **Application/Control No.** 13287620 | **Applicant(s)/Patent Under Reexamination** GARODNICK, JOSEPH |
|---|---|---|
| | **Examiner** DON N VO | **Art Unit** 2611 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 375 | 141, 144, 145-149, 260, 261, 295, 296, 316 | 2/15/12 & 2/16/12 | DV |
| 375 | 267 | 1/7/13 | DV |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| EAST | 9/5/12 | DV |
| EAST | 1/4/13 | DV |

## INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 375 | 267 | 1/9/13 | DV |

| | |
|---|---|
| | /DON N VO/<br>Primary Examiner.Art Unit 2634 |

| *Index of Claims* | Application/Control No. 13287620 | Applicant(s)/Patent Under Reexamination GARODNICK, JOSEPH |
|---|---|---|
| | Examiner DON N VO | Art Unit 2611 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant ☐ CPA ☐ T.D. ☐ R.1.47

| CLAIM | | DATE | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 02/16/2012 | 09/05/2012 | 01/09/2013 | | | | | | | |
| 1 | 1 | ✓ | ✓ | = | | | | | | | |
| 2 | 2 | O | O | = | | | | | | | |
| 3 | 3 | ✓ | ✓ | = | | | | | | | |
| 4 | 4 | ✓ | ✓ | = | | | | | | | |
| 5 | 5 | ✓ | ✓ | = | | | | | | | |
| 6 | 6 | O | O | = | | | | | | | |
| 7 | 7 | ✓ | ✓ | = | | | | | | | |
| 8 | 8 | ✓ | ✓ | = | | | | | | | |
| 9 | 9 | O | O | = | | | | | | | |
| 10 | 10 | ✓ | ✓ | = | | | | | | | |
| 11 | 11 | ✓ | ✓ | = | | | | | | | |
| 12 | 12 | ✓ | ✓ | = | | | | | | | |
| | 13 | ✓ | - | - | | | | | | | |
| | 14 | ✓ | - | - | | | | | | | |
| 13 | 15 | ✓ | ✓ | = | | | | | | | |
| 14 | 16 | ✓ | ✓ | = | | | | | | | |
| | 17 | ✓ | - | - | | | | | | | |
| | 18 | ✓ | - | - | | | | | | | |
| 15 | 19 | ✓ | ✓ | = | | | | | | | |
| | 20 | ✓ | - | - | | | | | | | |
| | 21 | ✓ | - | - | | | | | | | |
| 16 | 22 | ✓ | ✓ | = | | | | | | | |
| | 23 | ✓ | - | - | | | | | | | |
| | 24 | ✓ | - | - | | | | | | | |
| 17 | 25 | ✓ | ✓ | = | | | | | | | |
| 18 | 26 | ✓ | ✓ | = | | | | | | | |
| | 27 | ✓ | - | - | | | | | | | |
| 19 | 28 | ✓ | ✓ | = | | | | | | | |
| 20 | 29 | ✓ | ✓ | = | | | | | | | |
| | 30 | ✓ | - | - | | | | | | | |
| | 31 | ✓ | - | - | | | | | | | |
| 21 | 32 | ✓ | ✓ | = | | | | | | | |
| 22 | 33 | ✓ | ✓ | = | | | | | | | |
| 23 | 34 | ✓ | ✓ | = | | | | | | | |
| 24 | 35 | ✓ | ✓ | = | | | | | | | |
| 25 | 36 | ✓ | ✓ | = | | | | | | | |

| *Index of Claims* | Application/Control No. 13287620 | Applicant(s)/Patent Under Reexamination GARODNICK, JOSEPH |
|---|---|---|
| | Examiner DON N VO | Art Unit 2611 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant ☐ CPA ☐ T.D. ☐ R.1.47

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 02/16/2012 | 09/05/2012 | 01/09/2013 | | | | | | |
| 26 | 37 | ✓ | ✓ | = | | | | | | |
| 27 | 38 | ✓ | ✓ | = | | | | | | |
| 28 | 39 | ✓ | ✓ | = | | | | | | |
| 29 | 40 | ✓ | ✓ | = | | | | | | |
| 30 | 41 | ✓ | ✓ | = | | | | | | |
| 31 | 42 | ✓ | ✓ | = | | | | | | |
| 32 | 43 | ✓ | ✓ | = | | | | | | |
| 33 | 44 | ✓ | ✓ | = | | | | | | |
| 34 | 45 | ✓ | ✓ | = | | | | | | |
| 35 | 46 | ✓ | ✓ | = | | | | | | |
| 36 | 47 | ✓ | ✓ | = | | | | | | |
| 37 | 48 | ✓ | ✓ | = | | | | | | |
| 38 | 49 | ✓ | ✓ | = | | | | | | |
| 39 | 50 | ✓ | ✓ | = | | | | | | |
| 40 | 51 | ✓ | ✓ | = | | | | | | |
| 41 | 52 | ✓ | ✓ | = | | | | | | |
| 42 | 53 | ✓ | ✓ | = | | | | | | |
| 43 | 54 | ✓ | ✓ | = | | | | | | |
| 44 | 55 | ✓ | ✓ | = | | | | | | |
| 45 | 56 | ✓ | ✓ | = | | | | | | |
| 46 | 57 | ✓ | ✓ | = | | | | | | |
| 47 | 58 | ✓ | ✓ | = | | | | | | |
| 48 | 59 | ✓ | ✓ | = | | | | | | |
| 49 | 60 | ✓ | ✓ | = | | | | | | |

**EAST Search History**

**EAST Search History (Prior Art)**

<This search history is empty>

**EAST Search History (Interference)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 40824 | (control$4 adjust$3) with (rate) with (transmi$5 modulat$3) | USPAT; UPAD | OR | ON | 2013/01/09 09:50 |
| L2 | 597 | (transmit transmitting transmission modulat$3) with rate with (back feedback (feed adj back)) with (basestation (base adj station) transmitter) | USPAT; UPAD | OR | ON | 2013/01/09 09:52 |
| L3 | 236 | 1 same 2 | USPAT; UPAD | OR | ON | 2013/01/09 09:53 |
| L4 | 258396 | multiplex$3 demultiplex$3 de-multiplex$3 | USPAT; UPAD | OR | ON | 2013/01/09 09:54 |
| L5 | 147 | 3 and 4 | USPAT; UPAD | OR | ON | 2013/01/09 09:54 |

**1/9/2013 9:59:56 AM**
**C:\Users\dvo\Documents\EAST\Workspaces\Default EAST Workspace (Flat Panel LANDSCAPE).wsp**

Case No. 1:21-cv-01428-RM-MEH Document 1-2 filed 05/26/21 USDC Colorado pg 168 of 182

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 101908 | (control$4 adjust$3) with (rate) with (transmi$5 modulat$3) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2013/01/04 17:17 |
| L2 | 1537 | (transmit transmitting transmission modulat$3) with rate with (back feedback (feed adj back)) with (basestation (base adj station) transmitter) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2013/01/04 17:25 |
| L3 | 612 | 1 same 2 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2013/01/04 17:25 |
| L4 | 669242 | multiplex$3 demultiplex$3 de-multiplex$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2013/01/04 17:25 |
| L5 | 366 | 3 and 4 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2013/01/04 17:25 |

**1/4/2013 6:09:57 PM**
**C:\Users\dvo\Documents\EAST\Workspaces\Default EAST Workspace (Flat Panel LANDSCAPE).wsp**

# *Issue Classification*

| Application/Control No. | Applicant(s)/Patent Under Reexamination |
| --- | --- |
| 13287620 | GARODNICK, JOSEPH |
| **Examiner** | **Art Unit** |
| DON N VO | 2634 |

| ORIGINAL | |
| --- | --- |
| CLASS | SUBCLASS |
| 375 | 267 |

## CROSS REFERENCE(S)

| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | | | |
| --- | --- | --- | --- | --- | --- |
| | | | | | |

## INTERNATIONAL CLASSIFICATION

| CLAIMED | | | | | NON-CLAIMED | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| H | 0 | 4 | B | 7 / 02 (2006.01.01) | | | | | |

☐ Claims renumbered in the same order as presented by applicant ☐ CPA ☐ T.D. ☐ R.1.47

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 1 | 1 | | 17 | 22 | 33 | 38 | 49 | | | | | | | | |
| 2 | 2 | | 18 | 23 | 34 | 39 | 50 | | | | | | | | |
| 3 | 3 | 15 | 19 | 24 | 35 | 40 | 51 | | | | | | | | |
| 4 | 4 | | 20 | 25 | 36 | 41 | 52 | | | | | | | | |
| 5 | 5 | | 21 | 26 | 37 | 42 | 53 | | | | | | | | |
| 6 | 6 | 16 | 22 | 27 | 38 | 43 | 54 | | | | | | | | |
| 7 | 7 | | 23 | 28 | 39 | 44 | 55 | | | | | | | | |
| 8 | 8 | | 24 | 29 | 40 | 45 | 56 | | | | | | | | |
| 9 | 9 | 17 | 25 | 30 | 41 | 46 | 57 | | | | | | | | |
| 10 | 10 | 18 | 26 | 31 | 42 | 47 | 58 | | | | | | | | |
| 11 | 11 | | 27 | 32 | 43 | 48 | 59 | | | | | | | | |
| 12 | 12 | 19 | 28 | 33 | 44 | 49 | 60 | | | | | | | | |
| | 13 | 20 | 29 | 34 | 45 | | | | | | | | | | |
| | 14 | | 30 | 35 | 46 | | | | | | | | | | |
| 13 | 15 | | 31 | 36 | 47 | | | | | | | | | | |
| 14 | 16 | 21 | 32 | 37 | 48 | | | | | | | | | | |

| | | | |
| --- | --- | --- | --- |
| NONE<br><br>(Assistant Examiner) | (Date) | **Total Claims Allowed:**<br>49 | |
| /DON N VO/<br>Primary Examiner.Art Unit 2634<br><br>(Primary Examiner) | 01/09/2013<br><br>(Date) | O.G. Print Claim(s)<br>1 | O.G. Print Figure<br>4 |

U.S. Patent and Trademark Office Part of Paper No. 20130109

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

36139 7590 02/20/2013
EPSTEIN & GERKEN
1901 RESEARCH BOULEVARD
SUITE 340
ROCKVILLE, MD 20850

| EXAMINER | |
|---|---|
| VO, DON NGUYEN | |
| **ART UNIT** | **PAPER NUMBER** |
| 2634 | |

DATE MAILED: 02/20/2013

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/287,620 | 11/02/2011 | Joseph Garodnick | 1210.104.RE | 8011 |

TITLE OF INVENTION: VARIABLE THROUGHPUT REDUCTION COMMUNICATIONS SYSTEM AND METHOD

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $1770 | $0 | $0 | $1770 | 05/20/2013 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

## HOW TO REPLY TO THIS NOTICE:

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status above is to be removed, check box 5b on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check box 5a on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and 1/2 the ISSUE FEE shown above.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

# PART B - FEE(S) TRANSMITTAL

**Complete and send this form, together with applicable fee(s), to: Mail** **Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
**or Fax (571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

36139 7590 02/20/2013
EPSTEIN & GERKEN
1901 RESEARCH BOULEVARD
SUITE 340
ROCKVILLE, MD 20850

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

(Depositor's name)
(Signature)
(Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/287,620 | 11/02/2011 | Joseph Garodnick | 1210.104.RE | 8011 |

TITLE OF INVENTION: VARIABLE THROUGHPUT REDUCTION COMMUNICATIONS SYSTEM AND METHOD

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $1770 | $0 | $0 | $1770 | 05/20/2013 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| VO, DON NGUYEN | 2634 | 375-267000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

❑ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

❑ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 ____________

2 ____________

3 ____________

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

(B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ❑ Individual ❑ Corporation or other private group entity ❑ Government

4a. The following fee(s) are submitted:

❑ Issue Fee
❑ Publication Fee (No small entity discount permitted)
❑ Advance Order - # of Copies ____________

4b. Payment of Fee(s): **(Please first reapply any previously paid issue fee shown above)**

❑ A check is enclosed.
❑ Payment by credit card. Form PTO-2038 is attached.
❑ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number ____________ (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)

❑ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.
❑ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature ____________ Date ____________

Typed or printed name ____________ Registration No. ____________

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/287,620 | 11/02/2011 | Joseph Garodnick | 1210.104.RE | 8011 |

36139 7590 02/20/2013

EPSTEIN & GERKEN
1901 RESEARCH BOULEVARD
SUITE 340
ROCKVILLE, MD 20850

| EXAMINER | |
|---|---|
| VO, DON NGUYEN | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2634 | |

DATE MAILED: 02/20/2013

## Determination of Patent Term Extension or Adjustment under 35 U.S.C. 154 (b)

A reissue patent is for "the unexpired part of the term of the original patent." See 35 U.S.C. 251. Accordingly, the above-identified reissue application is not eligible for Patent Term Extension or Adjustment under 35 U.S.C. 154(b).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| Notice of Allowability | Application No. 13/287,620 | Applicant(s) GARODNICK, JOSEPH | |
|---|---|---|---|
| | Examiner Don N. Vo | Art Unit 2634 | |

***-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--***

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *the RCE filed 12/10/2012*.
2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on ____; the restriction requirement and election have been incorporated into this action.
3. ☒ The allowed claim(s) is/are *1-12, 15, 16, 19, 22, 25, 26, 28, 29 and 32-60, which are now renumbered 1-49, respectively*. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov .
4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   a) ☐ All b) ☐ Some* c) ☐ None of the:

   1. ☐ Certified copies of the priority documents have been received.
   2. ☐ Certified copies of the priority documents have been received in Application No. ____ .
   3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   * Certified copies not received: ____.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

   ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date ____.

   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)
2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date ____
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material
4. ☐ Interview Summary (PTO-413), Paper No./Mail Date ____ .
5. ☐ Examiner's Amendment/Comment
6. ☐ Examiner's Statement of Reasons for Allowance
7. ☐ Other ____.

/Don N Vo/
Primary Examiner, Art Unit 2634

PART B - FEE(S) TRANSMITTAL

**Complete and send this form, together with applicable fee(s), to: Mail** **Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
**or Fax (571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

36139 7590 02/20/2013
EPSTEIN & GERKEN
1901 RESEARCH BOULEVARD
SUITE 340
ROCKVILLE, MD 20850

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

(Depositor's name)
(Signature)
(Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/287,620 | 11/02/2011 | Joseph Garodnick | 1210.104.RE | 8011 |

TITLE OF INVENTION: VARIABLE THROUGHPUT REDUCTION COMMUNICATIONS SYSTEM AND METHOD

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $1770 | $0 | $0 | $1770 | 05/20/2013 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| VO, DON NGUYEN | 2634 | 375-267000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 ____________
2 ____________
3 ____________

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE: Linex Technologies, Inc.

(B) RESIDENCE: (CITY and STATE OR COUNTRY): West Long Branch, NJ

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☒ Corporation or other private group entity ☐ Government

4a. The following fee(s) are submitted:

☒ Issue Fee
☐ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies ____________

4b. Payment of Fee(s): **(Please first reapply any previously paid issue fee shown above)**

☐ A check is enclosed.
☒ Payment by credit card. ~~Form PTO-2038 is attached.~~
☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number ____________ (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)

☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.
☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature /robert h epstein/ Date 03/18/2013

Typed or printed name Robert H. Epstein Registration No. 24,353

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 15284906 |
| **Application Number:** | 13287620 |
| **International Application Number:** | |
| **Confirmation Number:** | 8011 |
| **Title of Invention:** | VARIABLE THROUGHPUT REDUCTION COMMUNICATIONS SYSTEM AND METHOD |
| **First Named Inventor/Applicant Name:** | Joseph Garodnick |
| **Customer Number:** | 36139 |
| **Filer:** | Robert Howard Epstein/Ann Shebovsky |
| **Filer Authorized By:** | Robert Howard Epstein |
| **Attorney Docket Number:** | 1210.104.RE |
| **Receipt Date:** | 18-MAR-2013 |
| **Filing Date:** | 02-NOV-2011 |
| **Time Stamp:** | 15:32:40 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $1770 |
| RAM confirmation Number | 2989 |
| Deposit Account | |
| Authorized User | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part/.zip | Pages (if appl.) |
|---|---|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| 1 | Issue Fee Payment (PTO-85B) | PTOL-85.pdf | 99313<br>686b0a40a7c7ef245a149f12048c583c8bd072e2 | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 2 | Fee Worksheet (SB06) | fee-info.pdf | 30490<br>7bfa73fd9b5f1342faeea11ded41cabc7e80afd4 | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| | | | **Total Files Size (in bytes):** | 129803 | |

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**

**National Stage of an International Application under 35 U.S.C. 371**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**

**New International Application Filed with the USPTO as a Receiving Office**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 13287620 |
| **Filing Date:** | 02-Nov-2011 |
| **Title of Invention:** | VARIABLE THROUGHPUT REDUCTION COMMUNICATIONS SYSTEM AND METHOD |
| **First Named Inventor/Applicant Name:** | Joseph Garodnick |
| **Filer:** | Robert Howard Epstein/Ann Shebovsky |
| **Attorney Docket Number:** | 1210.104.RE |

Filed as Large Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| Utility Appl Issue Fee | 1501 | 1 | 1770 | 1770 |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **1770** |

Receipt date: 11/02/2011 13287620 - GAU: 2611

PTO/SB/08a (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

Substitute for form 1449/PTO

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT

*(Use as many sheets as necessary)*

| Complete if Known | |
|---|---|
| Application Number | |
| Filing Date | |
| First Named Inventor | Joseph Garodnick |
| Art Unit | |
| Examiner Name | |
| Attorney Docket Number | 1210.104.RE |

Sheet 1 of 1

## U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number / Number-Kind Code[2 (if known)] | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | US- 5,579,304 | 11/1996 | Sugimoto et al | |
| | | US- 5,673,286 | 09/1997 | Lomp | |
| | | US- 5,742,640 | 04/1998 | Haoui et al | |
| | | US- 5,926,500 | 07/1999 | Odenwalder | |
| | | US- 6,075,809 | 06/2000 | Naruse | |
| | | US- 6,192,066 | 02/2001 | Asanuma | |
| | | US- 6,289,039 | 09/2001 | Garodnick | |
| | | US- 6,738,942 | 05/2004 | Sridharan et al | |
| | | US- 6,747,948 | ~~06/2005~~ | ~~Saraf et al~~ Sarraf, et al. June 8, 2004 | |
| | | US- 6,895,037 | 05/2005 | Garodnick | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |

Change(s) applied to document, /D.H.P./ 2/28/2013

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document / Country Code[3] "Number[4] "Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | /Don Vo/ | Date Considered | 02/13/2012 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST 3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST 16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /D.V./

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/287,620 | 05/07/2013 | RE44199 | 1210.104.RE | 8011 |

36139 7590 04/17/2013

EPSTEIN & GERKEN
1901 RESEARCH BOULEVARD
SUITE 340
ROCKVILLE, MD 20850

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above.

## Determination of Patent Term Extension or Adjustment under 35 U.S.C. 154 (b)

A reissue patent is for "the unexpired part of the term of the original patent." See 35 U.S.C. 251. Accordingly, the above-identified reissue application is not eligible for Patent Term Extension or Adjustment under 35 U.S.C. 154(b).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Application Assistance Unit (AAU) of the Office of Data Management (ODM) at (571)-272-4200.

APPLICANT(s) (Please see PAIR WEB site http://pair.uspto.gov for additional applicants):

Joseph Garodnick, Centerville, MA;

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The USA offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to encourage and facilitate business investment. To learn more about why the USA is the best country in the world to develop technology, manufacture products, and grow your business, visit SelectUSA.gov.

PTO/SB/96 (09-04)
Approved for use through 07/31/2006. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## STATEMENT UNDER 37 CFR 3.73(b)

Applicant/Patent Owner: Joseph Garodnick/Linex Technologies, Inc.

Application No./Patent No.: 7,613,247 Filed/Issue Date: November 3, 2009

Entitled:

Linex Technologies, Inc. (of DE), a Corporation
(Name of Assignee) (Type of Assignee, e.g., corporation, partnership, university, government agency, etc.)

states that it is:

1. [✓] the assignee of the entire right, title, and interest; or

2. [ ] an assignee of less than the entire right, title and interest.
The extent (by percentage) of its ownership interest is ________ %

in the patent application/patent identified above by virtue of either:

A. [ ] An assignment from the inventor(s) of the patent application/patent identified above. The assignment was recorded in the United States Patent and Trademark Office at Reel ________, Frame ________, or for which a copy thereof is attached.

OR

B. [✓] A chain of title from the inventor(s), of the patent application/patent identified above, to the current assignee as shown below:

1. From: Joseph Garodnick To: Linex Technologies, Inc. (of DE)
The document was recorded in the United States Patent and Trademark Office at
Reel 015072, Frame 0737, or for which a copy thereof is attached.

2. From: ________ To: ________
The document was recorded in the United States Patent and Trademark Office at
Reel ________, Frame ________, or for which a copy thereof is attached.

3. From: ________ To: ________
The document was recorded in the United States Patent and Trademark Office at
Reel ________, Frame ________, or for which a copy thereof is attached.

[ ] Additional documents in the chain of title are listed on a supplemental sheet.

[ ] Copies of assignments or other documents in the chain of title are attached.
[NOTE: A separate copy (*i.e.*, a true copy of the original assignment document(s)) must be submitted to Assignment Division in accordance with 37 CFR Part 3, if the assignment is to be recorded in the records of the USPTO. See MPEP 302.08]

The undersigned (whose title is supplied below) is authorized to act on behalf of the assignee.

[signature] 1 November 2011
Signature Date

Donald L. Schilling 561-756-8969
Printed or Typed Name Telephone Number

CEO, Linex Technologies, Inc.
Title

This collection of information is required by 37 CFR 3.73(b). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*